**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ESI/EMPLOYEE SOLUTIONS, LP, and HAGAN LAW GROUP LLC; | § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| CITY OF DALLAS; ERIC JOHNSON, in his official capacity as Mayor of the City of Dallas; T.C. BROADNAX, in his official capacity as City Manager of the City of Dallas; and BEVERLY DAVIS, in her official capacity as Director of the City of Dallas Office of Equity and Human Rights, | § § § § § § § § § | JUDGE _____ |
| *Defendants*. | § § | |

**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs ESI/Employee Solutions, LP and Hagan Law Group LLC seek declaratory and injunctive relief from this Court against Defendants City of Dallas (the "City"), Eric Johnson (in his official capacity as Mayor of the City of Dallas), T.C. Broadnax (in his official capacity as City Manager of the City of Dallas), and Beverly Davis (in her official capacity as Director of the City of Dallas Office of Equity and Human Rights). This relief is sought to prevent the violation of Plaintiffs' constitutional rights by the Dallas ordinance set to be enforced beginning August 1, 2019, requiring employers to provide paid sick leave to their employees (the "Paid Sick Leave Ordinance").

As set forth in the accompanying Memorandum in Support, Plaintiffs have met their burden of showing that a preliminary injunction should issue:

*First*, they have established a likelihood of success on the merits. The Paid Sick Leave

Ordinance is facially unconstitutional on three federal grounds:

- it creates an unconstitutional condition on Plaintiffs' and their employees' freedom of association in having a non-unionized workplace by allowing unionized workplaces to escape the mandates of the Paid Sick Leave Ordinance;

- it violates the equal protection of the laws by discriminatorily favoring unionized workplaces in the same provision; and

- it violates the protections against unreasonable searches and seizures by allowing the issuance of subpoenas with no pre-compliance judicial review.

In addition, the Paid Sick Leave Ordinance is unconstitutional under the Texas Constitution because it is preempted by the Texas Minimum Wage Act.

*Second*, Plaintiffs will suffer numerous irreparable harms absent an injunction. The evidence submitted with the accompanying Memorandum in Support demonstrates that the Paid Sick Leave Ordinance causes substantial and irreparable harm to Plaintiffs because of the burdensome cost to comply with the Ordinance, the requirement for them to spend money for which there is no avenue for later recovery due to the City's governmental immunity from their state law claim, and the infringement of their constitutional rights.

*Third*, the threatened injury to the Plaintiffs outweighs whatever damage the proposed injunction may cause Defendants; the balance of the equities and the public interest strongly favor an injunction. The City lacks a legitimate interest in enforcing an unconstitutional ordinance, and the harm to Plaintiffs is substantial.

For these reasons and those set forth in detail in the accompanying Memorandum in Support, the Court should issue a preliminary injunction enjoining Defendants from enforcing the Paid Sick Leave Ordinance.

Respectfully Submitted,

*/s/Robert Henneke*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
Center for the American Future
901 Congress Avenue
Austin, TX 78701
Telephone:     (512) 472-2700
Facsimile:     (512) 472-2728

*Attorney for Plaintiffs ESI/Employee Solutions LP*
*and Hagan Law Group LLC*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was electronically filed on July 30, 2019 with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.  I certify that the foregoing document was served via email to counsel for Defendants, Christopher J. Caso, Interim City Attorney for the City of Dallas, at chris.caso@dallascityhall.com.


*/s/Robert Henneke*
ROBERT HENNEKE


## CERTIFICATE OF CONFERENCE

I certify that on July 23, 2019, I conferred with counsel for Defendants, Christopher J. Caso, Interim City Attorney for the City of Dallas, about the relief sought in this Motion. Defendants are opposed to the substance of this Motion.

*/s/Robert Henneke*
ROBERT HENNEKE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ESI/EMPLOYEE SOLUTIONS, LP, and HAGAN LAW GROUP LLC; | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| CITY OF DALLAS; ERIC JOHNSON, in his official capacity as Mayor of the City of Dallas; T.C. BROADNAX, in his official capacity as City Manager of the City of Dallas; and BEVERLY DAVIS, in her official capacity as Director of the City of Dallas Office of Equity and Human Rights, | § § § § § § § § | JUDGE _____ |
| *Defendants.* | § § § | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 2

STANDARD FOR GRANTING THE MOTION .......................................................... 6

ARGUMENT ............................................................................................................ 7

I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ......................... 7

    A.  The Paid Sick Leave Ordinance violates the Freedom of Association of the First and Fourteenth Amendments to the United States Constitution ........................... 7

    B.  The Paid Sick Leave Ordinance violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ................................ 10

    C.  The Paid Sick Leave Ordinance violates the Search and Seizure Clause of the Fourth and Fourteenth Amendments to the United States Constitution ............................ 12

    D.  The Paid Sick Leave Ordinance is preempted by the Texas Minimum Wage Act .................................................................................................................... 13

        1.  Plain Meaning ........................................................................................ 15

        2.  Operation of the Paid Sick Leave Ordinance .......................................... 17

        3.  Preemption ............................................................................................. 19

II.     PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF .......................................................... 23

III.    THE THREATENED INJURY TO PLAINTIFFS OUTWEIGHS WHATEVER DAMAGE A PRELIMINARY INJUNCTION MAY CAUSE THE CITY, AND AN INJUNCTION IS ALSO IN THE PUBLIC INTEREST .................................. 30

CONCLUSION ...................................................................................................... 32

CERTIFICATE OF SERVICE ................................................................................ 33

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Abutahoun v. Dow Chem. Co.*,
    463 S.W.3d 42 (Tex. 2015)..................................................................................15

*Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*,
    698 F.3d 885 (6th Cir. 2012) ..............................................................................31

*Awad v. Ziriax*,
    670 F.3d 1111 (10th Cir. 2012) ..........................................................................31

*BCCA Appeal Grp., Inc. v. City of Houston*,
    496 S.W.3d 1 (Tex. 2016), *reh'g denied* (Sept. 23, 2016)..................................15

*Boy Scouts of America v. Dale*,
    530 U.S. 640 (2000)..............................................................................................9

*Bright v. Hous. Nw. Med. Ctr. Survivor, Inc.*,
    934 F.2d 671 (5th Cir. 1991) ..............................................................................17

*California v. Trump*,
    267 F.Supp.3d 1119 (N.D. Cal. 2017) ...............................................................24

*Canal Authority of the State of Florida v. Callaway*,
    489 F.2d 567 (5th Cir. 1974) ................................................................................7

*Cf. Texas Dep't of State Health Servs. v. Holmes*,
    294 S.W.3d 328 (Tex. App.—Austin 2009) .......................................................29

*Chamber of Commerce of U.S. v. Brown*,
    554 U.S. 60 (2008)..............................................................................................11

*Chamber of Commerce of U.S. v. Edmondson*,
    594 F.3d 742 (10th Cir. 2010) ...........................................................................30

*Chavez v. City of Albuquerque*,
    630 F.3d 1300 (10th Cir. 2011) .........................................................................24

*Citizens Bank of Bryan v. First State Bank, Hearne*,
    580 S.W.2d 344 (Tex. 1979)...............................................................................22

*City of Laredo v. Laredo Merchs. Ass'n*,
    550 S.W.3d 586 (Tex. 2018)...............................................................................14

*City of Los Angeles, Calif. v. Patel*,
    135 S.Ct. 2443 (2015) ...........................................................................................12, 13

*City of Round Rock v. Rodriguez*,
    399 S.W.3d 130 (Tex. 2013) ........................................................................................10

*Colindres v. QuietFlex Mfg.*,
    427 F.Supp.2d 737 (S.D. Tex. 2006) ...........................................................................18

*Collins v. Ainsworth*,
    382 F.3d 529 (5th Cir. 2004) .........................................................................................8

*Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*,
    271 S.W.3d 238 (Tex. 2008) ........................................................................................22

*Combs v. Chevron, Inc.*,
    319 S.W.3d 836 (Tex. App.—Austin 2010, pet. denied) ..............................................22

*Concerned Home Care Providers, Inc. v. Cuomo*,
    783 F.3d 77 (2d Cir. 2015) ...........................................................................................11

*Contender Farms, L.L.P. v. U.S. Dep't of Argic.*,
    779 F.3d 258 (5th Cir. 2015) .......................................................................................24

*Covino v. Patrissi*,
    967 F.2d 73 (2d Cir. 1992) ...........................................................................................23

*Craig v. Boren*,
    429 U.S. 190 (1976) .......................................................................................................7

*Dall. Merch.'s & Concessionaire's Ass'n v. City of Dall.*,
    852 S.W.2d 489 (Tex. 1993) ........................................................................................19

*Deerfield Medical Center v. City of Deerfield Beach*,
    661 F.2d 328 (5th Cir. 1981) .......................................................................................23

*Dialysis Patient Citizens v. Burwell*,
    No. 4:17-CV-16, 2017 U.S. Dist. LEXIS 10145 (E.D. Tex. Jan. 25, 2017) .......................7

*Donovan v. Lone Steer, Inc.*,
    464 U.S. 405 (1984) .....................................................................................................12

*Dorris v. City of McKinney*,
    No. 4:16-CV-00069, 2017 US Dist. LEXIS 107376 (E.D. Tex. July 12, 2017) ...............8

*Douglas v. Xerox Bus. Servs., LLC,*
    875 F.3d 884 (9th Cir. 2017) .............................................................18

*Elrod v. Burns,*
    427 U.S. 347 (1973).........................................................................23

*Epps v. Fowler,*
    351 S.W.3d 862 (Tex. 2011).............................................................16

*Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Ed. & Welfare,*
    601 F.2d 199 (5th Cir. 1979) ..............................................................7

*Fleming Foods of Tex., Inc. v. Rylander,*
    6 S.W.3d 278 (Tex. 1999)................................................................22

*Fort Halifax Packing Co., Inc. v. Coyne,*
    482 U.S. 1 (1987).............................................................................11

*Goldie's Bookstore v. Superior Ct.,*
    739 F.2d 466 (9th Cir. 1984) .......................................................23, 24

*Grothues v. City of Helotes,*
    928 S.W.2d 725 (Tex. App.—San Antonio [4th Dist.] 1996) .........................21

*Harris v. Cantu,*
    81 F.Supp.3d 566 (S.D. Tex. 2015) rev'd sub nom.
    *Harris v. Hahn,* 827 F.3d 359 (5th Cir. 2016) .................................29

*Jackson Women's Health Org. v. Currier,*
    760 F.3d 448 (5th Cir. 2014) ............................................................31

*Janus v. Am. Fed. of State, County, and Mun. Employees, Council 31,*
    138 S.Ct. 2448 (2018)........................................................................9

*Jere Dairy, Inc. v. City of Mt. Pleasant,*
    417 S.W.2d 872 (Ct. Civ. App.—Texarkana 1967).........................21

*Jones v. Caruso,*
    569 F.3d 258 (6th Cir. 2009) ............................................................31

*Koontz v. St. Johns River Water Mgmt. Dist.,*
    133 S.Ct. 2586 (2013)........................................................................9

*Korte v. Sebelius,*
    735 F.3d 654 (7th Cir. 2013) ..............................................................7

*Laredo Merchants Ass'n v. City of Laredo*,
    No. 04-15-00610-CV, 2016 WL 4376627
    (Tex. App.—San Antonio Aug. 17, 2016), *aff'd* (June 22, 2018) ...............................19, 20

*Livadas v. Bradshaw*,
    512 U.S. 107 (1994)...........................................................................................11

*Lower Colo. River Auth. v. City of San Marcos*,
    523 S.W.2d 641 (Tex. 1975)...........................................................................19

*Lunsford v. City of Bryan*,
    297 S.W.2d 115 (Tex. 1957)...........................................................................10

*McLane Co., Inc. v. EEOC*,
    137 S.Ct. 1159 (2017).....................................................................................12

*MetLife Life Ins. Co. v. Massachusetts*,
    471 U.S. 724 (1985)........................................................................................11

*Mote v. Walthall*,
    902 F.3d 500 (5th Cir. 2018) ............................................................................7

*Naylor v. Securiguard, Inc.*,
    801 F.3d 501 (5th Cir. 2015) ..........................................................................17

*O'Carolan v. Hopper*,
    414 S.W.3d 288 (Tex. App.—Austin 2013) ....................................................22

*Odebrecht Const., Inc. v. Sec'y, Florida Dep't of Transp.*,
    715 F.3d 1268 (11th Cir. 2013) ......................................................................30

*Paulsson Geophysical Servs., Inc. v. Sigmar*,
    529 F.3d 303 (5th Cir. 2008) ..........................................................................24

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary*,
    268 U.S. 510 (1925)..........................................................................................7

*Regan v. Taxation With Representation of Wash.*,
    461 U.S. 540 (1983)..........................................................................................9

*Richard v. Hinson*,
    70 F.3d 415 (5th Cir. 1995) ............................................................................10

*Roberts v. United States Jaycees*,
    468 U.S. 609 (1984)..........................................................................................8

vi

*S. Crushed Concrete, LLC v. City of Houston,*
    398 S.W.3d 676 (Tex. 2013)......................................................................19, 21, 22

*Sherbert v. Verner,*
    374 U.S. 398 (1963)...........................................................................................9

*Speiser v. Randall,*
    357 U.S. 513 (1958)...........................................................................................9

*Teladoc, Inc. v. Texas Med. Bd.,*
    112 F.Supp.3d 529 (W.D. Tex. 2015)...............................................................29

*Tex. Ass'n of Bus. v. City of Austin,*
    565 S.W.3d 425 (Tex. App.—Austin 2018, pet. filed)................................13, 14

*Texas Dep't of State Health Servs. v. Holmes,*
    294 S.W.3d 328 (Tex. App.—Austin 2009) .....................................................30

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994)..........................................................................................24

*Vicksburg Firefighters Assoc., Local 1686 Int'l Assoc. of Firefighters, AFL-CIO, CLC v.*
    *City of Vicksburg, Miss.,* 761 F.2d 1036 (5th Cir. 1985)......................................8

*Wichita Falls State Hosp. v. Taylor,*
    106 S.W.3d 692 (Tex. 2003)..............................................................................29

*Wood v. Collier,*
    836 F.3d 534 (5th Cir. 2016) .......................................................................10, 11

## Constitutional Provisions and Statutes

Tex. Const.
    art. XI, § 5 .....................................................................................................14
    art. XI § 5(a)...................................................................................................19

29 U.S.C.
    § 157.................................................................................................................7
    § 201 et seq. ...............................................................................................15, 20
    § 206(a) ...........................................................................................................13

42 U.S.C. § 1983.........................................................................................................1

Tex. Lab. Code
    § 61.001(7)(B)..................................................................................................17
    § 62.051......................................................................................................13, 14

§ 62.0515.................................................................................................15
§ 62.0515(a) ......................................................................................13, 14
§ 62.151.......................................................................................13, 15, 20
§ 101.052.................................................................................................10

Tex. Gov't Code Ann.
§ 311.021................................................................................................22
§ 311.023................................................................................................21
§ 311.023(1)............................................................................................22
§ 311.023(5)............................................................................................22
§ 311.026(b)............................................................................................20

Tex. Health & Safety Code Ann.
§ 361.0961..............................................................................................20

Tex. Loc. Gov't Code
§ 211.001................................................................................................20

## **Other Authorities**

*Black's Law Dictionary* (rev. 4th ed. 1968).................................................16

*Black's Law Dictionary* (6th ed. 1990).......................................................16

*Black's Law Dictionary* (8th ed. 2004).......................................................16

*Compact Oxford English Dictionary* (2d. ed. 1989)....................................14

Dallas Texas, Ordinance No. 31181; Municipal Code § 20-1-20-12 ........................ 1, 4, 5, *passim*

Plaintiffs ESI/Employee Solutions LP and Hagan Law Group LLC seek declaratory and injunctive relief from this Court against Defendants City of Dallas (the "City"), Eric Johnson (in his official capacity as Mayor of the City of Dallas), T.C. Broadnax (in his official capacity as City Manager of the City of Dallas), and Beverly Davis (in her official capacity as Director of the City of Dallas Office of Equity and Human Rights).  This relief is sought to prevent the violation of Plaintiffs' constitutional rights by the Dallas ordinance set to be enforced beginning August 1, 2019, requiring employers to provide paid sick leave to their employees (the "Paid Sick Leave Ordinance").

## INTRODUCTION

Plaintiffs are small businesses in Collin County who are injured by the unconstitutional regulatory power forced onto them by the City of Dallas through its Paid Sick Leave Ordinance. Plaintiffs chose to locate their business in Collin County, not the City of Dallas. But, because Plaintiffs have employees who spend 80 hours or more per year inside the City of Dallas while working for Plaintiffs (not uncommon given the interconnectedness of the DFW metroplex), the City of Dallas imposes its regulatory mandate onto Plaintiffs in Collin County by the requirement that Plaintiffs comply with the Dallas Ordinance.

On April 24, 2019, the City of Dallas enacted the Paid Sick Leave Ordinance.  Dallas, Texas, Ordinance No. 31181; Municipal Code § 20-1—20-12.  The Paid Sick Leave Ordinance violates Plaintiffs' rights arising under the United States Constitution, including the freedom of association, the equal protection of the law for non-unionized employers, and the right to be free of unreasonable searches and seizures.  In this action under 42 U.S.C. § 1983, Plaintiffs seek a declaratory judgment that the Paid Sick Leave Ordinance is unconstitutional, a preliminary injunction to halt its operation until a ruling on the merits (requested here), and a permanent

1

injunction.

Moreover, because the Paid Sick Leave Ordinance conflicts with Texas statutory law, it is preempted and therefore in violation of the Texas Constitution. The Texas Minimum Wage Act prohibits municipalities, such as the City, from regulating the wages of employees of private businesses, incorporating the standards of the Federal Fair Labor Standards Act (the "FLSA") into state law, but further preempting any municipal ordinances from going beyond those standards. Through the Texas Minimum Wage Act and the FLSA, Texas state law caps the minimum wage at the federal rate. In direct conflict, the Paid Sick Leave Ordinance requires that employers must pay minimum wage to employees for hours not actually worked. The effect is to push their hourly wage above the minimum wage ceiling set by Texas law. Accordingly, Plaintiffs ask the Court to accept supplemental jurisdiction over this state law claim, and to now issue a preliminary injunction to halt the operation of the Paid Sick Leave Ordinance until an ultimate ruling on the merits is made.

## FACTUAL BACKGROUND

### The Plaintiffs

Plaintiff ESI/Employee Solutions, LP is a for-profit corporation incorporated in the State of Texas and headquartered in the City of Plano in Collin County, Texas. (Bristol Declaration at ¶ 3). It provides temporary staffing in various industries, employing over 300 temporary employees within the City of Dallas at any given time, and will be injured by the provisions of the Paid Sick Leave Ordinance. (Bristol Declaration at ¶¶ 3-4). ESI/Employee Solutions, LP's has not chosen to unionize and its employees are not subject to a collective bargaining agreement. (Bristol Declaration at ¶ 5). ESI/Employee Solutions, LP maintains business records that are proprietary and confidential for which it would not want to disclose to the City of Dallas. (Bristol

Declaration at ¶ 6).  Like most staffing companies, ESI/Employee Solutions, LP provides workers with a gateway to employment.  The very nature of ESI/Employee Solutions, LP's business is temporary work – the service that ESI/Employee Solutions, LP's clients contract for and the type of work that Employee Solutions' employees choose to obtain.  Where ESI/Employee Solutions, LP exists to fill gaps in the workforce needs of other businesses, it is contrary to this business model to require Employee Solutions to provide paid leave to workers whose job is to fill in for vacant positions.  (Bristol Declaration at ¶ 8).

Plaintiff Hagan Law Group LLC is a for-profit corporation incorporated in the State of Texas and based in the City of Allen in Collin County, Texas.  It provides legal counseling and representation to employers and executives in various industries located in Texas.  Hagan Law Group LLC currently employs one attorney who works full-time remotely from home within the City of Dallas.  Hagan Law Group LLC and its Dallas-based attorney have negotiated terms and conditions of employment that provide the employee a more flexible schedule and mutually agreed compensation in exchange for not having other benefits like paid leave.  (Hagan Declaration at ¶¶ 3-4, 6).

Furthermore, as a labor and employment law firm, Hagan Law Group employees appear in court and engage in other client related matters within the City of Dallas on average for more than 80 hours total per year and will be injured by the provisions of the Paid Sick Leave Ordinance.  (Hagan Declaration at ¶ 7).  Hagan Law Group LLC has not chosen to unionize and its employees are not subject to a collective bargaining agreement.  (Hagan Declaration at ¶ 8).  Hagan Law Group LLC maintains business records that are proprietary and confidential for which it would not want to disclose to the City of Dallas.  (Hagan Declaration at ¶ 5).

***The Paid Sick Leave Ordinance***

On April 24, 2019, the City enacted the Paid Sick Leave Ordinance, mandating that private employers provide paid sick leave to their employees.  Dallas, Texas, Ordinance No. 31181; Municipal Code § 20-1-20-12.  The provisions of the Paid Sick Leave Ordinance are enforceable on August 1, 2019.

The Paid Sick Leave Ordinance covers all employees who "perform[] at least 80 hours of work for pay within the City of Dallas, Texas in a year for an employer, including work performed through the services of a temporary or employment agency." Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-2(5).

The Paid Sick Leave Ordinance requires employers to "grant an employee one hour of earned paid sick time for every 30 hours worked for the employer in the City of Dallas;" this accrual begins at the commencement of employment or either August 1, 2019, for an employer with more than five employees, or August 1, 2021, for an employer with not more than five employees at any time in the preceding 12 months. whichever is later." Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-4(a-b).

The Paid Sick Leave Ordinance requires "[t]he employer [to] provide earned paid sick time in an amount equal to what the employee would have earned if the employee had worked the scheduled work time, exclusive of any overtime premium, tips, or commissions, but no less than the state minimum wage." Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-5(a).

The Paid Sick Leave Ordinance requires that "[o]n no less than a monthly basis, an employer shall provide electronically or in writing to each employee a statement showing the amount of the employee's available earned paid sick time," Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-7(a), requiring employers to track hours worked even for employees paid

on a salary basis and exempt from FLSA rules.

The Paid Sick Leave Ordinance requires employers to allow an

> Employee [to] request earned paid sick time . . . for an absence from the
> employee's scheduled work time caused by:
>
> (1)     The employee's physical or mental illness, physical injury,
> preventative medical or health care, or health condition; or
>
> (2)     The employee's need to care for their family member's physical or
> mental illness, physical injury, preventative medical or health care, or health
> condition; or
>
> (3)     The employee's or their family member's need to seek medical
> attention, seek relocation, obtain services of a victim's services
> organization, or participate in legal or court ordered action related to an
> incident of victimization from domestic abuse, sexual assault, or stalking
> involving the employee or the employee's family member.

Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-5(c).

The Paid Sick Leave Ordinance requires employers with more than 15 employees at any

time within the last 12 months (deemed "medium or large employers") to provide their employees

up to a maximum of 64 hours of paid sick leave a year and requires covered employers with 15 or

fewer employees at any time within the last 12 months (deemed "small employers") to provide

their employees up to a maximum of 48 hours of paid sick leave per year.  Dallas, Texas, Ordinance

No. 31181; Municipal Code at § 20-2(8, 11); *id*. at § 20-4(c).

The Paid Sick Leave Ordinance requires employers to "display a sign describing the

requirements of this chapter . . .," Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-

7(e), and requires "[a]n employer who provides an employee handbook to its employees must

include a notice of [the paid sick leave obligations in the ordinance] in that handbook."  *Id.* at §

20-7(b).

The Paid Sick Leave Ordinance provides that "[n]either the amount of available earned

5

paid sick time nor the right to use earned paid sick time shall be affected by an employee's transfer to a different facility, location, division, or job position with the same employer." Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-5(i). The City by this provision requires employers who have employees within the City to apply the mandates of the Paid Sick Leave Ordinance even when those employees are later working outside the jurisdiction of the City.

The Paid Sick Leave Ordinance permits unionized employers operating with a collective bargaining agreement to "modify the yearly cap" of paid sick leave. Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-4(e).

The Paid Sick Leave Ordinance empowers "[t]he director of the department implementing the ordinance] [to] issue subpoenas to compel the attendance of a witness or the production of materials or documents in order to obtain relevant information and testimony." Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-10(b).

Employers who violate the requirements of the Paid Sick Leave Ordinance face "a civil fine not to exceed $500" and "[e]ach violation of a particular section or subsection of this chapter constitutes a separate offense." Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-11(a).

The Paid Sick Leave Ordinance provides for penalties if a person "refus[es] to appear or to produce any document or other evidence after receiving a subpoena pursuant to this section." Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-10(b).

## STANDARD FOR GRANTING THE MOTION

A plaintiff seeking a preliminary injunction must make four showings: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to

the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) granting the injunction is not adverse to the public interest.  *Dialysis Patient Citizens v. Burwell*, No. 4:17-CV-16, 2017 U.S. Dist. LEXIS 10145 at *6 (E.D. Tex. Jan. 25, 2017) (citing *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).  The Court may employ a "sliding scale" approach, issuing the injunction upon a lesser showing of harm when the likelihood of success on the merits is especially high.  *Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979); *see also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013).

## ARGUMENT

## I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Plaintiffs have three federal claims and one supplemental state law claim.  Plaintiffs are likely to succeed on the merits of each.  Analysis of each cause of action follows below.

### A.   The Paid Sick Leave Ordinance violates the Freedom of Association of the First and Fourteenth Amendments to the United States Constitution.

Both Plaintiffs have purposefully chosen to not operate as a unionized business.  Here, the discrimination between unionized employers and their employees on the one hand and non-unionized ones on the other burdens the fundamental right of association protected by the First Amendment.[1]  If the Paid Sick Leave Ordinance goes into effect, Plaintiffs' First Amendment

---

[1]    Plaintiffs may raise the rights of their employees in this regard.  *See, e.g., Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510 (1925) (private school had standing to bring due process claim on behalf of parents); *Craig v. Boren*, 429 U.S. 190, 192-197 (1976) (licensed beer distributor could bring equal protection claim on behalf of customers).  These "protected First Amendment [freedom of association] rights flow to unions as well as to their members and organizers."  *Mote v. Walthall*, 902 F.3d 500, 506-07 (5th Cir. 2018) (cleaned up).

Plaintiffs' employees have not elected to join a union or be a part of a collective bargaining unit, *see* 29 U.S.C. § 157 (employees have the "right to refrain" from choosing collective bargaining), and the employers have not elected to invite a union to represent their employees. See  https://www.nlrb.gov/what-we-do/conduct-elections  ("In  addition  to  NLRB-conducted

association rights are injured as compared to unionized employers, because the latter have the right to modify the cap on paid sick leave hours mandated by the Paid Sick Leave Ordinance.  Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-4(e).  Plaintiffs are denied this same flexibility in determining the overall mix of compensation for its employees as a result of this discriminatory provision applied to their choice and the choice of their employees to not unionize.

"Implicit in the right to engage in First Amendment-protected activities is 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Collins v. Ainsworth*, 382 F.3d 529, 539 (5th Cir. 2004) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)).  As part of their protected constitutional right of association, Plaintiffs' employees have the right to not associate, *i.e.,* to not be associated with a unionized employer operating with a collective bargaining agreement.  *See Vicksburg Firefighters Assoc., Local 1686 Int'l Assoc. of Firefighters, AFL-CIO, CLC v. City of Vicksburg, Miss.*, 761 F.2d 1036, 1039 (5th Cir. 1985) ("freedom of association provides both public and private employees the right to organize, solicit members for, and belong to labor unions.") (citation omitted); *Dorris v. City of McKinney*, No. 4:16-CV-00069, 2017 U.S. Dist. LEXIS 107376, at *7-8 (E.D. Tex. July 12, 2017) (Mazzant, J.) (the First Amendment right to

---

elections, federal law provides employees a second path to choose a representative: They may persuade an employer to voluntarily recognize a union after showing majority support by signed authorization cards or other means.").  Plaintiffs and their employees are therefore united in supporting a non-unionized workplace, because that law provides that if a majority of workers wants (or if the employer voluntarily chooses to recognize) a union, they get it.

Here, the Paid Sick Leave Ordinance regulates only the employers directly; employees on their own would not have standing to sue the City based on disparate treatment of employers not operating under a collective bargaining agreement.  But Plaintiffs and their employees have a unified interest, as the employees have not elected to join a union, and the employers have not elected to invite a union into their workplaces.  In this instance, the rights of Plaintiffs and their employees are fused together, but only the employers are directly regulated.   Plaintiffs are therefore the only possible parties who could have standing to raise the rights of themselves and their employees in this case.

associate with a union is clearly established); *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000) (noting that the "[f]reedom of association . . . plainly presupposes a freedom not to associate.") (citation omitted).[2]  Restrictions on expressive associations are evaluated under strict scrutiny; the restriction must serve a compelling state interest and constitute the least restrictive means of furthering that interest.  *Id*.  As discussed below, there is no legitimate governmental interest at all for the City because of federal and state laws prohibiting discrimination based on union status.

Because "government may not deny a benefit to a person because he exercises a constitutional right."  *Koontz v. St. Johns River Water Mgmt. Dist*., 133 S.Ct. 2586, 2594 (2013) (quoting *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545 (1983)), the City may not condition the benefit of having the right to modify the cap on sick leave (and thus to permit employees and employers to agree to an alternative mix of overall compensation) on a business and its employees refusing to exercise the right to not join a union.[3]  This provision of the Paid Sick Leave Ordinance uses employers as a conduit for the City's thumb-on-the-scale pressure of encouraging workplaces to be unionized, burdening employees' right to not associate with unions.  Because the City makes Plaintiffs subject to the Paid Sick Leave Ordinance because they are not unionized, their First Amendment rights to not associate are infringed.

---

[2]    The Supreme Court of the United States has recently reiterated that joining (or declining to join) unions is expressive activity protected by the freedom of association.  *See Janus v. Am. Fed. of State, County, and Mun. Employees, Council 31*, 138 S.Ct. 2448, 2463-64 (2018).

[3]    The unconstitutional conditions doctrine holds that government cannot force a choice between a discretionary benefit and the exercise of a constitutional right.  For example, government cannot condition an award of unemployment benefits, *see Sherbert v. Verner*, 374 U.S. 398, 404-05 (1963), or a tax credit, *see Speiser v. Randall*, 357 U.S. 513, 535-36 (1958), on a requirement to waive First Amendment rights.

**B.   The Paid Sick Leave Ordinance violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.**

If the Paid Sick Leave Ordinance goes into effect, Plaintiffs' operations in the City will face a competitive disadvantage with unionized employers, because the latter have the right to modify the cap on paid sick leave hours mandated by the Paid Sick Leave Ordinance.   Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-4(e).   Plaintiffs are denied this same flexibility in determining the overall mix of compensation for its employees as a result of this discriminatory provision.

"Strict scrutiny is required if the legislative classification . . . impinges upon a fundamental right explicitly or implicitly protected by the Constitution.   Otherwise, the legislative classification need only bear a rational relation to a legitimate governmental purpose."   *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995) (citations omitted).   This discriminatory provision of the Paid Sick Leave Ordinance fails either test.

The discriminatory provision fail strict scrutiny.   Because freedom of association protects the decision to not join a union, see *supra*, this is an equal protection claim that implicates . . . a fundamental right," *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016), and, especially given Texas's status as a right-to-work state, there can be no compelling governmental interest the City could assert to favor unionized workplaces.   Indeed, the City has no legitimate governmental interest in favoring unionized workforces over non-unionized workforces because of Texas's declared interest in non-discrimination on this ground by its Right-to-Work provision.   Tex. Labor Code § 101.052; s*ee City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 134 (Tex. 2013) (the "intent [of the right-to-work statute] seems obvious to protect employees in the exercise of the right of free choice of joining or not joining a union.") (emphasis deleted) (citation omitted); *Lunsford v. City of Bryan*, 297 S.W.2d 115, 117 (Tex. 1957) ("The purpose of the [right-to-work]

statute is to afford equal opportunity to work to both classes [unionized and non-unionized] of employees.").

Under the rational basis test, Plaintiffs have the burden of showing that "(1) [they were] intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Wood*, 836 F.3d at 539  (internal quotations and citation omitted).

The Paid Sick Leave Ordinance's discriminatory provision that exempts unionized employers fails to survive even rational-basis review under the Equal Protection Clause.  The City cannot show that discriminatory treatment of non-union workforces as compared to unionized workforces bears a substantial relationship to furthering its articulated goals in the Paid Sick Leave Ordinance given Texas's right-to-work status.

Any remaining interest in this area is in the hands of the federal government due to the federal labor statutes (so, there is no legitimate governmental interest *for the City*).  Because they prevent state or local discriminatory treatment on the basis of whether a collective bargaining agreement is involved,[4] the federal labor laws reinforce Plaintiffs' point that *the City* lacks any legitimate governmental interest in encouraging unionization.[5]

---

[4]     *See, e.g., Livadas v. Bradshaw*, 512 U.S. 107, 131, 134 (1994) (local regulation of employment may not discriminate based on whether employees are "represented" or the "act of signing" a labor agreement).  The City may neither penalize employers for opposing unionization, *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 69 (2008), nor treat "employers differently based on whether they employ unionized workers," *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 85 (2d Cir. 2015).  Regulation must "affect union and nonunion employees equally," *MetLife Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 755 (1985), must provide "protections to individual union and nonunion workers alike," and may "neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA."  *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 20-21 (1987).

[5]     Plaintiffs are making no claim in this lawsuit based on federal preemption of the Paid Sick Leave Ordinance.

### C.  The Paid Sick Leave Ordinance violates the Search and Seizure Clause of the Fourth and Fourteenth Amendments to the United States Constitution.

This is a facial challenge, and the Supreme Court recently held that "facial challenges under the Fourth Amendment are not categorically barred or especially disfavored."  *City of Los Angeles, Calif. v. Patel*, 135 S.Ct. 2443, 2449 (2015).  In fact, they are common and have frequently been successful.  *See id.* at 2450 (citing cases).

The Paid Sick Leave Ordinance empowers "[t]he director of the department implementing the ordinance] [to] issue subpoenas to compel the attendance of a witness or the production of materials or documents in order to obtain relevant information and testimony."  Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-10(b).  The Paid Sick Leave Ordinance does not provide employers subject to it the ability to seek pre-compliance administrative review of the subpoena.

Administrative subpoenas are "constructive" searches and subject to the constitutional protections against searches and seizures.  *McLane Co., Inc. v. EEOC*, 137 S.Ct. 1159, 1169 (2017).  Administrative subpoenas can obviate the need for a warrant where there is an opportunity for the subpoena to be challenged in court; the Paid Sick Leave Ordinance provides no such means, neither requiring that the agency go to court to seek enforcement of a subpoena nor granting a recipient an avenue for judicial involvement.  *See Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) (noting that an administrative search may proceed with only a subpoena where the subpoenaed party is sufficiently protected by the opportunity to "question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it, by raising objections in an action in district court").

The Paid Sick Leave Ordinance itself provides no such avenue.  But as the Supreme Court in *Patel* stated, "[a business owner] who refuses to give an officer access to his or her registry can

be arrested on the spot.  The Court has held that business owners cannot reasonably be put to this kind of choice."  135 S.Ct. at 2452-54.  Both Plaintiffs maintain confidential and proprietary records they would not voluntarily disclose to the City related to the operation of their business and their terms and conditions of employment with their employees.  And that is precisely the choice given to employers in the City: comply with the subpoena or be prosecuted.

### D. The Paid Sick Leave Ordinance is preempted by the Texas Minimum Wage Act.

The Texas Minimum Wage Act generally establishes as the minimum wage in Texas the federal minimum wage set by the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a).  *See* Tex. Lab. Code § 62.051.  Among other things, the Texas Minimum Wage Act provides that (1) "the minimum wage provided by this chapter supersedes a wage established in an ordinance, order, or charter provision governing wages in private employment," *id*. § 62.0515(a), and (2) "a municipal ordinance . . . governing wages in private employment . . . do[es] not apply to a person covered by the [FLSA]," id. § 62.151.

The only court to address the issue held municipal paid sick leave ordinances like the City's are preempted by the Texas Minimum Wage Act.  *See Tex. Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425, 440 (Tex. App.—Austin 2018, pet. filed) (finding the almost identical ordinance of the City of Austin unconstitutional under the Texas Constitution as preempted by the Texas Minimum Wage Act).  During his testimony to the Texas House State Affairs Committee, then Dallas City Councilmember Philip Kingston testified that the Dallas ordinance was identical to Austin's.[6]  The Dallas and Austin paid sick leave ordinances are the same.  As such, this Court should look no further to find that Plaintiffs have a likelihood of success on the merits than the

---

[6]  *See* 05/01/2019 Part 2 Upon Adjournment, testimony of Dallas City Councilman Philip Kingston, at 1:27:30 mark at https://house.texas.gov/video-audio/committee-broadcasts/

Texas Third Court of Appeals' Opinion.

The Third Court's conclusion that the TMWA preempts the Ordinance because the Ordinance establishes a "wage" as that term is ordinarily understood—namely, "a 'payment to a person for service rendered.'" *Tex. Ass'n of Bus.,* 565 S.W.3d at 439 (quoting Compact Oxford English Dictionary 693 (2d. ed. 1989)).  The court of appeals reasoned that, by requiring employers to pay employees for time not worked, the Austin paid sick leave ordinance mandated "that employees who take sick leave are paid more per hour for the hours actually worked" and thus "increase[d] the pay of those employees who use paid sick leave."  *Id*. at 440.  The court accordingly concluded that the Ordinance violated the Texas Minimum Wage Act's requirement that the minimum wage established by the FLSA "supersedes a wage established in an ordinance . . . governing wages in private employment."  *Id*. at 439 (quoting Tex. Lab. Code § 62.0515(a)). Because the Texas Constitution prohibits municipalities from adopting ordinances that are inconsistent with state statutes, the court concluded that the Ordinance was unconstitutional.  *Id*. at 440-41 (citing Tex. Const. art. XI, § 5; *City of Laredo v. Laredo Merchs. Ass'n*., 550 S.W.3d 586, 593 (Tex. 2018)).

The Texas Minimum Wage Act prohibits municipalities, such as the City, from regulating the wages of employees of private businesses, incorporating the wage rate of Section 206 of the federal FLSA into state law, but further preempting any municipal ordinances from going beyond those standards.  Through the Texas Minimum Wage Act, Texas state law caps any required minimum wage at the federal rate. Tex. Labor Code § 62.051.

Section 206 of the FLSA requires that only hours actually worked be paid.  In direct conflict, the Paid Sick Leave Ordinance requires that employers must pay minimum wage to employees for hours *not* actually worked.  The effect is to push their hourly wage, as calculated by

the workweek, above the minimum wage ceiling set by Texas law.  The plain meaning and operation of the Paid Sick Leave Ordinance demonstrate its preemption by Texas law.

Although the FLSA on its own does not preempt any higher wages set by states or localities, the Texas Minimum Wage Act explicitly prevents localities from requiring private employers to pay above the wage set by the FLSA.  Tex. Labor Code § 62.0515 ("the minimum wage provided by this chapter supersedes a wage established in an ordinance, order, or charter provision governing wages in private employment."); *id*. at § 62.151 ("This chapter and a municipal ordinance or charter provision governing wages in private employment, other than wages under a public contract, do not apply to a person covered by the Fair Labor Standards Act of 1938 (29 U.S.C. Section 201 et seq.)").

The FLSA and its implementing regulations require that the pay for employees be evaluated for compliance with the minimum wage by the work week, not by the hour, and only require pay for hours actually worked on behalf of the employer.  In contrast, the Paid Sick Leave Ordinance requires employers to track hours worked even for employees paid on a salary basis and exempt from FLSA rules.

### 1. Plain Meaning

Texas courts look to the plain meaning of the text as the sole expression of legislative intent, "unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results." *Abutahoun v. Dow Chem. Co.,* 463 S.W.3d 42, 46 (Tex. 2015) (citation omitted).  "We apply the same principles used to construe statutes to construe municipal ordinances."  *BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 20 (Tex. 2016), *reh'g denied* (Sept. 23, 2016) (citation omitted).

The term "wages" is not defined in either the Texas Minimum Wage Act or in the FLSA. When a statutory term is undefined, Texas courts "consult dictionaries to discern the natural meaning." *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011).  Black's Law Dictionary defines "wages" as

> [a] compensation given to a hired person for his or her services. Compensation paid to employees based on time worked or output of production.
>
> Every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses and reasonable value of board, rent, housing, lodging, payments in kind, tips, and any other similar advantage received from the individual's employer or directly with respect to work for him.  Term should be broadly defined and includes not only periodic monetary earnings but all compensation for services rendered without regard to manner in which such compensation is computed.

Black's Law Dictionary 1091 (6th ed. 1990).[7]  This broadly defines "wages" as including any sort of remuneration due an employee by an employer and would encompass paid sick leave.  Other versions of Black's both prior to and subsequent to that edition include paid leave within the definition of "wages."  *See* Black's Law Dictionary 1750 (rev. 4th ed. 1968) ("including . . . vacation pay"); Black's Law Dictionary 1610 (8th ed. 2004) (same) (edition contemporaneous with the Texas Legislature's act to add the preemption provisions of the Texas Minimum Wage Act).

There is another indicator of why the Texas Minimum Wage Act precludes paid sick leave mandates.  The Texas Payday Law is the remedy for employees owed wages by their employers to use to recover it, and it defines "wages" as including "compensation owed by an employer for .

---

[7]    This edition of this dictionary is recommended for this time period in Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 423 (2012).

. . sick leave pay . . . owed to an employee under a written agreement with the employer or under a written policy of the employer."  Tex. Labor Code § 61.001(7)(B).

Indeed, the relationship between minimum wages and paid sick leave has been made by the City in the Paid Sick Leave Ordinance itself.  The Paid Sick Leave Ordinance explicitly deals with payouts of "wages," and refers to the receipt of paid sick leave as being governed by the minimum wage laws, requiring "[t]he employer [to] provide earned paid sick time in an amount equal to what the employee would have earned if the employee had worked the scheduled work time, exclusive of any overtime premium, tips, or commissions, but no less than the state minimum wage."  Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-5(a).

This makes an explicit reference to the Texas Minimum Wage Act (*i.e.,* the "state minimum wage"), and the reference to "what the employee would have earned if [he] had worked" refers to the FLSA standard of only requiring pay for hours actually worked.  The Paid Sick Leave Ordinance therefore depends on the Texas Minimum Wage Act to function, demonstrating that any arguments that they have no connection are implausible.

### 2.  Operation of the Paid Sick Leave Ordinance

The on-the-ground operation of the Paid Sick Leave Ordinance, despite any labels, acts to increase the minimum wages paid to employees.  Under the FLSA, employers are only required to pay wages for hours actually worked; for those hours not actually worked, the minimum wage is $0.00.  *See Naylor v. Securiguard, Inc.*, 801 F.3d 501, 504–05 (5th Cir. 2015) (under the FLSA, "rest breaks" of short duration must be compensated, but "meal periods" ordinarily 30 minutes or longer, do not); *Bright v. Hous. Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671 (5th Cir. 1991) (holding biomedical technician's off-premises "on-call" time was not "working time" under FLSA, where only restrictions were the use of a beeper, a 20–30 minute response time, and ban on alcohol);

*Colindres v. QuietFlex Mfg.*, 427 F.Supp.2d 737, 742-743, 753 (S.D. Tex. 2006) (employers must compensate for activities "performed as part of the regular work of the employees in the ordinary course of business" and "performed at the employer's behest and for the benefit of the business," excluding "those undertaken for [the  employees] own convenience, not being required by the employer," and "[e]mployers do not have to compensate employees for . . . performing nonwork-related activities") (internal citations omitted; brackets in original).   But the Paid Sick Leave Ordinance requires employers to pay at least the current minimum wage for those hours not actually worked that are covered by the mandated sick leave.

The FLSA itself sets a floor on wages, not a ceiling, so it by itself permits states or localities to require higher wages (including pay denominated as "sick leave").   But the Texas Minimum Wage Act, by incorporating the wage rate of Section 206 of the FLSA into state law, and then explicitly preempting localities from regulating the subject, sets both a floor *and a ceiling* on wage regulation.

The FLSA and its implementing regulations require that the pay for employees be evaluated for compliance with the minimum wage by the work week, not by the hour.   *See Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884 (9th Cir. 2017).   Under current law, if an employee who normally works 40 hours a week took one 8-hour day off sick, the employer would only be required to pay the employee at least the minimum wage for the hours actually worked: 32.   After the Paid Sick Leave Ordinance goes into effect, under the same scenario, the employer would be required to pay at least the minimum wage for forty hours.

That the operation of the Paid Sick Leave Ordinance in effect increases the wages paid to employees makes it preempted by the Texas Minimum Wage Act, as explained in the next subsection.

18

### 3.  Preemption

"Home-rule" cities in Texas, such as the City, derive their authority from the Texas Constitution.  *See* Tex. Const. art. XI, § 5.  As the Texas Supreme Court has consistently acknowledged, "[h]ome-rule cities have the full power of self-government and look to the Legislature, not for grants of power, but only for limitations on their powers."  *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013) (citing *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex. 1975)).

The Texas Constitution prohibits municipal ordinances from conflicting with state law. Tex. Const. art. XI, § 5(a).  "An ordinance of a home-rule city that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with the state statute." *Dall. Merch.'s & Concessionaire's Ass'n v. City of Dall.*, 852 S.W.2d 489, 491 (Tex. 1993).  Any state preemption of a home-rule municipality's powers must be clear: "if the Legislature decides to preempt a subject matter normally within a home-rule city's broad powers, it must do so with 'unmistakable clarity.'"  *S. Crushed Concrete*, 398 S.W.3d at 678 (citation omitted).

In the recent case of *Laredo Merchants Ass'n v. City of Laredo*, No. 04–15–00610–CV, 2016 WL 4376627 (Tex. App.—San Antonio Aug. 17, 2016), *aff'd* (June 22, 2018), a Texas appellate court addressed the "unmistakable clarity" rule in the context of a home-rule city ordinance that purportedly conflicted with part of the Solid Waste Disposal Act.  There, the court was tasked with deciding whether Section 361.0961 of the Code preempted a checkout bag ordinance enacted by the home-rule city of Laredo that prohibited merchants in commercial establishments from providing paper or plastic "one-time-use" checkout bags to customers.  *Id.* at *1.  Section 361.0961 provides:

> (a) A local government or other political subdivision may not adopt an ordinance, rule, or regulation to:

> (1) prohibit or restrict, for solid waste management purposes, the sale or use of a container or package in a manner not authorized by state law[.]

Tex. Health & Safety Code Ann. § 361.0961.   In considering this statutory language to be unmistakably clear, the court explained:

> By its plain language, section 361.0961 specifically addresses a particular subject matter—the sale or use of containers or packages for solid waste management purposes—and is unmistakably aimed at prohibiting local governments from enacting certain ordinances. By prohibiting the adoption of an ordinance prohibiting or restricting that particular subject matter, section 361.0961 unmistakably limits a local government's police powers[.]

*Laredo Merchs.*, 2016 WL 4376627, at *5 (alterations, citations, and internal quotation marks omitted).   The court concluded that the language in Section 361.0961 clearly preempted the checkout bag ordinance.  *Id*. at *5, *7 ("[W]e hold the Ordinance is inconsistent with section 361.0961 of the Act and therefore unenforceable as a matter of law.") (citation omitted).

Here, the Texas Minimum Wage Act is unmistakably clear on preemption.  Tex. Labor Code § 62.0515 ("the minimum wage provided by this chapter supersedes a wage established in an ordinance, order, or charter provision governing wages in private employment."); *id*. at § 62.151 ("This chapter and a municipal ordinance or charter provision governing wages in private employment, other than wages under a public contract, do not apply to a person covered by the Fair Labor Standards Act of 1938 (29 U.S.C. Section 201 et seq.)").  And as discussed above, the scope of this preemption incudes paid sick leave mandates.[8]

---

[8]      While the City has police powers including for the purposes of "promoting the public health, safety, morals, or general welfare," Tex. Loc. Gov't Code § 211.001, this general statute cannot prevail over the specific statute regulating when employers have to pay compensation to their employees, the Texas Minimum Wage Act.  *See* Tex. Gov't Code Ann. § 311.026(b) ("If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general

Because, as described above, the Paid Sick Leave Ordinance has the actual effect of requiring pay for time not compensable under Section 206 of the FLSA, as incorporated by the Texas Minimum Wage Act, it is preempted.  The Texas Supreme Court has stated that when determining whether an ordinance is preempted by a state law, Texas courts must consider not only the purpose of an ordinance as defined by that ordinance, but also the actual effect of that ordinance.  *See S. Crushed Concrete*, 398 S.W. 3d at 679 (rejecting municipality's argument that if its ordinance has a professed purpose not directly implicated by a preempting state statute, it was not preempted, because, if that were accepted, "a city could almost always circumvent [Texas law] . . . by merely passing an ordinance that purports to regulate something other than [the preempted subject].").[9]

Here, the City is trying to evade the limits on regulating wages in private employment.  The Texas Minimum Wage Act should not be construed as being ineffective in furthering its primary goal of uniformity in wage regulation throughout the State.  *See Grothues v. City of Helotes*, 928 S.W.2d 725, 728 (Tex. App.—San Antonio [4th Dist.] 1996) ("When construing a statute or ordinance, we consider such matters as the object sought to be attained by the statute. . . [or] the consequences of a particular construction . . .") (citing Tex. Gov't Code Ann. § 311.023 (Vernon

---

provision is the later enactment and the manifest intent is that the general provision prevail."); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 183-188 (2012) (discussing the "General/Specific Canon").

[9]      Similarly, in *Jere Dairy, Inc. v. City of Mt. Pleasant*, 417 S.W.2d 872 (Ct. Civ. App.—Texarkana 1967), the city had adopted an ordinance regulating the delivery of milk.  *Id.* at 873. The ordinance was challenged on the grounds that it was preempted by state laws regulating the grading and labeling of milk.  *Id.*  The city defended the ordinance on the ground that the delivery of milk was a different subject matter than that regulated by the state statutes, the mere grading and labeling of milk.  *Id.*  The court nonetheless held the ordinance preempted because its admitted purpose of improving the "quality of freshness" intruded into the domain of the state laws.  The Paid Sick Leave Ordinance, by requiring the payment of compensation to employees, intrudes on the Texas Minimum Wage Act's exclusive regulation of businesses making payments of compensation to their employees.

1988)); *O'Carolan v. Hopper*, 414 S.W.3d 288, 299 (Tex. App.—Austin 2013) ("We may consider other factors in ascertaining the intent behind a statute, including the statute's objective and the consequences of a particular construction.  *See* Tex. Gov't Code Ann. § 311.023(1), (5) (West 2005) (establishing statutory-construction aids).").

Interpreting the Texas Minimum Wage Act as not reaching the Paid Sick Leave Ordinance would make the former a nullity, permitting municipalities a formalistic way to undercut the statewide statute's objective and provide absurd consequences.  *See Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999) (court should not adopt statutory construction that would produce absurd result).  The Texas Minimum Wage Act should be construed to work rather than fail.  If the "language is susceptible of two constructions, one of which will carry out and the other defeat [its] manifest object, [the statute] should receive the former construction."  *Citizens Bank of Bryan v. First State Bank, Hearne*, 580 S.W.2d 344, 348 (Tex. 1979); *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."); *Combs v. Chevron, Inc.*, 319 S.W.3d 836, 845 (Tex. App—Austin 2010, pet. denied) ("Were that interpretation of the statute correct, Tax Code section 112.151 would be nullified. . . . We reject statutory interpretations that have such results"); Tex. Gov't Code Ann § 311.021 ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective.").

Here, the City is trying to perform an end run around the uniformity in the minimum wages paid to employees mandated by the Texas Minimum Wage Act, as described earlier.  What would be the purpose of the state statute if municipalities could increase the minimum pay required in private employment by denominating it something else but accomplishing the same prohibited effect?  *See S. Crushed Concrete*, 398 S.W.3d 676, 679 (ordinance preempted by state statute,

rejecting city's argument that because the ordinance purports to regulate land use, not air quality, the ordinance does not actually contradict state law, which regulates land use; "[i]f the City's contention were true, a city could almost always circumvent section 382.113(b) and vitiate a Commission permit that it opposes by merely passing an ordinance that purports to regulate something other than air quality.").  The Texas Minimum Wage Act preempts the Paid Sick Leave Ordinance, and, thus, the latter should be enjoined.

## II.    PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF

All of Plaintiffs' constitutional claims constitute per se irreparable injury.  *See Elrod v. Burns*, 427 U.S. 347, 373 (1973) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."  11A C. Wright, A. Miller, & Mary Kay Kane, Federal Practice and Procedure, § 2948.1 at 161 (2d ed. 1995).

The Paid Sick Leave Ordinance violates Plaintiffs' fundamental rights of First Amendment freedom of association, Fourth Amendment protection from unreasonable search and seizure, and Fourteenth Amendment equal protection, and these injuries are irreparable by their nature.  *See, e.g., Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (relying on *Elrod*, 427 U.S. 347, to find that violation of constitutional "right to privacy" [substantive due process] constitutes irreparable injury because "it cannot be undone by monetary relief"); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992) ("we agree with the district court--given the fundamental right involved, namely, the right to be free from unreasonable searches--that Covino has sufficiently demonstrated for preliminary injunction purposes that he may suffer irreparable harm arising from a possible deprivation of his constitutional rights."); *Goldie's*

*Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1984) ("The district court, although it did not, could have relied on Goldie's' alleged deprivation of equal protection in its balance of hardships analysis. An alleged constitutional infringement will often alone constitute irreparable harm."

In addition, it is well established that spending money to comply with a law constitutes irreparable harm when there is no established avenue through which that money can later be recovered. *See Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (per curiam) ("The absence of an available remedy by which the movant can later recover monetary damages may be sufficient to show irreparable injury.") (cleaned up); *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring) ("[A] regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs."). Regarding their state law preemption claim, Plaintiffs face this irreparable harm if the Paid Sick Leave Ordinance is not enjoined as Defendants' governmental immunity likely bars all recovery by Plaintiffs of their costs incurred when it is later found unlawful.

This "increased regulatory burden" and the costs associated with meeting it are both irreparable injuries that will continue unless this Court enters an injunction. *See Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015) ("An increased regulatory burden typically satisfies the injury in fact requirement.") (citation omitted); *California v. Trump*, 267 F. Supp. 3d 1119, 1133 (N.D. Cal. 2017) (holding that a state "incurring significant administrative costs" to respond to federal action suffers irreparable harm).

This does not even factor in the disruption of scheduling changes, *see Chavez v. City of Albuquerque*, 630 F.3d 1300, 1309 (10th Cir. 2011) ("A sick day is usually unscheduled or unexpected, and is a burden because the employer must find last-minute coverage for the sick

employee."), or the tracking of every hour an employee works within City limits as opposed to another jurisdiction.

Plaintiffs will be required to expend resources, including staff time, to comply with the Paid Sick Leave Ordinance's mandates when it becomes effective, such as hiring additional staff or purchasing software to track compliance.

For example, the Paid Sick Leave Ordinance will require Plaintiffs to expend resources, including staff time, to determine how and to prepare to comply with the Ordinance requirements that Plaintiffs:

    a.    Track carry-over accrued sick leave time from year to year. Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-4(d);

    b.    Provide monthly statements to employees showing the amount of available earned sick time. Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-7(a);

    c.    Amend their employee handbooks to "include a notice of employee rights and remedies under" the Paid Sick Leave Ordinance.  Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-7(b);

    d.    Create and display signage describing the requirements of the Paid Sick Leave Ordinance.  Dallas, Texas, Ordinance No. 31181; Municipal Code at § 20-7(e).

When the Paid Sick Leave Ordinance goes into effect, Plaintiffs will be forced to adjust the mix of the overall compensation and the scheduling for its employees operating in the City, which will increase costs and decrease profits for Plaintiffs.

Under current law, if an employee who normally works 40 hours a week took one 8-hour

day off sick, employers such as Plaintiffs would only be required to pay the employee at least the minimum wage for the hours actually worked: 32.  After the Paid Sick Leave Ordinance goes into effect, under the same scenario, employers such as Plaintiffs would be required to pay at least the minimum wage for forty hours.  This means that the Paid Sick Leave Ordinance increases wages for the work week beyond that required by the Texas Minimum Wage Act.

If the Paid Sick Leave Ordinance goes into effect, Plaintiffs' operations in the City will face a competitive disadvantage with unionized employers, because the latter have the right to modify the cap on paid sick leave hours mandated by the Paid Sick Leave Ordinance.  Plaintiffs are denied this same flexibility in determining the overall mix of compensation for its employees as a result of this discriminatory provision.  Because the Paid Sick Leave Ordinance directly regulates only employers, employers such as Plaintiffs are the only parties with standing to raise claims on behalf of employees who do not choose to associate with a union.

If the Paid Sick Leave Ordinance goes into effect, Plaintiff ESI/Employee Solutions, LP will have unique and particularized injury due to the itinerant and mobile nature of its workforce and the burdens imposed by the Paid Sick Leave Ordinance.  Keeping track of how many hours of the day each employee is working within the City, as opposed to nearby cities, will be an enormously costly undertaking for which ESI/Employee Solutions, LP does not currently have budgeted resources to implement.  (Bristol Declaration at ¶ 7).

Also, Plaintiff ESI/Employee Solutions, LP will have to pay double the labor cost when employees use the benefits mandated by the Paid Sick Leave Ordinance because of the nature of its business.  For example, consider a scenario where a business has an employee out sick, and asks a staffing company to provide a temporary one.  If the staffing company calls an employee to see if he is available to work the position for 8 hours that day, and the employee responds that he

is ill and will now take his paid sick leave, the staffing company will have to pay him for 8 hours and also pay another employee for 8 hours to work the vacant position.  (Bristol Declaration at ¶ 9).

Plaintiff ESI/Employee Solutions, LP has over 300 employees in the City, who make an average of $12.85 an hour.  Based on the requirements of the Paid Sick Leave Ordinance, Plaintiff ESI/Employee Solutions, LP estimates that leave paid out will be approximately $269,000.00 annually if each of its Dallas employees take the full amount of paid leave mandated by the Paid Sick Leave Ordinance.  (Bristol Declaration at ¶ 10).

Plaintiff ESI/Employee Solutions, LP will also need to hire an additional employee to track where employees are placed, track their hours, calculate leave earned, and send the monthly reports required by the Paid Sick Leave Ordinance.  This new employee position will cost ESI/Employee Solutions around $60,000.00 annually just to manage the administrative requirements of the Ordinance.  (Bristol Declaration at ¶ 11).

Plaintiff ESI/Employee Solutions, LP will also need to change its training manuals, handbooks, and orientation materials, and estimates that its software company will charge $500.00 to make changes to its application and documents.  Plaintiff ESI/Employee Solutions, LP also estimates that it will also need to provide approximately $3,000.00 in labor to make changes to relevant policies, and that it would have to spend approximately $1,500.00 in staff training time and travel to training.  (Bristol Declaration at ¶ 12).

The additional expense required of the mandates of the Paid Sick Leave Ordinance would require Plaintiff ESI/Employee Solutions, LP to rearrange the mix of pay and benefits for its employees.  It could have to raise rates for clients, which would likely result in lower wages they would be willing to pay their temporary employees placed by ESI/Employee Solutions, LP.

27

Additionally, ESI/Employee Solutions, LP currently provides paid holiday leave for its employees; because that is not legally required, the increased costs of a mandate to provide paid sick leave would likely require it to eliminate paid holiday leave.  (Bristol Declaration at ¶ 13).

In response to the Paid Sick Leave Ordinance, Plaintiff Hagan Law Group LLC will be required to use a different and more complex time reporting/tracking software than what it uses now.  It has estimated that legal reporting/billing software allowing the tracking of work locations and absences, with whole day or partial days, will cost an additional $3,000.00 annually.  The hours to train support staff and the attorneys on a new system will cost approximately $2,800.00. (Hagan Declaration at ¶ 9).

The issuance of monthly statements required by the Paid Sick Leave Ordinance would cost Plaintiff Hagan Law Group LLC approximately $600.00 annually.  (Hagan Declaration at ¶ 10).

Plaintiff Hagan Law Group LLC estimates the total cost of modifying its operations to ensure compliance with the Paid Sick Leave Ordinance would be $6,400.00 for the first year and $4,000.00 for each year thereafter.  In addition, the cost of the payout for sick leave (and for substitute wages for of counsel needed when an employee takes leave) would amount to a minimum of $14,000.00 per year (plus payroll taxes) for one employee working in the City. (Hagan Declaration at ¶ 11).

The additional expense required of the mandates of the Paid Sick Leave Ordinance would require Plaintiff Hagan Law Group LLC to rearrange the mix of pay and benefits for its employees. It could delay planned wage increases or bonuses for other staff. It could have to raise rates for clients or reduce overall employee compensation.  It is also possible that Hagan Law Group LLC would be forced to cancel its $5,500.00 per year Westlaw subscription, cancel plans to replace antiquated computer equipment, and eliminate year-end bonuses.  (Hagan Declaration at ¶ 12).

Plaintiffs' claim based on state law is precluded from being awarded damages due to governmental immunity bestowed on municipalities, such as the City, by Texas law.  Here, Plaintiffs' injuries in preparing for the application of the mandates of the Paid Sick Leave Ordinance—of spending money and time and changing the structures of their workforces—have no remedy at law because of the City's governmental immunity regarding claims under state law. Under Texas law, when performing governmental functions, political subdivisions derive governmental immunity from the state's sovereign immunity.  *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex. 2003).  Even if Plaintiffs were to succeed on their claims after trial on the merits, they will never be able to recover the expenses of complying with the mandates of the Paid Sick Leave Ordinance; the City has sovereign immunity against any claim of money damages.  *Cf. Texas Dep't of State Health Servs. v. Holmes*, 294 S.W.3d 328, 334 (Tex. App.—Austin 2009) ("Irreparable harm for purposes of a temporary injunction may include noncompensable injuries such as a company's loss of goodwill, clientele, marketing techniques, office stability and the like.") (internal citations and quotation marks omitted).

Courts have routinely held that the inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable for injunction purposes.  *See, e.g., Teladoc, Inc. v. Texas Med. Bd.*, 112 F.Supp.3d 529, 543 (W.D. Tex. 2015) ("The possibility that the [the State of Texas] will assert immunity from monetary damages as a state agency also weighs in favor of finding Plaintiffs face irreparable harm."); *Harris v. Cantu*, 81 F.Supp.3d 566, 580 (S.D. Tex. 2015), rev'd sub nom.  *Harris v. Hahn*, 827 F.3d 359 (5th Cir. 2016) ("Because Defendants are entitled to Eleventh Amendment immunity from money damages, Plaintiff is unable to recover his past tuition payments that would not have been required from him but for his having been unconstitutionally excluded from the Act's benefits.  Accordingly, Plaintiff has

suffered and—if no injunction is issued—will continue to suffer irreparable injury for which money damages are inadequate."); *see also Texas Dep't of State Health Servs. v. Holmes*, 294 S.W.3d 328, 334 (Tex. App.—Austin 2009) ("Irreparable harm for purposes of a temporary injunction may include noncompensable injuries") (internal citations and quotation marks omitted).[10]

The City's governmental immunity against state law claims leaves Plaintiffs without a remedy to recover damages for any injuries they incur from the operation of the Paid Sick Leave Ordinance.  As a result, these damages are irreparable and a valid basis for preliminary injunctive relief.

As explained above, the Paid Sick Leave Ordinance violates the Texas Minimum Wage Act and the constitutional rights of Plaintiffs.  These injuries are not conjectural.  Plaintiffs are subject to the mandates of the Paid Sick Leave Ordinance on their face, and it is now law.  If the City is not enjoined from enforcing the Paid Sick Leave Ordinance, Plaintiffs will be forced to spend money and time to ensure that they will be following those mandates.  This creates a sufficient injury to warrant preliminary injunctive relief.

## III.   THE THREATENED INJURY TO PLAINTIFFS OUTWEIGHS WHATEVER DAMAGE A PRELIMINARY INJUNCTION MAY CAUSE THE CITY, AND AN INJUNCTION IS ALSO IN THE PUBLIC INTEREST

There is no public interest in the enforcement of an unlawful or unconstitutional ordinance. The harms of the Paid Sick Leave Ordinance to Plaintiffs, discussed *supra*, are substantial.  Given

---

[10]     *See also Odebrecht Const., Inc. v. Sec'y, Florida Dep't of Transp*., 715 F.3d 1268, 1289 (11th Cir. 2013) (noting that "numerous courts have held that the inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable"); *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010) (holding that "monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury").

that the Paid Sick Leave Ordinance has yet to go into effect, any benefits to any employees have yet to be materialized, making the status quo the neutral baseline; maintaining that state of affairs cannot properly be called inflicting a harm on the City or its interests.  The novelty of the Paid Sick Leave Ordinance—the lack of any reliance interest—makes the weight on the City's side of the scale minimal compared to the massive disruption of Plaintiffs' businesses.

"When First Amendment rights are implicated, the factors for granting a preliminary injunction essentially collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights. Put another way, in the First Amendment context, the other factors are essentially encompassed by the analysis of the movant's likelihood of success on the merits." *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 698 F.3d 885, 890 (6th Cir. 2012) (cleaned up).  If the Court finds that Plaintiffs have demonstrated a substantial likelihood of success on the merits of their constitutional claims, it should grant the preliminary injunction because "it is always in the public interest to prevent the violation of a party's constitutional rights," *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (citation omitted) (cited with approval by *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014)); *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotation marks omitted) ("Notwithstanding this balancing approach, when a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor.").

The balance of interests is in favor of the grant of a preliminary injunction against the Paid Sick Leave Ordinance.

## CONCLUSION

The Austin paid sick leave ordinance was temporarily enjoined by the Texas Third Court of Appeals and is pending review by the Texas Supreme Court. *See City of Austin, et. al. v. Tex. Ass'n of Bus., et. al.*, Cause No. 19-0025 (Tex.).  San Antonio has delayed its paid sick leave ordinance until at least December 1.[11]  Employers should not be forced to comply with the City of Dallas's Paid Sick Leave Ordinance when legitimate questions as to its constitutionality remain. There is no rush or urgency for the Paid Sick Leave Ordinance to go into effect.  And, none would justify violating Plaintiffs' rights guaranteed under the United States Constitution and Texas state law. The Court should issue a preliminary injunction, enjoining Defendants from enforcing the Paid Sick Leave Ordinance.

Respectfully Submitted,

*/s/Robert Henneke*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
Center for the American Future
901 Congress Avenue
Austin, TX 78701
Telephone:     (512) 472-2700
Facsimile:     (512) 472-2728

*Attorney for Plaintiffs ESI/Employee Solutions LP and Hagan Law Group LLC*

---

[11]     *See*     https://www.texastribune.org/2019/07/24/san-antonio-paid-sick-leave-requirement-delayed-amid-lawsuit/ (last accessed July 24, 2019).

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document, together with the Verified Complaint for

Declaratory and Injunctive Relief, will be served upon the following via email on July 30, 2019:

Christopher J. Caso
Interim City Attorney
Dallas City Attorney's Office
chris.caso@dallascityhall.com

*/s/Robert Henneke*
ROBERT HENNEKE

33