## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

ESI/EMPLOYEE SOLUTIONS, L.P.;  §
HAGAN LAW GROUP L.L.C.; and    §
STATE OF TEXAS                 §
                               §
v.                             §      CIVIL ACTION NO. 4:19-CV-570-SDJ
                               §
CITY OF DALLAS; T.C. BROADNAX, in §
his official capacity as City Manager of §
the City of Dallas; and BEVERLY §
DAVIS, in her official capacity as §
Director of the City of Dallas Office of §
Equity and Human Rights        §

## MEMORANDUM OPINION & ORDER

Like several other Texas cities, the City of Dallas has enacted an ordinance requiring employers to provide paid sick leave to most employees working within the Dallas city limits. Plaintiffs, the State of Texas and two Collin County headquartered employers with employees who work in Dallas, ESI/Employee Solutions, L.P. ("ESI") and Hagan Law Group, L.L.C. ("Hagan"), assert that the Dallas paid sick leave ordinance runs afoul of both the federal and state constitutions and is therefore unenforceable.[1]

Before the Court is a Motion to Dismiss filed by Defendants City of Dallas, T.C. Broadnax, and Beverly Davis (collectively, "the City"), (Dkt. #36), and Employer-Plaintiffs' Motion for Preliminary Injunction, (Dkt. #3), joined by the State of Texas, (Dkt. #21). The City has moved to dismiss Plaintiffs' claims under Federal

---

[1] ESI and Hagan will sometimes be collectively referenced herein as the "Employer-Plaintiffs."

Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6). (Dkt. #36). The State of Texas and the Employer-Plaintiffs' motion for preliminary injunction requests that the Court issue an injunction to halt the enforcement of the City's Paid Sick Leave Ordinance until an ultimate ruling on the merits is made.

The Court, having considered the motion to dismiss, response, reply, and applicable law, **GRANTS in part** and **DENIES in part** the motion. (Dkt. #36).[2] The Court further **GRANTS** the Plaintiffs' motion for preliminary injunction. (Dkt. #3, #21).[3]

## I. BACKGROUND

### A. The City's Paid Sick Leave Ordinance

On April 24, 2019, the City enacted the Paid Sick Leave Ordinance (the "Ordinance"). Dallas, Texas, Ordinance No. 31181; Municipal Code § 20-1–20-12. The

---

[2] The Employer-Plaintiffs have made hearsay and relevance objections to Defendants' Exhibit 2 under Federal Rules of Evidence 802, 401, and 403. (Dkt. #48 at 27). Defendants' Exhibit 2 consists of the Dallas City Council agenda and minutes from the meeting at which the Ordinance was passed. As this evidence does not support the Rule 12(b)(1) portion of the City's motion to dismiss, and the Court does not consider matters beyond the complaint in reviewing a 12(b)(6) motion to dismiss, the Court did not consider Exhibit 2. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) ("[T]he court may not look beyond the pleadings in ruling on [a Rule 12(b)(6)] motion."). The Employer-Plaintiffs' objections to Exhibit 2 are, therefore, overruled as moot.

[3] The Employer-Plaintiffs make several objections in their reply to evidence Defendants offer in support of their response, including that such evidence is hearsay, unauthenticated, and irrelevant. (Dkt. #24). These objections are overruled. *See Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) ("[A]t the preliminary injunction stage, . . . the district court may rely on otherwise inadmissible evidence, including hearsay evidence."); *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)) ("[A] preliminary injunction proceeding is not subject to jury trial procedures."). In any event, the Court did not rely on the objected-to materials in reaching its decision.

Ordinance, which became effective for "medium or large employers" on August 1, 2019, and will become effective for "small employers" on August 1, 2021, requires employers to grant one hour of paid sick leave for every thirty hours worked by an employee within Dallas, regardless of the employer's location.[4] Dall. City Code § 20-4(a)–(b).

The Ordinance allows employees working in Dallas to earn up to sixty-four hours of sick leave time per year for medium or large employers and forty-eight hours of sick leave time per year for small employers. *Id.* § 20-4(c)(1)–(2). Employees under a collective bargaining agreement, however, may bargain to modify the yearly cap. *Id.* § 20-4(e). When an employee uses accrued paid sick leave time, employers are directed to pay employees their normal rate, exclusive of overtime premiums, tips, and commissions, for each hour the employee is absent from work for reasons that are authorized under the Ordinance. *Id.* § 20-5(a). Authorized reasons include absence arising from mental or physical illness and preventative care for the employee or their family members. *Id.* § 20-5(c).

In addition to granting sick leave time, the Ordinance also contains reporting and notice requirements for employers. *Id.* § 20-7. Among those requirements are physical notices of rights and remedies under the Ordinance on signage and in an employee handbook, where one exists. *Id.* § 20-7(b), (e). The employer must also track

---

[4] The Ordinance defines a "medium or large employer" as "an employer with more than 15 employees at any time in the preceding 12 months, excluding the employer's family members." Dall. City Code § 20-2(8). A "small employer" is "any employer that is not a medium or large employer." *Id.* § 20-2(11).

and report the number of sick leave hours available to each employee in writing on no less than a monthly basis, *id.* § 20-7(a), as well as maintain logs of the hours accrued, used, and available for each employee, *id.* § 20-7(d).

The Ordinance authorizes the City to conduct investigations, triggered by employee complaints, to assess employer compliance. Such investigations may include the use of administrative subpoenas to compel witness attendance or material and document production. *Id.* § 20-10(a)–(b). Violations of any portion of the Ordinance will result in a fine. *Id.* § 20-11(a). However, aside from claims of retaliation under section 20-8, the City will not begin to assess penalties for Ordinance violations against medium or large employers until April 1, 2020, and will not assess any penalties, including retaliation claims, against small employers until April 1, 2021. *Id.* § 20-11(c).

## B.    The Employer-Plaintiffs and the State of Texas Challenge the Enforceability of the Ordinance

Shortly before the Ordinance became effective, Employer-Plaintiffs ESI and Hagan filed this lawsuit, arguing that the Ordinance violates both the United States Constitution and the Texas Constitution and is, therefore, unenforceable. ESI is a Texas corporation, headquartered in Plano, Texas, that provides temporary staffing in various industries. ESI employs over 300 temporary employees within the City of Dallas at any given time. Hagan is a Texas corporation, based in Allen, Texas, that provides legal counseling and representation to employers and executives in various industries located in Texas. Hagan currently employs one attorney who works full time from home within the City of Dallas.

The Employer-Plaintiffs claim that the Ordinance violates their Fourth Amendment right to be free from unreasonable searches and seizures, their Fourteenth Amendment right to equal protection under the laws, and both their own and their employees' First Amendment right to freedom of association. The Employer-Plaintiffs further allege that the Ordinance is preempted by the Texas Minimum Wage Act ("TMWA") and, therefore, violates the Texas Constitution. The Employer-Plaintiffs have requested declaratory and injunctive relief, including a preliminary injunction barring the enforcement of the Ordinance pending a final ruling on the merits. The State of Texas has joined the suit, but it seeks declaratory and injunctive relief only on the claim that the Ordinance is preempted by the TMWA and therefore contravenes the Texas Constitution. The Employer-Plaintiffs filed a preliminary injunction motion, which was later joined by the State.

The City has filed a motion to dismiss all claims made by Plaintiffs under Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and Rule 12(b)(6) (failure to state a claim). The City contends that the Employer-Plaintiffs do not have standing to challenge the Ordinance on First Amendment grounds either on their own behalf or on behalf of their employees. Further, the City claims that Plaintiff Hagan does not have standing to bring any claim because enforcement of the Ordinance as to Hagan is too remote in time. The City also claims that all Plaintiffs have failed to state a claim as to each of the federal and state constitutional challenges, and that they have likewise failed to adequately plead municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658,

98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Lastly, the City asks the Court, in the alternative, to decline supplemental jurisdiction over Plaintiffs' claim that the Ordinance is preempted by the TMWA under state law.

## II. MOTION TO DISMISS UNDER RULE 12(b)(1)

The City's Rule 12(b)(1) motion challenges (1) the Employer-Plaintiffs' standing to bring a claim under the First Amendment on their own behalf and on behalf of their employees, and (2) Hagan's standing to bring any claim with respect to the Ordinance. Because courts must generally address jurisdiction before reaching the merits, the Court will address these questions of standing first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)) ("Without jurisdiction, the court cannot proceed at all in any cause." (internal quotation marks omitted)).

## A.    Rule 12(b)(1) Legal Standards

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). A federal court has original jurisdiction to hear a suit when it is asked to adjudicate a case or controversy that arises under federal question or diversity jurisdiction. U.S. CONST., art. III, § 2, cl.1; 28 U.S.C. §§ 1331–32. Courts have "an independent obligation to determine whether subject-matter jurisdiction exists . . . ." *Arbaugh v. Y&H Corp.*, 546 U.S. 500,

514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). However, a defendant may also challenge the court's subject matter jurisdiction by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).

A Rule 12(b)(1) challenge to the court's subject matter jurisdiction to hear a claim may address the sufficiency of the facts pleaded in the complaint (a "facial" attack) or may challenge the accuracy of the facts underpinning the claimed federal jurisdiction (a "factual" attack). *See King v. U.S. Dep't of Veteran's Affairs*, 728 F.3d 410, 413 (5th Cir. 2013) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)) (noting that subject matter jurisdiction is amenable to a facial or factual attack). "An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials'" to controvert subject matter jurisdiction. *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

When, as here, a defendant contests the facial sufficiency of the facts pleaded in the complaint to confer jurisdiction, those facts are entitled to a presumption of truth. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 553 (5th Cir. 2010) (accepting material allegations in the complaint as true when subject matter jurisdiction was challenged on the basis of the pleadings); *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981) (noting that the court "must consider the allegations in the plaintiff's complaint as true" if a Rule 12(b)(1) motion is based on the face of the complaint). However, a legal conclusion "couched as a factual allegation" is not entitled to the same presumption of truth. *Alfred v. Harris Cty.*

*Hosp. Dist.*, 666 F. App'x 349, 352 (5th Cir. 2016) (quoting *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015)) (per curiam) (unpublished). If the facts as pleaded are sufficient to confer jurisdiction, then a Rule 12(b)(1) motion will not succeed. *Paterson*, 644 F.2d at 523.

## B.    Discussion

### 1.    Hagan's standing to bring a claim

The City has moved to dismiss Employer-Plaintiff Hagan's claims for lack of subject matter jurisdiction. Because the Ordinance does not go into effect as to Hagan until August 2021, the City asserts that any injury Hagan alleges based on the Ordinance's enactment is too remote and speculative to appropriately adjudicate at this time. The City, therefore, asks the Court to find that Hagan does not have standing to bring a claim under the Ordinance and to dismiss Hagan's claims for lack of subject matter jurisdiction. The Employer-Plaintiffs argue in response that Hagan's injuries are not remote or speculative because Hagan is indisputably an object of the Ordinance's regulation and will have to take action and expend money to comply with the Ordinance's mandates before it goes into effect.

To allege facts sufficient to establish standing, a plaintiff must show "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (internal quotation marks omitted) (alteration in

original). An injury satisfies Article III requirements when it is concrete, particularized, and actual or imminent. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S.Ct 1138, 185 L.Ed.2d 264 (2013).

In an action brought under the Declaratory Judgment Act, as here, the standing requirement can be met by establishing "actual present harm or a significant possibility of future harm," *Bauer v. Texas*, 341 F.3d 352, 357–58 (5th Cir. 2003) (quoting *Peoples Rights Org. v. City of Columbus,* 152 F.3d 522, 527 (6th Cir. 1998)), "even though the injury-in-fact has not yet been completed," *id.* (quoting *Nat'l Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 280 (6th Cir. 1997)). The Supreme Court has stated that "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 157–58 (quoting *Clapper,* 568 U.S. at 414 n.5). Further, a plaintiff can "bring a preenforcement suit when he 'has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 160 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)).

Here, Hagan asserts that it will imminently suffer harm by being forced to act in a financially detrimental way to become compliant with the Ordinance. While the Ordinance states that employees of small employers like Hagan will not begin accruing sick leave time and the City will not begin assessing penalties until August 1, 2021, Hagan must act prior to that time to become compliant. For example,

Hagan must procure new software to accommodate tracking requirements, among other things, in preparation for the day the Ordinance becomes enforceable against it.

The City argues that, prior to the Ordinance becoming enforceable, circumstances may change so that Hagan may no longer be subject to the Ordinance. Such speculation fails to address the substance of Hagan's contention: under current circumstances the Ordinance requires Hagan to take action in order to become compliant. Thus, Hagan's injury is "certainly impending" and it has standing to challenge the Ordinance.[5]

For these reasons, the City's Rule 12(b)(1) motion to dismiss Hagan's claims for lack of subject matter jurisdiction is DENIED.

---

[5] For the same reasons, Hagan's claims are also ripe for review. Unlike standing, the doctrine of ripeness does not speak to who may sue, but instead *when* a claim may be brought. *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (quoting *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974)). "Ripeness 'requir[es] us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Texas v. United States*, 523 U.S. 296, 300–01, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)) (alteration in original).

The City argues that Hagan will not suffer hardship if the issues are not adjudicated at this time because the Ordinance is not yet enforceable as to small employers. *See* Dall. City Code § 20-4(b). But "[t]he Supreme Court has found hardship to inhere in legal harms," specifically, in the "harm of being 'force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences.'" *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998)) (alteration in original). Because Hagan has shown that it will imminently suffer harm by being forced to act in a financially detrimental way to become compliant with the Ordinance now, its claims are ripe for adjudication.

2.    **The Employer-Plaintiffs' standing to bring a claim under the First Amendment on their own behalf**

The City claims that the Employer-Plaintiffs do not have standing to bring a First Amendment claim on their own behalf. The Employer-Plaintiffs allege that section 20-4(e) of the Ordinance infringes on their First Amendment right to freedom of association. Section 20-4(e) allows employers operating under a collective bargaining agreement to modify the yearly cap on sick leave time. It is undisputed that section 20-4(e) effectively exempts "unionized" employers from the Ordinance because the cap can be bargained down to zero. The Employer-Plaintiffs contend that affording this potential exemption only to unionized employers impermissibly coerces non-unionized employers to give up their constitutionally protected right to refrain from associating with a union. In response, the City argues that the Employer-Plaintiffs have no right or ability to be unionized and, therefore, do not have standing to bring a First Amendment claim on that ground. Accordingly, the City asks the Court to dismiss the Employer-Plaintiffs' First Amendment claim for lack of standing under Rule 12(b)(1). Because this question properly goes to the merits of the Employer-Plaintiffs' claim rather than to their standing to bring it, the Court DENIES the City's Rule 12(b)(1) motion as to the Employer-Plaintiffs' First Amendment claim brought on their own behalf.

It is well established that an attack on the validity of a claim does not call into question the court's authority to decide it. *See Steel Co.*, 523 U.S. at 89 ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter

jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case."(emphasis in original)). Instead, a court has jurisdiction where "the right of the petitioners to recover under their complaint will be sustained if [the laws] are given one construction and will be defeated if they are given another[.]" *Bell v. Hood*, 327 U.S. 678, 685, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Only when a claim is "immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous" is it appropriate to dismiss for lack of subject matter jurisdiction. *Steel Co.*, 523 U.S. at 89 (quoting *Bell*, 327 U.S. at 682–83).

The City claims that the Employer-Plaintiffs have no right to unionize and, therefore, lack standing to bring a First Amendment claim against the City for infringing upon that right. Not so. Such an argument makes the precise error *Steel Co.* cautions against. Although a business's right to unionize or refrain from unionizing has not been explicitly recognized, the contention that it exists is by no means a frivolous claim nor is it patently foreclosed. *See Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, —— U.S. ——, 138 S.Ct. 2448, 2463, 201 L.Ed.2d 924 (2018) ("The right to eschew association for expressive purposes is likewise protected."); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 342, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (recognizing that "First Amendment protection extends to corporations"); *Mote v. Walthall*, 902 F.3d 500, 507 (5th Cir. 2018) (quoting *Prof'l Ass'n of Coll. Educators*, 730 F.2d 258, 262 (5th Cir. 1984)) ("[P]rotected First Amendment rights flow to unions as well as to their members and organizers." (internal quotation marks omitted)). Accordingly, an argument centered on whether

a business holds a right to unionize in the context of this challenge is properly made on the merits and is not so "insubstantial and frivolous" that it implicates standing.

The Employer-Plaintiffs have sufficiently alleged Article III standing. Their pleadings allege an injury in fact by asserting that the Employer-Plaintiffs' right to freedom of association has been infringed by the enactment of the Ordinance. Specifically, the Employer-Plaintiffs claim that section 20-4(e) impermissibly coerces them to give up their right to refrain from associating with a union. This alleged harm will be redressed if the Ordinance is enjoined. As the Employer-Plaintiffs have made sufficient allegations to justify Article III standing to bring a First Amendment claim on their own behalf, the City's Rule 12(b)(1) motion to dismiss this claim is DENIED.

### 3. The Employer-Plaintiffs' third-party standing to bring a First Amendment claim on behalf of their employees

The Employer-Plaintiffs also seek to vindicate their employees' First Amendment right to freedom of association, again challenging section 20-4(e) of the Ordinance. The Employer-Plaintiffs maintain that their employees are harmed by the inability of the Employer-Plaintiffs to have the same flexibility as a unionized workplace to modify the yearly cap on sick leave time imposed by the Ordinance. According to the Employer-Plaintiffs, this lack of flexibility will result in the reduction of other benefits currently enjoyed by their employees.

The City contends that the Employer-Plaintiffs have failed to plead any basis for third-party standing to raise First Amendment claims on behalf of their employees. The City further asserts that, even if the Employer-Plaintiffs had pleaded third-party standing, there is no basis for allowing the Employer-Plaintiffs to bring

claims on behalf of their employees in this case. Specifically, the City argues that the Employer-Plaintiffs and their employees do not have the type of relationship that would allow for third-party standing because, in the context of unionization issues, the nature of the employer–employee relationship is necessarily adverse. The City further argues that non-unionized employees are not injured by the Ordinance. Although the Court disagrees with the City's reasoning, it concludes that the Employer-Plaintiffs lack third-party standing to assert their employees' First Amendment rights. The City's Rule 12(b)(1) motion to dismiss the Employer-Plaintiffs' First Amendment claim purportedly brought on behalf of their employees is therefore GRANTED.

In addition to constitutional standing requirements under Article III, the Supreme Court has established prudential constraints that are "judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004). These prudential constraints require the court to refrain from adjudicating claims that allege generalized grievances or assert the rights of third parties, even if Article III requirements are otherwise met. *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (noting that prudential restrictions on standing are in place to avoid courts being "called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights"). However, the prohibition against bringing claims on

behalf of third parties is not categorical. The Supreme Court has recognized a limited number of situations in which it is appropriate to allow a party to bring claims on behalf of another. *See Powers v. Ohio*, 499 U.S. 400, 410–11, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (third-party standing); *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) (associational standing).

As here, one of the situations in which a litigant may assert the rights of a third party is when, in addition to his or her own Article III standing to bring the claim, the litigant also has a close relationship to the third party such that the parties' interests are aligned and some "hindrance to the third party's ability to protect his or her own interests" exists. *Powers*, 499 U.S. at 411. When any of the three components are missing, courts should dismiss the claim for lack of standing. *Id.*

As discussed above, a motion to dismiss for lack of standing may be either "facial" or "factual." *Superior MRI Servs., Inc.*, 778 F.3d at 504. Here, because the City has offered no evidence to contest the Employer-Plaintiffs' third-party standing, the City has made a "facial" attack on standing. "A facial attack on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Cell Sci. Sys. Corp. v. La. Health Serv. Eyeglasses*, No. 18-31034, 2020 WL 1285033, at *3 (5th Cir. Mar. 17, 2020) (per curiam) (unpublished). Liberally construing the Employer-Plaintiffs' Amended Complaint, there are allegations that both ESI and Hagan's employees have chosen not to be

unionized, thus suggesting that they do not wish to associate with a union. (Dkt. #9 ¶¶ 7–8, 41). The Court notes that the fact that the Employer-Plaintiffs' employees have not unionized does not, standing alone, mean that all, some, or none of those employees affirmatively do not wish to unionize. However, the Court recognizes that it is possible that the interests of the Employer-Plaintiffs and their employees could plausibly align in rejecting a unionized workplace. And because the City has made a facial attack on the Employer-Plaintiffs' standing, at this stage of the proceedings the Court assumes the truth of the Employer-Plaintiffs' assertion that their interests align with their employees on this issue. The relationship prong of the third-party standing requirement is therefore sufficiently pleaded.[6]

In addition to a close relationship and alignment of interests, to establish third-party standing the Employer-Plaintiffs must also plead that their employees are hindered in bringing a First Amendment claim themselves. In their Amended Complaint, the Employer-Plaintiffs suggest that, because the Ordinance only regulates employers, employees would not have standing to bring a claim on their own. Because this is a legal conclusion rather than a factual allegation, it is not entitled to a presumption of truth. *See Williamson*, 645 F.2d at 412 (noting that "the

---

[6] The City additionally argues that "non-unionized employees suffer no loss of benefits and potentially have access to greater benefits under the Ordinance than employees subject to a collective bargaining agreement" to demonstrate a lack of alignment with the Employer-Plaintiffs. (Dkt. #36 at 13). This argument misses the mark at the outset because the Employer-Plaintiffs' allegation—that their employees are harmed because the benefit of bargaining below the cap is denied to them unless they unionize—is entitled to a presumption of truth in the context of the City's facial attack on standing. The City's assertion may also be inaccurate. Although many employees will likely receive a benefit under the Ordinance that they would not have received otherwise, other employees may be losing a better or less restrictive benefit because their employer must provide sick leave time.

plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised" when a Rule 12(b)(1) motion is based on the face of the complaint). Therefore, the Court must determine whether the employees would be hindered in bringing their own First Amendment claim under the Ordinance.

When a plaintiff is the object of the regulation he challenges, establishing standing is generally not difficult. *Lujan*, 504 U.S. at 561. However, when a challenge is brought by a litigant who is not the object of the regulation at issue, standing to challenge the law "is ordinarily 'substantially more difficult' to establish." *Id.* at 562 (quoting *Allen v. Wright*, 486 U.S. 737, 758, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). This is because the causation and redressability aspects of standing may become functions of "the unfettered choices made by independent actors not before the court." *Id.* (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989)) (internal quotation marks omitted).

Here, however, Employer-Plaintiffs' employees would not have difficulty establishing their standing to assert a First Amendment claim challenging the Ordinance. The injury in fact and redressability elements of standing clearly would be met. First, non-unionized employees subject to the Ordinance could claim that the Ordinance coerces them to give up their First Amendment right to refrain from associating with a union in order to enable them to bargain to modify the Ordinance's yearly sick leave cap. In so doing, the employees would state a plausible injury in fact. Second, the plausible injury to the employees' First Amendment rights could be

redressed through declaratory and injunctive relief like that requested by the Employer-Plaintiffs in this case.

Third, although they are not expressly regulated by the Ordinance, employees are directly impacted as the other half of a regulated dyad. By design, the Ordinance alters the terms of the employer–employee relationship, imposing sick leave requirements that immediately affect both employers and employees, including the Ordinance's provision allowing only unionized workplaces to modify the Ordinance's yearly sick leave cap. For purposes of standing analysis, there is a critical distinction between would-be litigants who are directly impacted by the regulation of a third party, and those who are not. *Compare id.* at 558 (finding no standing when environmental advocates brought a declaratory action challenging the geographic scope of a statute that regulated federal agencies in funding projects that impacted endangered species), *with Craig v. Boren*, 429 U.S. 190, 192–96, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (finding standing for a 20-year-old man to challenge a statute that forbade vendors from selling 3.2% beer to men between the ages of 18 and 21). Courts have repeatedly concluded that unregulated parties have standing when their rights are necessarily impacted by the regulation of a third party. *See, e.g., MD II Entm't v. City of Dallas*, 28 F.3d 492, 497 (5th Cir. 1994) (declining to allow third-party standing where there "was no practical obstacle" to dancers raising their own equal protection claim against a zoning statute regulating their employer); *cf. Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742 (7th Cir. 2007) (refusing to allow realtors to challenge a point-of-sale inspection ordinance because homeowners would

be better advocates for their property rights despite homeowners not being directly regulated by the ordinance). Here, the Ordinance applies differently to employers when their employees have chosen to unionize, allowing the sick leave cap to be altered only for unionized workplaces. Thus, although employees are not expressly regulated by the Ordinance, their ability to bargain to reduce the yearly cap is directly conditioned on their own decision to unionize. Because the Ordinance directly impacts employees as well as their employers, the Court concludes that there is no reason to believe that the Employer-Plaintiffs' employees would lack standing to challenge the Ordinance.

For these reasons, the Employer-Plaintiffs have not sufficiently pleaded a hindrance to their employees bringing a claim challenging the Ordinance, leaving no basis on which the Employer-Plaintiffs can properly assert third-party standing. The City's motion to dismiss the Employer-Plaintiffs' First Amendment claim brought on behalf of their employees is therefore GRANTED.

### III. MOTION TO DISMISS UNDER RULE 12(b)(6)

The City also moves for dismissal of all of the Plaintiffs' claims for failure to state a claim under Rule 12(b)(6), as well as all of the Employer-Plaintiffs' constitutional claims for failure to plead municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

## A.     Rule 12(b)(6) Legal Standards

Under the relaxed pleading standards of Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." When a defendant contends that a plaintiff has failed to meet this standard, Rule 12(b)(6) provides a mechanism to challenge the legal sufficiency of a claim early in litigation. Such motions are, however, "viewed with disfavor and rarely granted." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

To survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must plead in its complaint only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

Although a probability that the defendant is liable is not required, the plausibility standard demands "more than a sheer possibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In assessing a motion to dismiss under Rule 12(b)(6), the facts pleaded are entitled to a presumption of truth, but legal conclusions that lack factual support are not entitled to the same presumption. *Id.* To determine whether the plaintiff has pleaded enough to "nudge[]

their claims across the line from conceivable to plausible," a court draws on its own "judicial experience and common sense." *Id.* at 679–80 (first quoting *Twombly*, 550 U.S. at 570, then citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2nd Cir. 2007)) (internal quotation marks omitted). This threshold is surpassed when "a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

## B.    Municipal Liability under *Monell*

The City moves for dismissal of the Employer-Plaintiffs' constitutional claims based on the assertion that the Employer-Plaintiffs have not sufficiently pleaded the *Monell* requirements necessary to impose liability for deprivation of constitutional rights under 42 U.S.C. § 1983. 436 U.S. at 694. Under *Monell,* a municipality cannot be sued under section 1983 unless it can be established that the constitutional violation was the result of an official policy. *Id.* An official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Bennett v. City of Slidell*, 735 F.2d 861, 861 (5th Cir. 1984) (en banc) (per curiam).

The alleged pleading deficiency complained of by the City is that the Employer-Plaintiffs did not specifically identify the *Monell* elements of municipal liability in their complaint. This argument fails. Because the Dallas City Council is

the "final policy maker of the [C]ity of Dallas," the Employer-Plaintiffs must only plead that the city council officially adopted and promulgated an unconstitutional ordinance. *See Groden v. City of Dall.*, 826 F.3d 280, 284 (5th Cir. 2016) (finding that because "the policymaker is a legal question that need not be pled," a complaint "need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable" to survive a motion to dismiss). The Employer-Plaintiffs have clearly stated in their amended complaint that "the City enacted the Paid Sick Leave Ordinance," (Dkt. #9 ¶ 13), and that the Ordinance is unconstitutional under various legal theories, (Dkt. #9 ¶¶ 58, 62, 66). The City, in its motion to dismiss, acknowledges that the city council adopted the Ordinance. (Dkt. #36 at 2). The Employer-Plaintiffs have met the pleading requirements necessary to confer municipal liability under section 1983. The City's motion to dismiss on this theory is therefore DENIED.

## C.  Rule 12(b)(6) Challenge to the Employer-Plaintiffs' First Amendment Claim

The Employer-Plaintiffs assert that the Ordinance violates their right to associate under the First Amendment, pointing to section 20-4(e) of the Ordinance, which permits unionized employers operating with a collective bargaining agreement to "modify the yearly cap" of paid sick leave. The Employer-Plaintiffs contend that, through section 20-4(e), the Ordinance impermissibly conditions the benefit of bargaining to modify the Ordinance's yearly sick leave cap on employers giving up their right to refrain from unionizing, without the justification of being narrowly tailored to a compelling governmental interest. The Employer-Plaintiffs further

allege that, because their employees have not unionized of their own accord, and because as employers they have not voluntarily recognized a union to represent the employees, they are not and do not wish to be "unionized employers." The City argues that the Employer-Plaintiffs have failed to state a claim because they have no unilateral right to unionize.

The First Amendment's freedom of association "provides both public and private employees the right to organize . . . and belong[s] to labor unions." *Vicksburg Firefighters Ass'n, Local 1686 Int'l Ass'n of Firefighters v. City of Vicksburg*, 761 F.2d 1036, 1039 (5th Cir. 1985) (citing *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 464–66, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979)). The government infringes on that right when it "tak[es] steps to discourage or prohibit union membership or association." *Smith*, 441 U.S. at 466. Similarly, the existence of the right to associate "plainly presupposes a freedom not to associate." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)) (internal quotation marks omitted).

The unconstitutional conditions doctrine prevents the government from making some benefit contingent on relinquishing a constitutional right. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604, 133 S.Ct. 2586, 186 L.Ed.2d 697 (2013) (quoting *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983)) ("We have said in a variety of contexts that 'the government may not deny a benefit to a person because he exercises a

constitutional right.'"). In other words, where government action compelling or prohibiting some sort of association would be unconstitutional, so too is government action coercing the same. *See Sherbert v. Verner*, 374 U.S. 398, 406, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (holding that it is unconstitutional "to condition the availability of benefits" on a person's "willingness to violate a cardinal principle of her religious faith" because doing so "effectively penalizes the free exercise of her constitutional liberties").

At the outset, the Court must determine whether the Employer-Plaintiffs possess the right to unionize. It is undisputed, as the Employer-Plaintiffs correctly state, that individuals, corporations, and other associations generally possess rights under the First Amendment that are of the same nature and quality. *See Citizens United*, 558 U.S. at 342–43 (noting that First Amendment rights extend to corporations and other associations and are not treated differently than rights afforded to natural persons). However, First Amendment rights can be infringed only when those claiming the right have the ability to engage in the activity they contend is improperly coerced. That is to say, there can be no infringement under the First Amendment where it is impossible for the regulated entity to associate in the manner it claims the regulation is coercing.

The Employer-Plaintiffs claim that the Ordinance conditions the benefit of being able to bargain to modify the yearly cap on giving up their right not to

associate—that is, their right to refrain from associating with a union.[7] But a union is a special type of association whose creation begins with the actions of *employees*. There is no mechanism for an employer to unilaterally unionize on the employees' behalf without the employees' impetus. Employees alone have the right to seek unionization under the National Labor Relations Act ("NLRA") by either asking the National Labor Relations Board ("NLRB") to conduct an election ("election provision") or by requesting that their employer voluntarily recognize the union ("voluntary recognition provision"). 29 U.S.C. § 159(a); *id.* § 159(c)(1); *see also Pac. Molasses Co. v. N.L.R.B.*, 577 F.2d 1172, 1177 (5th Cir. 1978) (noting the method by which a union establishes the authority to bargain on behalf of employees).

The Employer-Plaintiffs maintain that their ability to "unionize" or, more accurately, to associate with a union, is derived from the voluntary recognition provision of the NLRA. They argue that they "have not elected to invite a union to represent their employees" and, therefore, are exercising their right to refrain from associating with a union. This assertion misunderstands the nature of unions and the authority granted to employers by the voluntary recognition provision. An employer cannot simply elect to recognize a union—they may do so *only* upon a sufficient showing of support from employees. *See* 29 U.S.C. § 159(c)(1) ("Whenever a petition

---

[7] Although the Employer-Plaintiffs cite to *Citizens United* and *Southwire Co. v. N.L.R.B.*, 383 F.2d 235, 240 (5th Cir. 1967), for the proposition that they possess a First Amendment right to refrain from operating as a unionized business, neither case specifically addresses an employer's right to unionize. *See Citizens United*, 558 U.S. at 342 (recognizing that "First Amendment protections extend to corporations" in a discussion of corporate political speech); *Southwire Co.*, 383 F.2d at 240 (5th Cir. 1967) (discussing an employer's right to express an opinion regarding unionization rather than its right to unionize).

shall have been filed . . . by an employer, alleging that one or more individuals or labor organization have presented to him a claim to be recognized. . . ."). Similarly, employers cannot choose to refrain from becoming a "unionized" employer when faced with sufficient support from employees. *See id.* ("Whenever a petition shall have been filed . . . by an employee or group of employees. . . alleging that a substantial number of employees wish to be represented. . . ."). Thus, the Employer-Plaintiffs cannot of their own accord decide whether their employees will unionize. Because the Employer-Plaintiffs themselves have no ability to decide whether their employees will unionize, they certainly cannot be coerced into doing so. Therefore, the Employer-Plaintiffs have not stated a legally cognizable claim under the First Amendment. Accordingly, the City's Rule 12(b)(6) motion to dismiss the Employer-Plaintiffs' First Amendment claim brought on their own behalf is GRANTED.

## D.    Rule 12(b)(6) Challenge to the Employer-Plaintiffs' Equal Protection Claim

The City also seeks dismissal under Rule 12(b)(6) of the Employer-Plaintiffs' Fourteenth Amendment claim that the Ordinance violates their right to equal protection under the laws. Like the Employer-Plaintiffs' First Amendment claim, this claim also concerns the provisions of section 20-4(e) of the Ordinance permitting only unionized employers to modify the yearly cap of paid sick leave. The Employer-Plaintiffs allege that, by including section 20-4(e), the Ordinance intentionally and impermissibly distinguishes between employers operating under a collective bargaining agreement and those that are not.

"The Fourteenth Amendment[] promise[s] that no person shall be denied equal protection of the laws." *Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (citations omitted). However, laws often classify and disadvantage some group. *Id.* Whether a particular type of classification is lawful depends both on the group being classified and the activity being regulated. Laws that draw lines distinguishing a suspect class—like those based on immutable characteristics such as race, alienage, and national origin—or those that affect a fundamental right will be analyzed under strict scrutiny. *Frontiero v. Richardson*, 411 U.S. 677, 682, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). With some exceptions,[8] all others will be reviewed under rational basis scrutiny. *Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

Because the Employer-Plaintiffs do not have a fundamental right to unionize, as discussed *supra* Section III(C), and are not a protected class, their equal protection claim is subject to rational basis scrutiny. *See Lyng v. Int'l Union, UAW*, 485 U.S. 360, 370, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988) (determining that a statute refusing food stamps to striking union members did not implicate a protected class or fundamental right). Under rational basis review, the question before the Court is whether the Ordinance's classification of employers operating under a collective bargaining agreement and those who are not is rationally related to some legitimate governmental interest. The Court finds that it is.

---

[8] Sex or illegitimacy classifications are analyzed under intermediate scrutiny. *See Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 191, 100 L.Ed.2d 465 (1988) (discrimination based on illegitimacy); *Craig*, 429 U.S. at 197 (discrimination based on sex).

Legislation will survive rational basis scrutiny "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification"—even if the legislature does not provide one. *Heller*, 509 U.S. at 320 (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)) (internal quotation marks omitted). Accordingly, a law is presumed constitutional unless the challenger can "negative every conceivable basis which might support it." *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)).

Although the rational basis standard is quite deferential, it is not "toothless." *Schweiker v. Wilson,* 450 U.S. 221, 234, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981) (quoting *Mathews v. Lucas*, 427 U.S. 495, 510, 96, S.Ct. 2755, 49 L.Ed.2d 651 (1976)) (internal quotation marks omitted). "The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citations omitted). Where the plaintiff pleads facts that sufficiently negate any rational basis for the legislation, the equal protection claim will survive a motion to dismiss. But where it does not, the claim will fail. *See Crook v. El Paso Indep. Sch. Dist.*, 277 F. App'x 477, 481 (5th Cir. 2008) (per curiam) (unpublished) (upholding the district court's dismissal of plaintiff's equal protection claim where the defendant identified a rational purpose for a classifying policy that the plaintiff did not negate).

In support of its motion to dismiss, the City points to "compliance" with federal labor laws as its legitimate governmental interest. According to the City, because the federal labor laws preempt claims brought under state and local laws that are "substantially dependent upon analysis of the terms of a collective bargaining agreement," the Ordinance carved out employers operating under a collective bargaining agreement to avoid preemption—thereby, as the argument goes, avoiding conflict with federal law and its interests. (Dkt. #36 at 14) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). Put differently, the City argues that it had to include the collective bargaining agreement classification or risk preemption. The City further defends the distinction by pointing to other state laws which distinguish employers with a collective bargaining agreement from those without one. *Id.* (citing TEX. LAB. CODE ANN. § 413.022(a) ("Nothing in this section supersedes the provisions of a collective bargaining agreement. . . .").

The Employer-Plaintiffs seize on the City's use of the phrase "complying with federal labor laws" in their attempt to rebut the City's justification. They argue that the City cannot have a legitimate interest in complying with federal labor laws through the collective bargaining agreement distinction because the laws themselves prohibit discrimination based on union status.

While the Employer-Plaintiffs' understanding of the general policy thrust of federal labor law is correct, these arguments are unhelpful to their cause because they do not confront the reason the City claims it created the distinction—to avoid

preemption. This rationale has been found to sufficiently justify a regulation subject to rational basis review. *See Boston Taxi Owners Ass'n, Inc. v. City of Boston*, 180 F. Supp. 3d 108, 118–19 (D. Mass. 2016) (acknowledging that drafting a regulation that will not be preempted is a legitimate government objective for a city). Further, courts have dismissed similar equal protection claims despite the NLRA's interest in the equitable treatment of union and non-union workers. *See Babler Bros., Inc. v. Roberts*, 761 F. Supp. 97, 101 (D. Or. 1991), *aff'd*, 995 F.2d 911 (9th Cir. 1993) (finding that an overtime pay statute that exempted contractors that were a party to a collective bargaining agreement did not violate equal protection).

Because treating employers without a collective bargaining agreement differently than those with one is rationally related to the City's interest in crafting legislation that avoids federal preemption, the Employer-Plaintiffs have not rebutted "every conceivable basis" that supports the Ordinance's classification. Accordingly, the City's motion to dismiss the Employer-Plaintiffs' equal protection claim is GRANTED.

## E.    Rule 12(b)(6) Challenge to the Employer-Plaintiffs' Fourth Amendment Claim

The Employer-Plaintiffs claim that the Ordinance is unconstitutional on its face under the Fourth Amendment. Specifically, the Employer-Plaintiffs contend that, because the Ordinance authorizes city officials to issue administrative subpoenas to employers compelling attendance of witnesses or production of documents without precompliance review, it runs afoul of the Fourth Amendment. The City moves to dismiss this claim, arguing that the Dallas City Code does, in fact,

provide a sufficient opportunity for subpoenaed employers to obtain precompliance review.

Facial challenges to a statute or ordinance are "the most difficult . . . to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). But as the Supreme Court has recently explained, it "has never held that these claims cannot be brought under any otherwise enforceable provision of the Constitution." *City of Los Angeles v. Patel*, 576 U.S. 409, 135 S.Ct. 2443, 2449, 192 L.Ed.2d 435 (2015). To the contrary, and in the specific context of a Fourth Amendment facial challenge to a municipal ordinance, the Supreme Court has made clear that "facial challenges under the Fourth Amendment are not categorically barred or especially disfavored." *Patel*, 135 S.Ct. at 2449; *see also id.* (observing that the Supreme Court has "allowed [facial] challenges to proceed under a diverse array of constitutional provisions" and that "Fourth Amendment challenges to statutes authorizing warrantless searches are no exception").

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects," to be free from "unreasonable searches and seizures," and requires that warrants must be based on probable cause. U.S. CONST. amend. IV. The rights secured by the Fourth Amendment extend not only to physical searches, but also include compulsory inspection of documents in a commercial establishment. *See v. City of Seattle*, 387 U.S. 541, 543–44, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). Generally, warrantless searches conducted without judicial review are "*per se* unreasonable." *Patel*, 135 S.Ct. at 2452; *see also Arizona v. Gant*, 556 U.S. 332,

338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (explaining that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions") (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

One of the exceptions to the warrant requirement is the administrative search, which is at issue here. *See Cotropia v. Chapman*, 721 F. App'x 354, 357 (5th Cir. 2018) (per curiam) (unpublished). Administrative subpoenas ordering the production of a business's records do not offend the Constitution if they are "sufficiently limited in scope, relevant in purpose, and specific in directive." *See*, 387 U.S. at 544. Although an administrative subpoena may issue without a warrant, "[a]bsent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Patel*, 135 S.Ct. at 2452; *see also Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 414–15, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984) (citing *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 195, 66 S.Ct. 494, 90 L.Ed 614 (1946)) (rejecting a Fourth Amendment claim where the government sought only to enforce a court order for the production of documents "made after adequate opportunity to present objections"). Without this opportunity, a search conducted by means of an administrative subpoena violates the Fourth Amendment. *Patel*, 135 S.Ct. at 2452 (noting that searches of hotel records would have been constitutional had they been performed under an administrative subpoena because the parties in that case

stipulated that the searched party could have moved to quash it, thus meeting any Fourth Amendment concerns).[9]

The Employer-Plaintiffs allege that the Ordinance ignores these constitutional limitations on administrative searches, pointing to a portion of Article III of the Ordinance, entitled "Enforcement." Article III consists of three provisions, sections 20-9 through 20-11. Section 20-9, entitled "Procedures for Filing Complaints," provides that any employee may file a complaint with the City that the Ordinance is being violated by an employer. *See* Dall. City Code § 20-9. Section 20-10, entitled "Investigation," provides procedures for the investigation of such employee complaints, directing that, upon the filing of a complaint, the City "shall commence a prompt and full investigation" to determine "whether there is sufficient cause to believe that a violation of [the Ordinance]" has occurred. *Id.* § 20-10(a). Section 20-10(b) empowers the City, in conducting its investigation of employee complaints, to "issue subpoenas to compel the attendance of a witness or the production of materials or documents in order to obtain relevant information and testimony."[10] Section 20-10(b) goes on to state that, "[r]efusal to appear or to produce any document

---

[9] As the Fifth Circuit has explained, consistent with Supreme Court precedent, "Texas law contemplates the opportunity for precompliance review of an administrative subpoena before a neutral decisionmaker." *Cotropia*, 721 F. App'x at 358 n.2. "For example, Texas Occupations Code § 153.007(e) states that if 'a person fails to comply with a [Texas Medical Board] subpoena,' then [the Medical Board] 'may file suit to enforce the subpoena.'" *Id.* (quoting TEX. OCC. CODE ANN. § 153.007(e)). As the *Cotropia* court observed, "[i]n this scenario, a court can, prior to compliance, determine whether the subpoena is valid." *Id.*

[10] Before issuing a subpoena, the City must "seek the voluntary cooperation of any employer to timely obtain relevant information and testimony in connection with any investigation of a complaint filed under [the Ordinance]." Dall. City Code § 20-10(b).

or other evidence after receiving a subpoena pursuant to this section is a violation of this chapter and subject to sanctions as described in section 2-9 of the Dallas City Code."[11] Finally, section 20-11, entitled "Voluntary Compliance; Violations; Penalties; Appeals," provides that, after seeking voluntary compliance from the employer to remedy a violation of the Ordinance, a civil fine not to exceed $500 may be imposed. Section 20-11 also allows employers to appeal any civil penalty imposed for a violation of the Ordinance.

The Employer-Plaintiffs allege that, because the Ordinance fails to include a procedure for obtaining precompliance review of subpoenas issued in conjunction with investigations of employee complaints under section 20-10(b), it violates the Fourth Amendment on its face. The City counters by referencing another portion of the Dallas City Code, section 2-8. Section 2-8 states that, "[i]n all hearings and investigations" conducted by the city council, the city manager, or any person or committee authorized to conduct investigations as to city affairs, the City may "subpoena witnesses and compel the production of books, papers and other evidence material to such inquiry in the same manner as is now prescribed by the laws of this state for compelling the attendance of witnesses and production of evidence in the corporation court."[12] According to the City, section 2-8's subpoena provision

---

[11] Section 2-9 provides little guidance on the nature of sanctions that may be imposed for, among other things, "refus[ing] to be sworn," "refus[ing] to appear to testify," or "fail[ing] or refus[ing] to produce any book, paper, document or instrument touching any matter under examination" by the City. Dall. City Code § 2-9. According to section 2-9, a person who runs afoul of its provisions is simply "guilty of an offense." *Id.*

[12] Corporation court is the municipal court. TEX. GOV'T CODE ANN. § 29.002.

"addresses the procedures applicable to *any* subpoena issued by the City." (Dkt. #36 at 17). Based on its contention that section 2-8 provides for precompliance review of *any* subpoena the City issues, including subpoenas specifically authorized by section 20-10(b) of the Ordinance, the City maintains that the Employer-Plaintiffs' Fourth Amendment claim is not viable.

The City's interpretation of section 20-10(b) cannot be reconciled with the text and structure of the Ordinance. Section 20-10(b)'s text makes no reference to section 2-8. Instead, section 20-10(b) describes, in language differing from that of section 2-8, a subpoena process unique to the investigation of employee complaints concerning alleged employer violations of the Ordinance. The omission of any reference to section 2-8 is particularly telling because section 20-10(b) expressly incorporates section 2-9 of the City Code concerning sanctions. *See id.* § 20-10(b). In drafting and enacting the Ordinance, the City therefore demonstrated that it knew how to incorporate other parts of the City Code into the provisions of the Ordinance. Courts "presume the words in a statute are selected with care" and should "interpret them in a manner that gives meaning to all of them without disregarding some as surplusage." *Plains Capital Bank v. Martin*, 459 S.W.3d 550, 556 (Tex. 2015). Section 20-10(b)'s explicit incorporation of section 2-9, taken together with the absence of any reference to section 2-8, confirms that section 2-8 is not incorporated into the Ordinance.

To the extent the City contends that, regardless of incorporation into section 20-10(b), the general provisions of section 2-8 concerning administrative subpoenas

control over the specific provisions of section 20-10(b), this argument also fails. As the Supreme Court has explained, "[i]t is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645, 132 S.Ct. 2065, 182 L.Ed.2d 967 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)) (internal quotation marks omitted); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: INTERPRETATION OF LEGAL TEXTS 183–87 (2012) (explaining that a later enacted, more specific statute generally governs over an earlier, more general one).[13]

Moreover, even if section 2-8 applied to the Ordinance, the City overreads its provisions, which fail to direct the subject of an administrative subpoena to a neutral forum in which it could obtain review. *See Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 493 (S.D.N.Y. 2019) (noting that an ordinance that failed to provide procedures or a forum to challenge a demand for production was unconstitutional on its face). Nothing in section 2-8 makes clear that the City will provide constitutionally adequate procedures for precompliance review of its administrative subpoenas. Section 2-8 merely states that any person authorized by the city council or city manager may subpoena witnesses or compel the production of evidentiary materials "in the same manner as now prescribed by the laws of this state for compelling the attendance of witness and production of evidence in the corporation court." Dall. City

---

[13] Section 2-8 was made part of the Dallas City Code in 1941, while the Ordinance was passed in 2019.

Code § 2-8. On its face, section 2-8 describes how a subpoena may issue, not a procedure for precompliance review.

The City's reading of section 2-8 effectively concedes that this city code provision does not operate to provide constitutionally adequate precompliance review of administrative subpoenas. As explained by the City, sections 2-8 and 2-9 work in conjunction to allow an employer to "question the reasonableness of the subpoena" only *after* being subject to citation for failing to comply with an administrative subpoena. (Dkt. #36 at 17) ("[A]n employer who refused to comply with a subpoena could be subject to citation and *then* would have an opportunity to appear before the Dallas Municipal Court at which time it would have the 'opportunity to question the reasonableness of the subpoena . . . .'" (quoting *Donovan*, 464 U.S. at 415) (emphasis added)). This is not the order of events contemplated by the Fourth Amendment. *See Patel*, 135 S.Ct. at 2452 (explaining that the government cannot reasonably force business owners to risk a criminal penalty to invoke statutory safeguards against suspicionless searches). Providing for review only after a citation for noncompliance has issued creates an unconstitutional Hobson's choice for the recipient of an administrative subpoena under section 2-8: comply with a potentially overbroad subpoena in contravention of Fourth Amendment protections or risk a citation that may or may not withstand review for reasonableness.

In sum, the Employer-Plaintiffs' claim that the Ordinance does not provide for precompliance review sufficiently states a claim under the Fourth Amendment to survive scrutiny under Rule 12(b)(6). Section 20-10(b) of the Ordinance, the operative

provision for the issuance of administrative subpoenas to employers during the investigation of employee complaints regarding paid sick leave, provides no mechanism whatsoever for precompliance review, does not incorporate section 2-8 of the city code, and controls over section 2-8's general provisions concerning administrative subpoenas. And, even if section 2-8 applied to administrative subpoenas issued under the Ordinance, section 2-8 does not appear to provide constitutionally adequate precompliance review. The City's motion to dismiss the Employer-Plaintiffs' claim under the Fourth Amendment is therefore DENIED.

## F.    Preemption under the Texas Constitution

The City also seeks dismissal under Rule 12(b)(6) of the preemption claim asserted by all Plaintiffs under the Texas Constitution. For reasons that are fully explained below, *see infra* Part V(B), the Court holds that Plaintiffs have sufficiently stated a preemption claim. The City's motion to dismiss the preemption claim is therefore DENIED.

## IV. SUPPLEMENTAL JURISDICTION

The parties do not dispute that the Court has supplemental jurisdiction over Plaintiffs' preemption claim. *See* 28 U.S.C. § 1367(a). The Court agrees. Generally, a district court has original jurisdiction over claims that arise under federal law, *id.* § 1331, as well as cases that arise under state law and meet certain diversity of citizenship and amount in controversy requirements, *id.* § 1332. A court may also exercise supplemental jurisdiction over state law claims that it would not have

original jurisdiction over if those claims are "part of the same case or controversy" as the federal claims. *Id.* § 1367(a).

The Court has original jurisdiction over the constitutional claims made in this case under the First Amendment, Fourth Amendment, and the Fourteenth Amendment, all challenging the enforceability of the Ordinance. The Court has determined that the Employer-Plaintiffs' First Amendment and Fourteenth Amendment claims should be dismissed. However, the City's motion to dismiss the Employer-Plaintiffs' Fourth Amendment claim has been denied, and this claim will be permitted to proceed. Plaintiffs' state law preemption claim, alleging that the Ordinance is also unenforceable because it is preempted by the TMWA, is part of the same case or controversy as the Fourth Amendment claim. The Court therefore has supplemental jurisdiction over the preemption claim under 28 U.S.C. § 1367(a).

In its motion to dismiss, the City does not raise a question of subject matter jurisdiction as to the preemption claim. Instead, the City asks the Court to exercise its discretion to decline supplemental jurisdiction over the preemption claim. *See id.* § 1367(c). Under section 1367(c), the Court may decline to exercise supplemental jurisdiction over the state law preemption claim if:

> (1) the claim raises a novel or complex issue of state law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* Courts should also consider the common law factors of "judicial economy, convenience, fairness, and comity" when determining whether to retain supplemental jurisdiction over a state law claim. *Enochs v. Lampasas Cty.*, 641 F.3d. 155, 159 (5th Cir. 2011) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). Weighing all factors together, with no single factor dispositive, courts should determine whether the overall balance favors declining jurisdiction while "guard[ing] against improper forum manipulation." *Id.* "[I]n the usual case in which all federal law claims are eliminated before trial" the common law factors "will point toward declining to exercise [supplemental] jurisdiction." *Carnegie-Mellon*, 484 U.S. at 350 n.7.

The City argues that both the predominance of the state law claim and its novelty require the Court to decline supplemental jurisdiction and dismiss the claim. (Dkt. #36 at 18). The State urges that the City has waived the other factors by failing to raise them, but that misstates the law. A defendant waives a challenge to supplemental jurisdiction if it is not raised in the district court, but once the issue is raised, the defendant's failure to discuss all of the factors bearing on supplemental jurisdiction does not preclude their consideration by the Court. *See Powers v. United States*, 783 F.3d 570, 576–77 (5th Cir. 2015) (noting that the failure to challenge supplemental jurisdiction in the district court rendered the issue waived on appeal). Accordingly, because the City has appropriately raised the issue, the Court must assess each of the statutory and common law factors to determine whether it should decline supplemental jurisdiction.

As to the first factor described in section 1367(c)(1), this case does not present a novel or complex issue of state law. To the contrary, Texas preemption law is well delineated. *See, e.g.*, *Tex. Manufactured Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1101 (5th Cir. 1996) (analyzing whether a state statute preempted a local ordinance); *BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7–8 (Tex. 2016) (outlining municipal ordinance preemption and statutory construction). Not only is the applicable Texas preemption law clear, as will be explained further herein, *see infra* Part V(B), Texas's Third Court of Appeals has already held that the TMWA preempts a city ordinance requiring private employers to provide paid sick leave. *See Tex. Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425, 440 (Tex. App.—Austin 2018, pet. filed). Thus, the Court has the benefit of state court precedent specifically addressing TMWA preemption of a materially similar municipal paid sick leave ordinance. *See Mem'l Hermann Healthcare Sys., Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) ("In making an *Erie* guess, [federal courts] defer to intermediate state appellate court decisions, 'unless convinced by other persuasive data that the highest court of the state would decide otherwise.'") (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)).[14]

---

[14] A Texas state district court has also issued an order granting a motion temporarily enjoining the enforcement of a similar paid sick leave ordinance enacted in the City of San Antonio. (Dkt. #61-1) (Order on Temporary Injunction of the 408th Judicial District of Bexar County, Texas, in *Associated Builders & Contractors of S. Tex., et al. v. City of San Antonio, et al.*, No. 2019CI13921). Texas's Fourth Court Appeals has abated the appeal of that order pending the resolution of a petition for review before the Texas Supreme Court in the *City of Austin* case, suggesting that the Fourth Court of Appeals considers San Antonio's paid sick leave ordinance to be materially similar to the Austin paid sick leave ordinance enjoined in the *City of Austin* case. *City of San Antonio v. Associated Builders & Contractors of S. Tex.,*

By contrast, cases that have identified novel issues of state law include those that ask the Court to apply the law for the first time. *See, e.g.*, *In re Abbott Labs.*, 51 F.3d 524, 529 (5th Cir. 1995) (noting that whether indirect purchasers could state a claim under Louisiana antitrust law was a novel and complex issue); *Brimm v. ExxonMobil Pipeline Co.*, 213 F. App'x 303, 305 (5th Cir. 2007) (per curiam) (unpublished) (finding that the question of whether a state statute provided a private cause of action was a novel issue when no state court had decided the issue).

The City claims that, because there is a petition for review of the *Austin* court's order pending before the Texas Supreme Court, this case presents a novel issue of law. But as the State has correctly noted, such a reading of "novel" under 28 U.S.C. § 1367(c) would mean that, even where a state's highest court had established a legal standard, any new set of facts involving the application of that standard in federal court would present a "novel" issue. The Court is unaware of any precedent supporting the City's unusual interpretation and rejects such a strained and unworkable construction of the statute.

As to the second factor described in section 1367(c)(2), the City argues that the Court should decline supplemental jurisdiction because the state law claim substantially predominates over the federal claim. When considering whether a claim substantially predominates over others, courts consider the proof required, scope of issues, and "comprehensiveness of the remedy sought." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The questions before

---

No. 04-20-00004-CV, slip op. (Tex. App.—San Antonio Mar. 4, 2020 no pet. h.) (mem op., not designated for publication).

the Court in this case are predominantly legal in nature. It is, therefore, unlikely that any one claim will require substantially more evidentiary proof than another. As the Court has previously observed in the context of venue, the parties have already agreed that "the subject matter [of this case] lends itself to having little evidence to present" and the parties have likewise "point[ed] to no physical evidence that may be required to resolve the case." (Dkt. #49). Nor does the state law claim's scope predominate. Whether the Ordinance is preempted by the Texas Constitution is not a claim that is dependent on the resolution of multiple questions of Texas law. It requires the Court to decide only whether the Texas legislature intended to preempt municipalities from regulating the minimum wage and, if so, whether the paid sick leave mandated by the Ordinance falls within the meaning of the word "wage." Lastly, the remedy sought for the federal Fourth Amendment claim and the state law claim is the same—an order enjoining the entire Ordinance. Although the remedy for the federal claim may be narrowed later, this factor asks about the remedy *sought*. Because the remedy sought for the remaining federal claim and the state law claim is the same, the state law claim does not substantially predominate over the federal claim. This factor is therefore neutral.

The final two statutory factors, described in section 1367(c)(3)–(4), both weigh in favor of retaining jurisdiction, as a viable federal claim remains and there is no other compelling reason to decline jurisdiction.

Turning to the common law factors, both the convenience and fairness factors are neutral. This Court and a court in Dallas County are roughly equivalent in their

convenience to the parties. *See* (Dkt. #49 at 8) (determining that neither the Northern District of Texas nor the Eastern District of Texas was inconvenient for any party associated with the case). And any discovery, research, or briefing that has already been completed by the parties concerning the state law issue will be largely, if not completely, applicable in state court. Thus, neither party would be prejudiced by dismissing the case.

The judicial economy factor, on the other hand, weighs slightly in favor of retaining the case. Although the Court has not yet invested a substantial amount of judicial resources into the case, declining supplemental jurisdiction on the state law claim would require the involvement and attention of an additional court, thereby doubling the effort required to resolve it. *See PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 680 (5th Cir. 1973) (noting a "disinclination to encourage duplication of effort"). It is not economical to require a case that could be resolved in one court to proceed in two courts. Because a federal claim remains in this case and will proceed, it is a more efficient use of judicial resources to have all challenges to the Ordinance resolved in one court.

As to the comity factor, the State argues that comity weighs in favor of retaining the state law claim because the State of Texas itself has indicated its desire to proceed in a federal forum. In support, the State analogizes decisions in which federal courts have declined to dismiss cases on the basis of international comity when the United States has brought a claim. The international comity doctrine instructs courts to refuse jurisdiction when adjudicating the case may upset foreign

relations. *See Derr v. Swarek*, 766 F.3d 430, 442 (5th Cir. 2014) (noting that the purpose of international comity is to defer to foreign judgments that are the result of a "fully and fairly" litigated case). In the cases cited by the State, courts have retained jurisdiction because "declining jurisdiction out of deference to the interest of a foreign nation would be inappropriate" as the executive branch has already weighed international policy interests. *See United States v. All Assets Held in Account Number XXXXXXXX*, 83 F. Supp. 3d. 360, 372 (D.D.C. 2015) (refusing to decline jurisdiction over a case brought by the United States which had been previously settled in Nigeria). The State argues that, consistent with the international comity doctrine, Texas's executive branch has already weighed the state and local interests at stake in this case, and has affirmatively decided to proceed in federal court.

Notwithstanding the State executive branch's decision to proceed in federal court, its reliance on the international comity doctrine is unpersuasive. Comity is a factor in determining whether a federal court should retain supplemental jurisdiction over state law claims because of a desire to avoid "needless decisions of state law" and to "promote justice between the parties by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726. The Supreme Court has explained that comity, in the federalism context, supports the idea that "the National Government will fare best if the States *and their institutions* are left free perform their separate functions in their separate ways." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10, 107 S.Ct 1519, 95 L.Ed.2d 1 (1987) (quoting *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct 746, 27 L.Ed.2d 669 (1971)) (emphasis added). Comity as a common law factor in

determining supplemental jurisdiction must, as both *Pennzoil* and *Gibbs* suggest, refer to a more global deference that includes the interests of the parties, courts, and citizens of the state in having state issues decided by state courts. The Court, therefore, concludes that comity, as it normally does in this context, weighs in favor of declining supplemental jurisdiction in this case.

Taken together, the statutory and common law factors weigh in favor of retaining supplemental jurisdiction over the state law claim. That a federal claim remains viable, and that the state law issue is neither novel, complex, nor predominant, weigh in favor of retaining supplemental jurisdiction over the state law claim. And there are no other compelling reasons to decline jurisdiction. Even if one of the statutory factors was invoked, the common law factors do not counsel strongly in favor of declining jurisdiction, with only comity concerns weighing in favor of dismissing the state law claim. Thus, having weighed the statutory and common law factors, the Court will exercise supplemental jurisdiction over the state law claim. The City's motion to dismiss the claim is therefore DENIED.

## V. PRELIMINARY INJUNCTION

Having determined that the Plaintiffs have sufficiently stated a claim under the Fourth Amendment and under state law to survive the City's dismissal motion, and that the Court should retain supplemental jurisdiction over the state law preemption claim, the Court now turns to the Plaintiffs' motions for preliminary injunction. Because the Court concludes that the Plaintiffs' request for a preliminary injunction on the state law preemption claim is substantially likely to succeed on the

merits and otherwise meets the requirements for a preliminary injunction, it will not reach the Fourth Amendment claim seeking the same relief.

## A.      Preliminary Injunction Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). To issue such relief, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* It does so by requiring the plaintiff to establish:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). While a plaintiff "is not required to prove his case in full," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), he must "clearly carr[y] the burden of persuasion on all four requirements[,]" *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003).

## B.      Substantial Likelihood of Success on the Merits

At the outset, a plaintiff requesting a preliminary injunction must first demonstrate that he is likely to succeed on the merits of his claim. *Canal Auth. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) ("[I]t is important to consider this requirement, since, regardless of the balance of relative hardships threatened to the

parties, the granting of a preliminary injunction would be inequitable if the plaintiff has no chance of success on the merits.").

The Employer-Plaintiffs and the State allege that the Ordinance is preempted by the TMWA and therefore violates the Texas Constitution. This issue is a matter of state law. "A federal court exercising [supplemental] jurisdiction over state law claims, must apply the substantive law of the state in which it sits." *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989) (citing *Gibbs*, 383 U.S. at 726). That law is enunciated by the state's highest court. *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 505 (5th Cir. 2019). When a state's highest court has yet to speak on an issue, a federal court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." *Stoner v. N.Y. Life Ins. Co.*, 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284 (1940) (citations omitted).

The Texas Supreme Court has explained the standard for evaluating the type of preemption claim asserted by Plaintiffs: the preemption of a municipal ordinance by state legislation. Home-rule cities,[15] like the City of Dallas, "have broad discretionary powers, provided that no ordinance 'shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State.'" *Dall. Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490 (Tex. 1993) (quoting TEX. CONST. art. XI, § 5). Accordingly,

---

[15] Home-rule cities are those operating under a municipal charter as provided for in the Texas Constitution. *Barnett v. City of Plainview*, 848 S.W.3d 334, 337 (Tex. App.—Amarillo 1993, no pet.); TEX. CONST. art. XI, § 5.

home-rule cities have full power of self-governance, limited only by what the Texas legislature withholds. *Id.* Regardless of whether a statutory limit on local laws is implicit or explicit, it "must appear with unmistakable clarity" to foreclose coregulation of a matter. *City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586, 593 (Tex. 2018) (quoting *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 645 (Tex. 1975)) (internal quotation marks omitted).

Although home-rule cities can regulate broadly, when a municipal ordinance purports to regulate subject matter that is already regulated by a state statute, it is unenforceable "to the extent it conflicts with the state statute." *Dall. Merch's & Concessionaire's Ass'n*, 852 S.W.2d at 491 (citing *City of Brookside Vill. v. Comeau*, 633 S.W.2d 790, 796 (Tex. 1982)). Mere coexistence in the same statutory ambit as state legislation does not preempt a municipal ordinance *per se* where it can operate "in harmony with the general scope and purpose of the state enactment." *City of Laredo*, 550 S.W.3d at 593 (quoting *Comeau*, 633 S.W.2d at 796) (internal quotation marks omitted). But where the purpose of the state legislation is frustrated by concurrent operation of a municipal ordinance, the ordinance will be unenforceable—even if the laws do not regulate the same subject. *See S. Crushed Concrete, L.L.C. v. City of Houston*, 398 S.W.3d 676, 679 (Tex. 2013) (finding a municipal ordinance that ostensibly regulated land use was preempted by a state statute regulating air quality in part because the ordinance rendered the state statute ineffective); *BCCA Appeal Grp.*, 496 S.W.3d at 7 (explaining that, "a

home-rule city's ordinance is unenforceable to the extent that it is inconsistent with [a] state statute preempting that particular subject matter").

The Texas Supreme Court has not yet addressed the specific preemption issue in this case: whether a city ordinance requiring private employers to provide paid sick leave to their employees is preempted by the TMWA. However, the issue has been decided by Texas's Third Court of Appeals. *See Tex. Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425 (Tex. App.—Austin 2018, pet. filed). The *Austin* court considered a paid sick leave ordinance enacted by the City of Austin that included substantive provisions virtually identical to the Dallas Ordinance at issue here. *Id.*[16] In both ordinances, employees are granted one hour of paid sick leave for every thirty hours worked, and in both, employers must pay employees what they would have made if they had been working during hours taken as sick leave. *Compare City of Austin*, 565 S.W.3d at 440 (quoting Austin, Tex. Code of Ordinances §§ 4-19-2(A), (J)) ("[E]mployers must 'grant an employee one hour of earned sick time for every 30 hours worked' . . . [and] must pay the 'earned sick leave in an amount equal to what the employee would have earned if the employee had worked.'"), *with* Dall. City Code §§ 20-4(a), 20-5(a) (same). The plaintiffs in *City of Austin* brought a preemption claim that required the Texas intermediate appellate court to determine whether the

---

[16] The *Austin* court ruled on the matter as part of an appeal of a temporary injunction, which ordinarily would not include a ruling on the merits. *See City of Austin*, 565 S.W.3d at 438. However, the court stated that it "must address the merits of the statutory-preemption claim to determine whether the district court abused its discretion in denying the temporary injunction," as "[t]hat is a legal question that the district court has no discretion to get wrong." *Id.*

Austin ordinance established a "wage" in contravention of the TMWA and the Texas Constitution. Absent "convincing evidence" that the Texas Supreme Court would rule differently on this issue, the Court must follow the *Austin* court's interpretation of Texas law. *Stoner*, 311 U.S. at 467.[17]

The *Austin* court concluded that the "legislative intent in the TMWA to preempt local law is clear." 565 S.W.3d at 439. The court explained that the TMWA "expressly prohibits municipalities from regulating the wages of employers that are subject to the federal minimum-wage requirements of the Fair Labor Standards Act (FLSA)." *Id.*[18] In support of this conclusion, the court cited and quoted section 62.151 of the TMWA, which states that any municipal ordinance "governing wages in private employment . . . [does] not apply to a person covered by the [FLSA]." *Id.* (quoting TEX. LAB. CODE ANN. § 62.151) (internal quotation marks omitted). The *Austin* court further explained that, "the TMWA explicitly provides that 'the minimum wage provided by [the TMWA] *supersedes* a wage established in an ordinance . . . governing wages in private employment.'" *Id.* (quoting TEX. LAB. CODE ANN. § 62.0515(a)) (emphasis in original).

---

[17] As noted herein, *see supra* note 14, a state district court in San Antonio has also temporarily enjoined a substantially similar San Antonio city ordinance on the same preemption grounds. *See Associated Builders & Contractors of S. Tex. v. City of San Antonio*, No. 2019CI13921 (Bexar Cty. Dist. Ct.). However, that opinion does not provide reasoned grounds for the decision and is of limited usefulness in the analysis here.

[18] Generally, the FLSA applies to employers whose "annual gross volume of sales made or business done" is greater than $500,000. *See* 29 U.S.C. § 206(a) (setting minimum wage for enterprises "engage[d] in commerce"); *id.* § 203(s)(1)(A)(ii) (stating that an enterprise is "engaged in commerce" if its "annual gross volume of sales made or business done" is greater than $500,000).

The Court has no reason to believe that the Texas Supreme Court would reach different conclusions than Texas's Third Court of Appeals concerning the operation and preemptive effect of the TMWA. The Texas legislature's intent to limit local government regulation of wages is perspicuous. The TMWA's plain text states that municipal ordinances governing wages in private employment are inapplicable to employers subject to the FLSA and section 62.151 of the Texas Labor Code, and that the minimum wage provided by the TMWA "supersedes" a wage established in, among other things, a municipal ordinance. TEX. LAB. CODE ANN. § 62.0515(a). Working in concert, these TMWA provisions unequivocally yoke the minimum wage in Texas to the TMWA itself and the federal minimum wage, explicitly preempting upward departures imposed by municipalities. Therefore, as the *Austin* court concluded, if the paid sick leave required by the Ordinance establishes a wage, it is preempted by the TMWA and unenforceable.

Because the TMWA does not define the term "wage," the *Austin* court gave that word its ordinary meaning. *City of Austin*, 565 S.W.3d at 439; *see also City of Laredo*, 550 S.W.3d at 594 ("To decide [the preemption issue], we look, as usual, to the statutory text and the ordinary meaning of words."). The court noted that the word "wage" "refers to a 'payment to a person for service rendered. . . . The amount paid periodically, esp. by the day or week or month, for the labour or service of an employee, worker, or servant.'" *City of Austin*, 565 S.W.3d at 439 (quoting COMPACT OXFORD ENGLISH DICTIONARY 693 (2d. ed. 1989), and then citing WEBSTER'S THIRD

NEW INT'L DICTIONARY 2568 (2002) (defining "wage" as "a pledge or payment of usu. monetary remuneration by an employer esp. for labor or services")).

In light of the ordinary meaning of "wage," and under the TMWA's plain language, the *Austin* court concluded that the Austin ordinance was preempted because it "establishes the payment that a person receives for services rendered to an employer." *Id.* In this regard, like the Dallas Ordinance, the Austin ordinance mandates that employers provide one hour of sick leave for "every 30 hours worked." *Id.* (quoting Austin, Tex. Code of Ordinances § 4-19-2(A) (internal quotation marks omitted). Under this paid sick leave mandate, "an employer . . . must pay employees who use sick leave for hours that they did not actually work." *Id.* The *Austin* court held that the "effective result" of such provisions "is that employees who take sick leave are paid the same wage for fewer hours worked, or, stated differently, that employees who take sick leave are paid more per hour for the hours actually worked." *Id.* at 439–40.

In short, the *Austin* court concluded that the paid sick leave provisions of the Austin ordinance "increase[] the pay of those employees who use paid sick leave." *Id.* at 440. Based on these conclusions, the *Austin* court determined that (1) the TMWA preempts local regulations that establish a wage, (2) the Austin paid sick leave ordinance establishes a wage, and that, accordingly, (3) the TMWA preempts the Austin ordinance as a matter of law, thus making the ordinance unconstitutional. *Id.* at 440–41 (citing TEX. CONST. art. XI, § 5) (mandating that no city ordinance "shall

contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State").

Again, there is no reason to believe the Texas Supreme Court would reach a different conclusion than the *Austin* court on the question of whether the Austin paid sick leave ordinance establishes a wage and is therefore preempted by the TMWA and unenforceable. To the contrary, in construing the relevant provisions of the TMWA and the Austin ordinance, the *Austin* court employed statutory construction tools consistently endorsed and applied by the Texas Supreme Court. The *Austin* court focused on the statutory text to determine legislative intent, adhering to the oft-repeated admonitions of the Texas Supreme Court. *See, e.g.*, *In re Office of Attorney Gen.*, 422 S.W.3d 623, 629 (Tex. 2013) ("Legislative intent is best revealed in legislative language."). Likewise, the *Austin* court followed the Texas Supreme Court's guidance that, "[w]here statutory text is clear, that text is determinative of legislative intent unless the plain meaning of the statute's words would produce an absurd result." *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012); *see also, e.g.*, *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("[W]hen possible, we discern [legislative intent] from the plain meaning of the words chosen.").

Applying these tools to interpret the TMWA and the Austin ordinance, the *Austin* court reached the unremarkable conclusion that, when the text of a municipal ordinance mandates that employees be paid their regular wage for hours *not* actually worked based on taking sick leave, the result is an increased wage for hours that *are* worked. Because such an ordinance has the inevitable effect of increasing the pay of

54

employees who use paid sick leave, it is preempted by the plain language of the TMWA and unenforceable under the Texas Constitution. Finally, the *Austin* court's preemption ruling also comports with the Texas Supreme Court's guidance that "a home-rule city's ordinance is unenforceable to the extent that it is inconsistent with [a] state statute preempting that particular subject matter." *BCCA Appeal Grp.*, 496 S.W.3d at 7.

The Court concludes that it is bound to follow the *Austin* court's well-reasoned preemption ruling, which applies equally to the Dallas paid sick leave ordinance because its substantive provisions mirror those of the Austin ordinance held to be unenforceable. *Compare* Austin, Tex. Ordinance No. 20180215–049, § 4-19-2(A) (stating that Austin employers must "grant an employee one hour of earned sick time for every 30 hours worked"), *with* Dall. City Code § 20-4(a) (stating that Dallas employers "shall grant [employees] one hour of earned, paid sick time for every 30 hours worked"). For these reasons, the Court holds that the Employer-Plaintiffs and the State of Texas have established a substantial likelihood of success on the merits of their preemption claim.

## C.   **Substantial Threat of Irreparable Injury**

The Court must next consider whether there is a substantial threat of irreparable injury if a preliminary injunction is not granted. *Janvey*, 647 F.3d at 595. The Court concludes that there is. "Federal courts have long recognized that, when the 'threatened harm is more than de minimis, it is not so much the magnitude but the irreparability that counts for purposes of a preliminary injunction.'" *Enter. Int'l,*

*Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (quoting *Canal Auth.*, 489 F.2d at 574). Irreparability, in this context, refers to the plaintiff's ability to recover monetary remedies. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). Where the plaintiff can be compensated for their harm later through normal litigation mechanisms, a court will not issue a preliminary injunction, even when the threatened harm is substantial. *Id.* (citing *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975)).

Here, neither the State of Texas nor the Employer-Plaintiffs will be able to recover for the harm they will suffer if they are subjected to an unconstitutional municipal ordinance. The state invariably suffers irreparable harm when it cannot enforce its laws. *Abbott v. Perez*, —— U.S. ——, 138 S.Ct. 2305, 2324 n.17, 201 L.Ed.2d 714 (2018) (citing *Maryland v. King,* 567 U.S. 1301, 133 S.Ct. 1, 183 L.Ed.2d 667 (2012) (Roberts, C.J., in chambers)) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State."); *see also New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S.1345, 1352, 98 S.Ct. 359, 54 L.Ed.2d 439 (1977) (Rehnquist, J., in chambers) (holding that a state was irreparably harmed when a court enjoined the enforcement of its laws). The State of Texas has enacted the TMWA, which governs the minimum wage in Texas. TEX. LAB. CODE ANN. §§ 62.151, 62.515. The Texas Constitution states that no municipal law shall conflict with laws enacted by the legislature. TEX. CONST. art. XI, § 5. Because the enactment of the Ordinance creates a different minimum wage for employers of people who work in Dallas by superimposing additional requirements on top of the TMWA, the State's

law has been effectively nullified as to those workers, despite the State's clear intent to normalize the minimum wage statewide. This type of harm supports a preliminary injunction.

Likewise, the Employer-Plaintiffs will suffer irreparable harm resulting from compliance costs and increased regulatory burden. Specifically, the Employer-Plaintiffs have shown that, in addition to paying employees when they take accrued sick leave time, they will also need to hire additional personnel to oversee compliance, update training materials, rearrange the mix of pay and benefits offered to employees, raise client rates, and change acquisition and benefit priorities. Although these injuries are economic in nature, which normally counsels against irreparable harm, *Janvey*, 647 F.3d at 600, they are not compensable because the City of Dallas enjoys governmental immunity as a home-rule city under Texas law. *See, e.g.*, *City of Galveston v. Texas*, 217 S.W.3d 466, 469 (Tex. 2007) (stating that home-rule cities are immune from suit for government functions unless a state statute limits immunity). Thus, even if the Employer-Plaintiffs are eventually successful on the merits of their claim, they will not be able to recover their damages and, as such, are irreparably harmed by the Ordinance. *See Harris v. Cantu*, 81 F. Supp. 3d 566, 580 (S.D. Tex. 2015), *rev'd on other grounds sub nom.*, *Harris v. Hahn*, 827 F.3d 359 (5th Cir. 2016) (finding that economic loss unrecoverable due to immunity constitutes irreparable harm); *Teladoc, Inc. v. Tex. Med. Bd.*, 112 F. Supp. 3d 529, 543 (W.D. Tex. 2015) (same); *see also Chamber of Commerce v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010) (same).

The City's arguments against irreparable harm to the Employer-Plaintiffs are two-fold: it questions the accuracy of ESI's alleged compliance costs and whether Hagan's alleged harm is sufficiently imminent to justify a preliminary injunction. ESI has provided proof that it will incur damages that are "approximately $269,000.00 annually if each of its Dallas employees take the full amount of paid leave," and that it will have to hire another employee to "track where employees are placed, track their hours, calculate leave earned and send monthly reports." (Dkt. #3-1, Ex. 1 ¶¶ 10–11). The City takes issue with these estimates and suggests that ESI already tracks employees. The City also argues that as a staffing agency, ESI will not bear the sole responsibility for complying with the Ordinance. Neither of these arguments detract from ESI's demonstration of irreparable harm.

The City is correct that the Plaintiffs carry a heavy burden to establish irreparable injury. *See White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (citing *Enter. Int'l*, 762 F.2d at 472) ("Without question, the irreparable harm element must be satisfied by independent proof, or no injunction may issue."). But after that harm has been established, the element is satisfied; the degree of harm is irrelevant. It is beyond dispute that there are greater than de minimis compliance costs associated with the Ordinance—ESI must spend money on employees that do not work because they are taking sick leave, must track sick leave accrual, and must amend its handbook and training materials. *See Dennis Melancon*, 703 F.3d at 279 (finding that $2,000 in damages is more than de minimis). Because governmental immunity will

preclude recovery against the City regardless of the amount of damage, the irreparable harm element is met.

As to Hagan, the City rests on its standing argument to rebut a claim of irreparable harm, arguing that enforcement for small employers is too remote to justify a preliminary injunction. But Hagan has shown that it will suffer harm for which it cannot recover as it becomes compliant with portions of the Ordinance whose enforcement is delayed. The additional time afforded to small employers before the Ordinance is enforced against them suggests that the City anticipates it will require more time for such employers to become compliant. Thus, these threatened injuries are likely to occur sooner than the date Hagan's employees begin accruing sick leave and are sufficiently imminent to justify considering them in the preliminary injunction context. Because Hagan has or will suffer damages that are more than de minimis and are not recoverable against the City, Hagan has also established that it will suffer irreparable harm if the Ordinance remains in force.

## D.   Balance of Equities and Public Interest

The balance of equities and public interest also favor granting the requested preliminary injunction. Because the Court has already determined that the Plaintiffs are likely to succeed on their preemption claim, the balance of equities and public interest factors weigh in favor of granting the preliminary injunction. *See Tex. Midstream Gas Servs., L.L.C. v. City of Grand Prairie*, No. 3:08-CV-1724, 2008 WL 5000038, at *20 (N.D. Tex. Nov. 25, 2008) ("Because [the plaintiff] has demonstrated a substantial likelihood of success on the merits of part of its express preemption

claim, this suggests that the balance of hardship and public interest factors weigh in favor of granting the preliminary injunction."), *aff'd*, 608 F.3d 200 (5th Cir. 2010).

The City argues that the harm it will suffer if it is unable to effectuate its laws, and the potential loss or suspension of benefits to the public, counsel against granting a preliminary injunction. Neither concern alters the balance of equities or ultimate weight of the public interest in preliminarily enjoining the Ordinance. The City's interest in the continued operation of an Ordinance that is most likely preempted by the TMWA, and therefore unenforceable under the Texas Constitution, cannot outweigh the State's interest in enforcing its constitution and laws. The State of Texas is "inviolably sovereign," *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429 (Tex. 2016), and its legislature stands above local governments, *see* TEX. CONST. art XI, § 5(a). As the State has correctly noted, each day the Ordinance operates against the express mandate of the Texas legislature to preempt local laws governing wages, the State's sovereignty is violated and the relationship between the legislature and local governments, guaranteed by the Texas Constitution, is turned on its head. Further, allowing the continued accrual of benefits under an Ordinance that is most likely unenforceable, as well as the continued imposition of unrecoverable expenses on regulated businesses, also is not consistent with the public interest.

For all of the foregoing reasons, the Plaintiffs' request for a preliminary injunction is GRANTED. Under Federal Rule of Civil Procedure 65(c), a court granting a preliminary injunction has discretion to require a bond "in an amount that

the court considers proper." Because the City is unlikely to accrue any damages if it is wrongly enjoined, nor has it argued for an appropriate bond amount, no security bond will be required. *See A.T.N. Indus., Inc. v. Gross*, 632 F. App'x 185, 192 (5th Cir. 2015) (per curiam) (unpublished) (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir.1996) ("[U]nder Rule 65(c), 'a court may elect to require no security at all.'").

\*      \*      \*

The Court notes that this decision issues at a time when the American public and federal, state, and local authorities are confronted with the unprecedented public health crisis and economic upheaval caused by the Coronavirus Disease 2019 ("COVID-19"). The President has declared a national emergency under the National Emergencies Act, 50 U.S.C. § 1601, *et seq.*, with respect to COVID-19. Businesses large and small, and workers across the country, face tremendous challenges during this national emergency. Likewise, policymakers at all levels of government are developing and implementing strategies to meet and balance the public health and economic concerns of their constituents.[19] Federal courts, on the other hand, although vested with the authority to interpret the law, "possess neither the expertise nor the prerogative to make policy judgments." *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S.

---

[19] For example, in response to the rapid proliferation of COVID-19 in the United States, on March 18, 2020, Congress enacted, and the President signed into law, the Families First Coronavirus Response Act ("FFCRA"). Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 178 (2020). The FFCRA, which applies to private sector employers that employ fewer than 500 employees and some public sector employers, provides up to 80 hours of paid sick leave to workers who are ill, quarantined, or seeking treatment as a result of COVID-19, or caring for those who are sick or quarantined as a result of COVID-19. These provisions will be in effect until December 31, 2020. *Id.* §§ 5102(a)–(b), 5108–09, 5110(2)(B).

519, 538, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012). As the Supreme Court has explained, "[t]hose decisions are entrusted to our Nation's elected leaders." *Id.*

Courts' deference in matters of policy, however, "cannot become abdication in matters of law." *Id.* "The peculiar circumstances of the moment may render a measure more or less wise, but cannot render it more or less constitutional." Chief Justice John Marshall, *A Friend of the Constitution No. V*, Alexandria Gazette, July 5, 1819, *reprinted in* JOHN MARSHALL'S DEFENSE OF *MCCULLOCH V. MARYLAND* 190–191 (G. Gunther ed. 1969). Whether or not paid sick leave requirements should be imposed by government on private employers is an important public policy issue, made even more significant under the challenging circumstances faced by our Nation at this moment. The State of Texas, through its constitutional structure and statutory law, has committed that public policy decision to the Texas legislature. The Court's decision to grant a preliminary injunction upholds the state constitution and statutory provisions preempting and rendering unenforceable the City's paid sick leave ordinance.

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss. (Dkt. #36). Defendants' Rule 12(b)(1) motion is **GRANTED** as to the Employer-Plaintiffs' purported third-party First Amendment claim on behalf of their employees and **DENIED** as to Plaintiff Hagan's claims and the Employer-Plaintiffs' First Amendment claim brought on their own behalf. Defendants' Rule 12(b)(6) motion is **GRANTED** as to the Employer-Plaintiffs' First

Amendment claim brought on their own behalf, as well as the Employer-Plaintiffs' Fourteenth Amendment claim. Defendants' Rule12(b)(6) motion is **DENIED** as to the Employer-Plaintiffs' Fourth Amendment claim, Plaintiffs' state law preemption claim, and Defendants' request that the Court decline to exercise supplemental jurisdiction.

It is therefore **ORDERED, ADJUDGED, AND DECREED** that the Employer-Plaintiffs' claims brought under the First Amendment and Fourteenth Amendment are hereby **DISMISSED**.

It is further **ORDERED** that the Plaintiffs' Motion for Preliminary Injunction (Dkt. #3, #21) is hereby **GRANTED**. The City of Dallas's Paid Sick Leave Ordinance, Dallas, Texas, Ordinance No. 31181; Municipal Code § 20-1–20-12, is **ENJOINED** and unenforceable**.** No officer, agent, servant, employee, attorney, or other person in active concert with the City of Dallas may enforce the Paid Sick Leave Ordinance against any business or entity pending the resolution of this case.

**So ORDERED and SIGNED this 30th day of March, 2020.**

_____

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE