UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ESI/EMPLOYEE SOLUTIONS, L.P., | § | |
| ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:19-CV-570-SDJ |
| | § | |
| CITY OF DALLAS, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

The City of Dallas (the "City")[1] enacted an ordinance requiring employers to provide Dallas-based employees one hour of paid sick leave for every thirty hours worked (the "Ordinance"). DALL., TEX., CODE §§ 20–1 through 20–12. Plaintiffs ESI/Employee Solutions, L.P., and Hagan Law Group L.L.C. (the "Employer-Plaintiffs"), two employers subject to the Ordinance, filed a lawsuit alleging that the Ordinance violates the First, Fourth, and Fourteenth Amendments to the United States Constitution. They also joined the State of Texas (together, "Plaintiffs") in alleging that the Ordinance was preempted by Texas state law. Following the Court's ruling on a previous motion to dismiss, only two claims remain in the case: the Fourth Amendment claim and the state preemption claim.

Before the Court is Defendants' Motion to Dismiss Under Rule 12(b)(1), Renewed Motion to Decline Supplemental Jurisdiction, and Memorandum in Support. (Dkt. #69). The City seeks dismissal of both remaining claims. The City first asserts that the Employer-Plaintiffs' Fourth Amendment claim should be dismissed

---

[1] For the purposes of this opinion, the Court will refer to all of the Defendants collectively as "the City."

because it has been rendered moot by a recent amendment to the Dallas City Code. The City further argues that, based on the anticipated dismissal of the Fourth Amendment claim, the Court should no longer exercise supplemental jurisdiction over the state preemption claim.

Having reviewed the Motion, the parties' briefing, and the relevant law, the Court finds that the Motion should be GRANTED in part and DENIED in part. Because a recent amendment to the City's municipal code makes clear that precompliance review will now be available for parties that receive administrative subpoenas under the Ordinance, the Employer-Plaintiffs' Fourth Amendment claim will be dismissed as moot. However, the Court will retain jurisdiction over the remaining state preemption claim.

## I. BACKGROUND

### A.    The Court's Prior Rulings

The Ordinance requires employers to grant one hour of paid sick leave for every thirty hours worked by an employee within the Dallas city limits, regardless of the employer's location. *Id.* §§ 20–4(a), (b). The Ordinance also authorizes the City to conduct investigations, triggered by employee complaints, to assess employer compliance. Such investigations may include the use of administrative subpoenas to compel witness attendance or material and document production. *Id.* § 20–10(a)–(b). Violations of any portion of the Ordinance result in a fine. *Id.* § 20–11(a).

The Employer-Plaintiffs challenged the constitutional validity of the Ordinance, alleging violations of the First, Fourth, and Fourteenth Amendments to

the United States Constitution. Together with the State of Texas, the Employer-Plaintiffs also assert that the Ordinance is preempted by state law. The Employer-Plaintiffs and Texas also filed a preliminary-injunction motion seeking to prevent the enforcement of the Ordinance pending the resolution of this case. For its part, the City moved to dismiss all claims asserted by Plaintiffs under Federal Rule of Civil Procedure 12(b)(1) and (b)(6).

The City's dismissal motion was granted in part. The Employer-Plaintiffs' First and Fourteenth Amendment claims were dismissed, but the Court held that Plaintiffs had adequately pleaded the Fourth Amendment and state preemption claims to avoid dismissal of those causes of action. *ESI/Emp. Sols., L.P. v. City of Dallas*, 450 F.Supp.3d 700, 727–32 (E.D. Tex. 2020) ("*ESI*"). The Court went on to grant the preliminary injunction requested by the Plaintiffs, holding that, as to the state preemption claim, the Plaintiffs had established a substantial likelihood of success on the merits, a threat of irreparable injury, and that the balance of equities and the public interest favored a preliminary injunction. *Id.* at 732–38. Based on these conclusions, the Court enjoined the City from enforcing the Ordinance pending resolution of the case. Because the Court concluded that Plaintiffs' state preemption claim met the requirements for a preliminary injunction, the Court did not address the question of whether injunctive relief was also merited as to the Employer-Plaintiffs' Fourth Amendment claim.

## B.     The City Amends Its Municipal Code

The Employer-Plaintiffs' Fourth Amendment claim turns on the assertion that the Ordinance "requires employers to submit to unlimited, unreasonable administrative subpoenas with no provision for judicial review before being required to comply." (Dkt. #9 ¶ 65). According to the Employer-Plaintiffs, the Ordinance violates, on its face, the freedom from unreasonable search and seizure under the Fourth Amendment to the United States Constitution. (Dkt. #9 ¶ 66). The Employer-Plaintiffs specifically point to Section 20–10(b) of the Ordinance, which empowers the City to "issue subpoenas to compel the attendance of a witness or the production of materials or documents in order to obtain relevant information and testimony." DALL., TEX., CODE § 20–10(b). Section 20–10(b) goes on to state that "[r]efusal to appear or to produce any document or other evidence after receiving a subpoena pursuant to this Section is a violation of this chapter and subject to sanctions as described in Section 2–9 of the Dallas City Code." *Id.* Because nothing in Section 20–10(b) or elsewhere in the Ordinance sets forth a procedure for obtaining precompliance review of these administrative subpoenas, the Employer-Plaintiffs allege the Ordinance facially violates the Fourth Amendment.

The City's previous dismissal motion countered that a different portion of the Dallas City Code, Section 2–8, sets forth the procedure for precompliance review of the subpoenas. At that time, and prior to its recent amendment, Section 2–8 stated that "[i]n all hearings and investigations" conducted by the City, the City may "subpoena witnesses and compel the production of books, papers and other evidence

material to such inquiry in the same manner as is now prescribed by the laws of this state for compelling the attendance of witnesses and production of evidence in the corporation court." *Id.* § 2–8. This Court previously held that the structure of the Ordinance did not support the City's contention that the prior version of Section 2–8 applied to administrative subpoenas under Section 20–10(b) and that the prior version of Section 2–8 described only how a subpoena might be issued, not a procedure for precompliance review. *ESI*, 450 F.Supp.3d at 726–27.

Following the Court's order enjoining the enforcement of the Ordinance pending the resolution of this case, the City passed an ordinance amending Section 2–8 of the Dallas City Code (the "Amendment"). The Amendment adds to Section 2–8 the following language:

> A person receiving a subpoena in accordance with this section may, before the return date specified in the subpoena, petition the corporation court for a motion to modify or quash the subpoena. This provision for pre-compliance review applies to all subpoenas, including but not limited to those pursuant to . . . [Section] 20–10. . . .

DALL., TEX., CODE § 2–8. Based on this Amendment to Section 2–8 of the Dallas City Code, the City has now submitted another Rule 12(b)(1) dismissal motion, asserting that the Amendment renders the Employer-Plaintiffs' Fourth Amendment claim moot and deprives the Court of subject-matter jurisdiction over both the Fourth Amendment claim and, by extension, the state preemption claims.

## II. LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013) (internal quotation marks omitted). A federal

court has original jurisdiction to hear a suit when it is asked to adjudicate a case or controversy that arises under federal-question or diversity jurisdiction. U.S. CONST., art. III, § 2, cl. 1; 28 U.S.C. §§ 1331–32. Courts have "an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). However, a defendant may also challenge a court's subject-matter jurisdiction by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) challenge to a court's subject-matter jurisdiction may address the sufficiency of the facts pleaded in the complaint (a "facial" attack) or may challenge the accuracy of the facts underpinning the claimed federal jurisdiction (a "factual" attack). *See King v. U.S. Dep't of Veteran's Affs.*, 728 F.3d 410, 413 (5th Cir. 2013) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials'" to controvert subject-matter jurisdiction. *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

When, as here, a defendant contests the facial sufficiency of the facts pleaded in the complaint to confer jurisdiction, those facts are entitled to a presumption of truth. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 553 (5th Cir. 2010) (accepting material allegations in the complaint as true when subject-matter jurisdiction was challenged on the face of the pleadings); *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981) (noting that the court "must

consider the allegations in the plaintiff's complaint as true" if a Rule 12(b)(1) motion is based on the face of the complaint). However, a legal conclusion "couched as a factual allegation" is not entitled to the same presumption of truth. *Alfred v. Harris Cnty. Hosp. Dist.*, 666 F.App'x 349, 352 (5th Cir. 2016) (per curiam) (quoting *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015)). If the facts pleaded are sufficient to confer jurisdiction, then a Rule 12(b)(1) motion will not succeed. *Paterson*, 644 F.2d at 523.

### III. DISCUSSION

## A. Mootness of Fourth Amendment Claim

"Mootness is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). When a case has been rendered moot, a federal court lacks constitutional authority to resolve the issues that it presents. *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008). Mootness occurs when a case no longer presents "live" issues or "the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S.Ct. 1017, 185 L.Ed.2d 1 (2013). As the Supreme Court has explained, however, a suit becomes moot only when "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* "As 'long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Id.*

As relevant here, if a defendant voluntarily ceases the complained-of behavior, a case may be rendered moot if: "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) any interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quotation omitted). Because this is a heavy burden, "the voluntary cessation of a complained-of activity by a defendant ordinarily does not moot a case." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011). However, the burden is lessened when the defendant is a government actor, as courts treat the government's voluntary cessation of allegedly wrongful conduct "with some solicitude" and government actors are "accorded a presumption of good faith because they are public servants, not self-interested private parties." *Id.* at 325. Thus, courts "assume that formally announced changes to official governmental policy are not mere litigation posturing." *Id.*

In *Sossamon*, a prisoner plaintiff sought injunctive relief based on the prison's local policy of preventing general-population prisoners on cell restriction from attending religious services. *Id.* at 321. However, on appeal, the director of the Texas Department of Criminal Justice, who oversees the administration of Texas's state prisons, testified that, as of the time of appeal, Texas had ended the complained-of policy. *Id.* at 324. The Fifth Circuit held that, under the lighter burden for government actors, the director's testimony alone made "absolutely clear" that the

8

complained-of policy could not "reasonably be expected to recur." *Id.* at 325. The court further held: "We will not require some physical or logical impossibility that the challenged policy will be reenacted absent evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct." *Id.*

Here, the Employer-Plaintiffs assert that the Ordinance requires employers to submit to unlimited and unreasonable administrative subpoenas with no provision for judicial review before being required to comply. The City responds that, following the Amendment, Section 2–8 now provides for judicial review before employers are required to comply and renders moot the Employer-Plaintiffs' Fourth Amendment challenge. The Court agrees. Because the Amendment to Section 2–8 makes clear that employers subject to the Ordinance may now obtain precompliance review of administrative subpoenas issued under Section 20–10, the Employer-Plaintiffs' Fourth Amendment claim has become moot.

The Employer-Plaintiffs resist this result, maintaining that the Amendment to Section 2–8 does not moot their Fourth Amendment claim because it does not make "absolutely clear" that the City's allegedly wrongful behavior cannot reasonably be expected to recur. The Employer-Plaintiffs make several arguments in support of this contention, none of which supports the Employer-Plaintiffs' conclusion that, notwithstanding the City's Amendment of Section 2–8, the Employer-Plaintiffs' Fourth Amendment claim still presents a "live" controversy.

9

### i.  The timing of the City's voluntary cessation

The Employer-Plaintiffs first attempt to distinguish *Sossamon* by pointing to the court's *dicta* that:

> The good faith nature of Texas's cessation is buttressed by the fact that Sossamon did not obtain relief below. Had the trial court granted the injunction, we might view any attempt to force a vacatur of such determination (particularly in favor of a *pro se* prisoner) with a jaundiced eye.

*Sossamon*, 560 F.3d at 325. Relying on this *dicta*, the Employer-Plaintiffs argue that, because the Court had already enjoined the City from enforcing the Ordinance prior to the City's Amendment of Section 2–8, the Amendment should be viewed with skepticism and not be permitted to render the Employer-Plaintiffs' Fourth Amendment claim moot.

In support of this argument, the Employer-Plaintiffs also point to the Fifth Circuit's decision in *Allied Home Mortg. Corp. v. HUD*, 618 F.App'x 781, 786 (5th Cir. 2015) (per curiam). In *Allied Home*, the plaintiffs challenged the U.S. Department of Housing and Urban Development's ("HUD") policies as unconstitutional. *Id.* HUD responded that it would cease the complained-of policy. *Id.* However, HUD rescinded its policy only after the trial court had enjoined it. *Id.* Noting the above *dicta* in *Sossamon*, the Fifth Circuit acknowledged that "[t]he fact that HUD withdrew the suspensions only *after* the district court preliminarily enjoined them cuts against HUD's claim of permanent cessation." *Id.* at 786 n.6. Nevertheless, the court concluded that "based on the totality of the circumstances . . . there is no reasonable probability that the suspensions will be reinstated." *Id.*

10

The same is true here. Based on the totality of the circumstances following the Amendment, there is no reasonable probability that the City will empower officials to issue administrative subpoenas without allowing for precompliance review. Indeed, the City's cessation of conduct here is clearer than that of the government actors in both *Sossamon* and *Allied Home*. In those cases, the complained-of policies were merely abandoned. Here, the City has formally amended the Dallas City Code. *Cf. Ragsdale v. Turnock*, 841 F.2d 1358, 1366 (7th Cir. 1988) (holding that the state actor had mooted the controversy by voluntarily ceasing its conduct, even though the court "share[d] plaintiffs' concern that the State ha[d] not acted to remove or amend the statute and regulations"). Even absent formal amendment of a complained-of statute or ordinance, "courts do not, as a rule, enjoin conduct which has been discontinued with no real prospect that it will be repeated." *Id.* Thus, the Court concludes that where there *is* formal amendment, as here, the government actor has gone even further to meet its burden—notwithstanding the timing of the City's voluntary cessation.

The additional cases cited by the Employer-Plaintiffs to support the proposition that a "live" controversy remains because the City may later remove the Amendment's precompliance protection are all inapposite. For example, the Employer-Plaintiffs point to *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), a case in which a city ordinance was enjoined because it was unconstitutionally vague. 455 U.S. at 285–88. While on appeal, the city amended the ordinance, which the city argued mooted the vagueness issue. *Id.*

at 288. The Supreme Court held that the issue was not moot as "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated." *Id.* at 289. Crucially, though, the city had "announced just such an intention." *Id.* at 289 n.11. The city had also done the same with another complained-of provision of the same ordinance—reenacting the provision after a state court's injunction was vacated. *Id.* at 289. Under these facts, the Court found that the plaintiffs' claim was not moot because the city had not made absolutely clear that it would not reenact the complained-of provision—and had, in fact, shown the opposite. Here, unlike in *Aladdin's Castle*, the City has not announced or otherwise demonstrated any intent to reenact the complained-of policy. Thus, *Aladdin's Castle* is not analogous to this case.

The Employer-Plaintiffs' reliance on *Knox v. Serv. Emps. Intl' Union, Local 1000*, 567 U.S. 298, 302, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012), is similarly misplaced. In *Knox*, a union collected fees from objecting non-members that it then spent on financing the union's political activities. *Id.* at 304–05. Many of the objecting non-members filed a class action, alleging that the fees violated their First Amendment rights. *Id.* at 305. The district court granted summary judgment for the plaintiffs and ordered the union to send a notice to all class members offering a full refund. *Id.* at 306. Following a reversal by the Ninth Circuit, the Supreme Court granted certiorari. *Id.* at 306–07. However, after the Court granted certiorari, the union, albeit belatedly, obeyed the district court's order by offering a full refund of the fees paid, and the union moved to dismiss the claims as moot. *Id.* at 307. The

Court, viewing this post-certiorari maneuver "with a critical eye," found that the union's refund did not moot the case. *Id*. The Court affirmed that claims become moot only when it is impossible to grant any effectual relief and held that it could grant relief because there was still a controversy as to the adequacy of the union's refund. *Id*. Specifically, the plaintiffs argued that the refund offer came with a host of conditions, caveats, and unnecessary complications aimed at reducing the number of members who could or would claim the refund. *Id*. at 308. Under these facts, the Court held that the controversy was still "live." *Id*. Again, the circumstances here do not present a similar scenario because the City's Amendment to Section 2–8 formally and unequivocally provides an opportunity for precompliance review of administrative subpoenas issued under the Ordinance.

Finally, as the City points out, the lack of an as-applied challenge in this case distinguishes it from the cases primarily relied upon by the Employer-Plaintiffs. The Employer-Plaintiffs have presented a facial challenge to the Ordinance under the Fourth Amendment, not an as-applied challenge. Such facial challenges are the most difficult to mount successfully because "the challenger must establish that no set of circumstances exists under with the [act or ordinance] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). After this Court held that the Employer-Plaintiffs had adequately pleaded a Fourth Amendment claim, the City amended its municipal code to correct the Fourth Amendment issue identified by the Employer-Plaintiffs, and the municipal code now expressly provides for precompliance review of administrative subpoenas issued

under the Ordinance. Because the Employer-Plaintiffs have made no as-applied challenge, the Court must evaluate only whether the post-Amendment Ordinance, on its face, still presents a "live" controversy concerning the Employer-Plaintiffs' Fourth Amendment claim. It does not.

### ii. The City's continued defense of its prior policy

The Employer-Plaintiffs also assert that, formal amendment or not, the City has not mooted the Fourth Amendment claim because the City has continued to defend the constitutionality of the pre-Amendment subpoena provisions and that this persistence indicates bad faith. The Employer-Plaintiffs point to two cases in support of this argument. First, the Employer-Plaintiffs cite *Pro-Life Cougars*, a case involving a First Amendment challenge to a University of Houston speech policy that was alleged to unconstitutionally discriminate against student expression on campus. *Pro-Life Cougars v. Univ. of Hous.,* 259 F.Supp.2d 575, 577 (S.D. Tex. 2003). After the entry of a preliminary injunction preventing enforcement of the speech policy, the University rescinded the policy and replaced it with a "new" speech policy. *Id*. at 581. However, the University also appealed the preliminary injunction to the Fifth Circuit. *Id*. Moreover, the "new" speech policy put in place by the University included "pervasive limitations" on free speech that the district court quipped might give the plaintiffs cause to recall the original speech policy with "fondness for its 'liberality.'" *Id*.

In the second case the Employer-Plaintiffs cite, *Amawi*, the Texas Legislature enacted a bill prohibiting state entities from contracting with companies that were

"boycotting" the nation of Israel. *Amawi v. Pflugerville Indep. Sch. Dist.* No. 1:18-CV-1091-RP, 2019 WL 4980454, at *5 (W.D. Tex. July 23, 2019). When several sole proprietors challenged the bill and requested injunctive relief, the court preliminarily enjoined enforcement of the statute based, in part, on the court's conclusion that the plaintiffs would likely succeed on the merits of their claims that the statute violated the First Amendment. *Id.* As in *Pro-Life Cougars*, the defendants appealed the injunction to the Fifth Circuit. *Id.* at *5. Further, the *Amawi* court noted that, just days after entry of the preliminary injunction, the Texas Legislature enacted amended legislation that, in the court's view, would have violated the injunction in the same manner as the complained-of bill. *Id.* at *1, 5. On these facts, the court concluded that it was not "absolutely clear" that the complained-of legislation would not be reenacted because the Texas Legislature had, in the district court's view, already done so.[2]

Because *Pro-Life Cougars* and *Amawi* are unlike this case, they are unhelpful to the Employer-Plaintiffs' argument against mootness. First, unlike the defendants in those cases, the City did not seek appellate review of this Court's order enjoining the enforcement of the Ordinance. Second, unlike *Pro-Life Cougars* and *Amawi*, the Court did not enter the injunction in this case based on the Employer-Plaintiffs' Fourth Amendment claim but rather based on the state preemption claim. The

---

[2] However, as the City points out, the Fifth Circuit later ruled that the amended legislation at issue in *Amawi* mooted the plaintiffs' claims. *Amawi v. Paxton*, 956 F.3d 816, 819 (5th Cir. 2020). The Fifth Circuit vacated the district court's preliminary-injunction order and remanded the case to the district court to enter a judgment dismissing the complaints. *Id.* Thus, Plaintiffs' reliance on the district court's opinion, which was based on the later-vacated injunction, is questionable at best.

distinction matters because a decision that a claim survives scrutiny under Rule 12(b) does not equate to a substantial likelihood of success on the merits, as is required to support a preliminary injunction. Third, unlike the circumstances the respective courts concluded were presented in *Pro-Life Cougars* and *Amawi*, here, the Amendment plainly does not perpetuate the defects concerning precompliance review identified in the Employer-Plaintiffs' Fourth Amendment challenge but rather provides for such review of administrative subpoenas as requested by the Employer-Plaintiffs.

### iii. City Code Section 2–9 does not change the mootness analysis

Finally, the Employer-Plaintiffs contend that Dallas City Code Section 2–9, which penalizes subpoenaed parties if they do not timely seek precompliance review, violates the Fourth Amendment in the same manner as the pre-Amendment Ordinance. Based on this contention, the Employer-Plaintiffs urge that the Court's reasoning regarding the pre-Amendment Ordinance applies equally now. The Employer-Plaintiffs specifically refer to the following passage in the Court's preliminary-injunction order, which reasoned that the pre-Amendment Ordinance:

> create[d] an unconstitutional Hobson's choice for the recipient of an administrative subpoena under section 2–8: comply with a potentially overbroad subpoena in contravention of Fourth Amendment protections or risk a citation that may or may not withstand review for reasonableness.

*ESI*, 450 F.Supp.3d at 727.

16

With the Amendment now in place, however, the Hobson's choice described in the Court's prior order no longer exists. Now, subpoenaed parties may either: (1) comply with a potentially overbroad subpoena, or (2) contest the subpoena before complying with it. And, contrary to the Employer-Plaintiffs' assertions, the fact that there is a penalty associated with choosing to ignore the subpoena altogether does not facially abridge the Fourth Amendment. The Employer-Plaintiffs do not identify any constitutional problem stemming from penalizing a subpoenaed party who *rejects* the opportunity to seek precompliance judicial review. The Fourth Amendment requires only the opportunity for precompliance review. It does not allow parties to escape subpoenas by merely refusing to seek judicial review by doing nothing.

The Employer-Plaintiffs rely on the Fifth Circuit's decision in *Cotropia v. Chapman*, 721 F.App'x 354 (5th Cir. 2018) (per curiam), to support this argument. According to the Employer-Plaintiffs, *Cotropia* stands for the proposition that the Fourth Amendment requires the onus be placed on the government actor to seek enforcement of subpoenas, not on the subpoenaed party to move to quash. But this is neither what *Cotropia* holds nor what the Fourth Amendment requires. *Cotropia* merely holds that "in order for an administrative search to be constitutional, the subject of the search must be afforded an *opportunity* to obtain precompliance review before a neutral decisionmaker." 721 F.App'x at 358 (emphasis added) (quoting *City of Los Angeles v. Patel*, 576 U.S. 409, 420, 135 S.Ct. 2443, 192 L.Ed.2d 435 (2015)). In *Cotropia*, the plaintiff alleged that a government actor, the Texas Medical Board ("TMB"), did not allow an opportunity for precompliance review but instead executed

the subpoena immediately after serving it by taking and copying the subpoenaed party's documents over the party's objection. *Id.* The Fifth Circuit held that this allegation, if true, would constitute an unlawful search and seizure under the Fourth Amendment. *Id.* Further, the statute at issue that authorized the TMB to issue administrative subpoenas explicitly stated that "if a person fails to comply with a [TMB] subpoena [then TMB] may file suit to enforce the subpoena." *Id.* at 359 (quoting TEX. OCC. CODE § 153.007(e)).

With the Amendment in place, the City's scheme for administrative subpoenas under the Ordinance does not run afoul of *Cotropia*. A city code provision that contemplates that a fine may be imposed on a party who fails to either comply with a subpoena *or* seek precompliance review of the subpoena does not, on its face, constitute an unlawful search or seizure under the Fourth Amendment.[3] Nor does *Cotropia* hold that the Fourth Amendment places the burden on the government actor to enforce administrative subpoenas; rather, the specific statute at issue in *Cotropia* required that.

---

[3] There is no allegation here that subpoenas issued under Section 20–10(b) fail to allow the subpoenaed party a reasonable time to comply or seek precompliance review. Rules and statutes authorizing subpoenas often omit a minimum number of days for complying but will typically provide a "reasonable time" to comply, and courts have inferred such reasonable-time restrictions. *See, e.g.,* FED. R. CIV. P. 45(D)(3)(A)(i) (requiring federal subpoenas to give nonparties a "reasonable time to comply"); *In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000) (noting that 18 U.S.C. § 3486, which authorizes investigative subpoena power, requires only a reasonable period of time to comply to satisfy the Fourth Amendment); *Acosta v. Am. Postal Workers Union (APWU) Local 4635*, No. ED MC 17-16-JGB, 2017 WL 6886673, at *4 (C.D. Cal. Dec. 4, 2017) (noting that 15 U.S.C. § 49 gives the Secretary of Labor the power to issue administrative subpoenas without indicating how much time a respondent must be allowed to comply but applying a reasonable-time requirement regardless and finding that five days between service and the time for compliance is not necessarily unreasonable).

* * *

The Employer-Plaintiffs' Fourth Amendment claim is premised on the assertion that the Ordinance "requires employers to submit to unlimited, unreasonable administrative subpoenas with no provision for judicial review before being required to comply." After the Amendment, this is no longer the case. An employer subject to a Section 20–10(b) subpoena may now petition the Dallas Municipal Court for a motion to modify or quash the subpoena before complying. This formal amendment to the City's municipal code moots the Fourth Amendment facial challenge asserted by the Employer-Plaintiffs.[4]

---

[4] Following the submission of all briefs relating to this motion, the Employer–Plaintiffs filed a Notice of Supplemental Authority, (Dkt. #76), asserting that the Fifth Circuit's recent decision on the voluntary-cessation doctrine, *Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020), confirms that the Employer-Plaintiffs' Fourth Amendment claim should not be considered moot. The Court disagrees.

In *Fenves*, a group of students appealed the dismissal of First and Fourteenth Amendment challenges to several policies regulating speech at the University of Texas at Austin. *Id.* at 322. The Fifth Circuit held that, although the University revised some its complained-of policies during the litigation, the plaintiff's claims were not rendered moot because it was not "absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur." *Id.* at 328 (quotation omitted). *Fenves* differs from this case in important respects, including the fact that, although the University had made policy changes, it had not issued a controlling statement of future intention to permanently alter the challenged speech policies. *Id.* at 328–29. Most importantly, the Fifth Circuit concluded that the University had, in fact, retained language in its policies that plainly suggested it might return entirely to its original speech policies at issue in the lawsuit. *See id.* (explaining that, "the continuing existence of the unaltered definition of 'harassment' in the [University's] Hate and Bias Incidents Policy does not make it 'absolutely clear' that the University will not reinstate its original policies. After all, that Policy maintains the exact definition of harassment that was eliminated from the [University's] Institutional Rules"). The same is not true here. The City "exercised its formal legislative powers to change an ordinance," amending Section 2–8 of its municipal code to expressly provide precompliance review for administrative subpoenas issued pursuant to the Ordinance, and there is no suggestion that the City will undo this provision. *Id.* at 329 n.3 (citing *N.Y. State Rifle & Pistol Ass'n v. City of New York*, —— U.S. ——, 140 S.Ct. 1525, 1526, 206 L.Ed.2d 798 (2020)).

19

## B. Supplemental Jurisdiction

Generally, a district court has original jurisdiction over claims that arise under federal law, 28 U.S.C. § 1331, as well as cases that arise under state law and meet certain diversity-of-citizenship and amount-in-controversy requirements, *id.* § 1332. A district court may exercise supplemental jurisdiction over state claims over which it would not have original jurisdiction so long as those claims are "part of the same case or controversy" as the original-jurisdiction claims. *Id.* § 1367(a). However, once a "district court has dismissed all claims over which it has original jurisdiction," a district court may decline to exercise supplemental jurisdiction over a state claim. *Id.*

Invoking these statutory provisions, and with the dismissal of the Employer-Plaintiffs' Fourth Amendment claim—the only remaining federal claim in this suit—the City contends that the Court should no longer exercise supplemental jurisdiction over the state preemption claim. In response, the Plaintiffs contend that the Court should retain jurisdiction over the state preemption claim, even in the absence of any remaining federal claim, for three reasons: (1) the state issue is neither novel nor complex; (2) judicial economy favors retention because the case is "almost over"; and (3) because, in light of the Court's injunction, it would be unfair and irreparably harmful to Plaintiffs if the Court dismissed the state preemption claim.

A court may decline to exercise supplemental jurisdiction over a claim if:

> (1) [T]he claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In this Circuit, the "'general rule' is that state-law claims should be dismissed after all of the federal-law claims to which they are pendant have been dismissed." *Lamar Tex. Ltd. P'ship v. City of Port Isabel*, No. B-08-115, 2010 WL 441484, at *2 (S.D. Tex. Feb. 3, 2010) (citing *Premiere Network Servs., Inc. v. SBC Commc'ns, Inc.*, 440 F.3d 683, 692 (5th Cir. 2006)). However, notwithstanding this general rule, the Court retains discretion to exercise supplemental jurisdiction over remaining state claims when all federal claims have been dismissed. *Id.* (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639, 129 S.Ct. 1862, 173 L.Ed.2d 843 (2009)). When making this decision, a court must balance the Section 1367(c) factors listed above with the factors of judicial economy, convenience, fairness, and comity. *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). No single factor is dispositive. *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).

On balance, the Section 1367(c) factors weigh in favor of retaining the state preemption claim in this case. The first factor to be examined is whether the state preemption claim raises a novel or complex issue of law. As the Fifth Circuit has explained, "[t]he absence of any difficult state-law questions . . . weighs heavily" in favor of retaining jurisdiction. *Id*. at 227 (reversing dismissal of state-law claims). As relevant here, this Court has already recognized that Texas preemption law is well delineated. *ESI*, 450 F.Supp.3d at 729. Further, two Texas intermediate appellate courts have now held that Texas law preempts city ordinances that mirror the City of Dallas ordinance at issue here, requiring private employers to provide paid sick

21

leave. *See Washington v. Associated Builders and Contractors of S. Tex. Inc.*, No. 04-20-00004-CV, 2021 WL 881288 (Tex. App.—San Antonio March 10, 2021, no pet. h.) (affirming a temporary injunction against enforcement of the City of San Antonio's paid-sick-leave ordinance, holding that Texas state law "preempts a home-rule city's ordinance that establishes a mandatory minimum wage"); *Tex. Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425, 440 (Tex. App.—Austin 2018, pet. denied) (reaching the same result as to the City of Austin's paid-sick-leave ordinance). Thus, this first factor weighs in favor of retaining jurisdiction over the state preemption claim.

Next, the Court must consider whether the state claim substantially predominates over the federal claims in this lawsuit. In situations in which all federal claims have been dismissed, as here, the state claims "clearly predominate" over the now-nonexistent federal claims. *McClelland v. Gronwaldt*, 155 F.3d 507, 519–20 (5th Cir. 1998), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003). Thus, this factor, as well as the third factor—whether the district court has dismissed all claims over which it has original jurisdiction— weigh against retaining supplemental jurisdiction.

The last Section 1367(c) factor asks whether there are any exceptional circumstances creating other compelling reasons to decide against retaining jurisdiction. The City alleges none and the Court is aware of none. Thus, two factors weigh in favor of retaining jurisdiction over the state preemption claim and two weigh in favor of declining to retain jurisdiction. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002).

Finally, the Court must evaluate whether the second and third factors above outweigh the other Section 1367(c) factors, as well as the common-law factors of judicial economy, convenience, fairness, and comity. *Id.*; *accord Lamar*, 2010 WL 441484, at *2 (citing *Cohill*, 484 U.S. at 350). Concerning judicial economy, convenience, and fairness to the parties, this case, which turns predominantly on questions of law, has been pending for approximately eighteen months, the discovery and dispositive motion deadlines have passed, and a fully briefed motion for summary judgment is pending. If the Court now declines to exercise supplemental jurisdiction over the state preemption claim, the parties will be forced to begin the litigation process all over again, implicating redundant judicial proceedings that would require the parties to duplicate the work already accomplished in this litigation.

Under similar circumstances, courts have retained supplemental jurisdiction. For example, in *Mendoza v. Murphy*, 532 F.3d 342 (5th Cir. 2008), the district court retained jurisdiction over state claims even after dismissing the federal claims. *Id.* at 346. On appeal, the Fifth Circuit held that the district court did not abuse its discretion in retaining jurisdiction because the case "had been pending for well over a year, the discovery deadline had passed, and the parties had fully briefed [the d]efendants' motion for summary judgment." *Id.* at 347. On these facts, the court held that the district court had "substantial familiarity with the merits of the case" and that it was reasonable for the district court to conclude that "further proceedings in the district court would prevent redundancy and conserve judicial resources." *Id.*; *see also Lamar*, 2010 WL 441484, at *4 (after granting partial summary judgment

23

such that only state claims remained in the case, the court concluded that, having already invested substantial time in resolving the summary-judgment motion, and with little for the court or parties to do before proceeding to trial, it should retain supplemental jurisdiction over the state law claims).

For similar reasons, retaining jurisdiction over the state preemption claim is appropriate here. As in *Mendoza*, this case has been pending for well over a year, the discovery deadline has passed, and the parties have fully briefed Plaintiffs' motion for summary judgment. The Court is familiar with the merits of the case, having devoted substantial time to reviewing the parties' dismissal, summary judgment, and preliminary injunction briefing, researching the legal issues raised concerning Plaintiffs' challenge to the Ordinance, and reaching the decisions set forth in the Court's preliminary-injunction order. *See Smith*, 298 F.3d at 447. Moreover, the remaining issue—whether Texas state law preempts the Ordinance—is not complex, is well known to the Court, and is ripe for summary disposition as a pure legal issue. *See id.* Because the factors of judicial economy, convenience, and fairness to the parties, combined with the lack of a complex or novel question of state law, all favor retaining jurisdiction of the state claim, the Court concludes that these factors outweigh the fact that the federal claims have been dismissed. The Court will exercise its discretion to retain jurisdiction over the state preemption claim.

## IV. CONCLUSION

For the reasons stated above the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss. (Dkt. #69). As to the Employer-Plaintiffs' Fourth

Amendment claim, Defendants' motion to dismiss is **GRANTED**. It is therefore **ORDERED** that the Employer-Plaintiffs' Fourth Amendment claim is **DISMISSED with prejudice.**

As to Plaintiffs' state preemption claim, Defendants' motion to dismiss is **DENIED**. The Court will retain jurisdiction over the state preemption claim.

**So ORDERED and SIGNED this 25th day of March, 2021.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE