UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ESI/EMPLOYEE SOLUTIONS, L.P., | § | |
| ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:19-CV-570-SDJ |
| | § | |
| CITY OF DALLAS, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

In recent years, several Texas cities, including the City of Dallas, enacted paid-sick-leave ordinances requiring employers to pay employees who use earned sick leave for hours spent not working. Two Texas intermediate appellate courts have now concluded that paid-sick-leave ordinances enacted by the City of Austin and the City of San Antonio, which mirror Dallas's paid-sick-leave ordinance, are preempted by the Texas Minimum Wage Act ("TMWA") and therefore unenforceable. *See Tex. Ass'n of Bus. v. City of Austin.* 565 S.W.3d 425 (Tex. App.—Austin 2018, pet. denied); *Washington v. Associated Builders & Contractors of S. Tex. Inc.*, No. 04-20-00004-CV, 2021 WL 881288 (Tex. App.—San Antonio March 10, 2021, no pet. h.).

After the City of Dallas (the "City")[1] passed such an ordinance, mandating that employers provide Dallas-based employees one hour of paid sick leave for every thirty hours worked, Plaintiffs ESI/Employee Solutions, L.P. ("ESI") and Hagan Law Group L.L.C. ("Hagan") (together, the "Employer-Plaintiffs"), two employers subject to the ordinance, challenged its validity. The Employer-Plaintiffs filed suit alleging

---

[1] For the purposes of this opinion, the Court will refer to all the Defendants collectively as "the City."

1

violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution. They also joined the State of Texas (collectively, "Plaintiffs") in alleging that Dallas's paid-sick-leave ordinance is preempted by the TMWA. Following the Court's dismissal of the federal constitutional claims, only the state preemption claim remains.[2]

Before the Court is Texas and the Employer-Plaintiffs' summary-judgment motion requesting that the Court hold that Dallas's paid-sick-leave ordinance is preempted by the TMWA and therefore violates the Texas Constitution and that the Court render judgment permanently enjoining the City from enforcing the ordinance. (Dkt. #66).[3] The City has responded, (Dkt. #70), asserting that the TMWA's definition of "wages" does not encompass paid sick leave. Plaintiffs have replied, (Dkt. #74), as well as filed a notice of supplemental authority, (Dkt. #84).

Having reviewed the motion, the parties' briefing, and the relevant law, the Court concludes that the motion should be GRANTED in part and DENIED as moot in part.

## I. BACKGROUND

A complete history of Dallas's paid-sick-leave ordinance and the events giving rise to this case is set forth in the Court's Memorandum Opinion and Order granting

---

[2] Notwithstanding the dismissal of the Employer-Plaintiffs' federal claims, and for the reasons explained in the Court's recent decision granting in part the City's Rule 12(b)(1) Motion and Renewed Motion to Decline Supplemental Jurisdiction, the Court has determined that it is appropriate to retain jurisdiction over the state preemption claim. *See* (Dkt. #85).

[3] The summary-judgment motion was filed before the Court's dismissal of the Employer-Plaintiffs' Fourth and Fourteenth Amendment claims. *See* (Dkt. #85). The Court addresses in this opinion only the remaining state preemption claim.

Plaintiffs' Motion for Preliminary Injunction, (Dkt. #64), and the Court's Memorandum Opinion and Order granting in part and denying in part Defendants' Motion to Dismiss, (Dkt. #85). *See also ESI/Emp. Sols., L.P. v. City of Dallas*, 450 F.Supp.3d 700, 709–12 (E.D. Tex. 2020) ("ESI"). Accordingly, the Court will describe here only the facts most germane to the resolution of the summary-judgment motion.

The City enacted its Paid Sick Leave Ordinance (the "Ordinance") on April 24, 2019. Dallas, Texas, Ordinance No. 31181; Municipal Code § 20–1—20–12. The Ordinance, which became effective for "medium or large employers" on August 1, 2019, and which will become effective for "small employers" on August 1, 2021, requires employers to grant one hour of paid sick leave for every thirty hours worked by an employee within Dallas, regardless of the employer's location. DALL., TEX., CODE § 20–4(a), (b). The Ordinance allows employees working in Dallas to earn up to sixty-four hours of sick-leave time per year for medium or large employers and forty-eight hours of sick-leave time per year for small employers. *Id.* § 20–4(c)(1), (2).[4]

When an employee uses accrued paid-sick-leave time, employers are directed to pay employees their normal rate, exclusive of overtime premiums, tips, and commissions, for each hour the employee is absent from work for reasons that are authorized under the Ordinance. *Id*. § 20–5(a). Authorized reasons include absence arising from mental or physical illness and preventative care for the employee or his or her family members. *Id*. § 20–5(c).

---

[4] Employees under a collective-bargaining agreement may negotiate to modify the yearly cap. *Id.* § 20–4(e).

Texas and the Employer-Plaintiffs seek declaratory and injunctive relief, and have now moved for summary judgment, asserting that they have established as a matter of law that the Ordinance is preempted by the TMWA and therefore violates the Texas Constitution. The City has responded that Plaintiffs have failed to show that they have standing to pursue their claim and that the Court should not read the TMWA to preempt the Ordinance. The Court previously granted a preliminary injunction and entered an order enjoining the City from enforcing the Ordinance pending resolution of this case. *ESI*, 450 F.Supp.3d at 732–38.

## II. LEGAL STANDARD

When a party moves for summary judgment on an issue for which it bears the burden of proof, that party "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Summary judgment is appropriate "only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Objections to Summary-Judgment Evidence and Request for Additional Discovery under Rule 56(d)

Texas and the Employer-Plaintiffs cite two declarations in support of their summary-judgment motion: (1) the declaration of ESI's Chief Executive Officer, David F. Bristol, ("Bristol Declaration"); and (2) the declaration of Hagan Law Group, L.L.C.'s Founder, John P. Hagan, ("Hagan Declaration"). Bristol's and Hagan's Declarations purport to establish, among other things, the confidential nature of the companies' business records and the harm to the Employer-Plaintiffs associated with complying with the Ordinance, including cost estimates. The City objects to several portions of these declarations. The objections fall into three categories: (1) objections that testimony regarding the confidential nature of the Employer-Plaintiffs' business records contain impermissible legal conclusions; (2) objections that Bristol's testimony that ESI will suffer a unique and particularized injury is an impermissible legal conclusion; and (3) objections that testimony regarding the estimates of costs to the Employer-Plaintiffs is irrelevant, unsupported by documents, speculative, or misleading. For the reasons stated below, the Court hereby **OVERRULES** each of the City's objections.

As to the first category, the testimony to which the City objects relates solely to the Employer-Plaintiffs' Fourth Amendment claim. *See* (Dkt. #3-1 ¶ 6) (Bristol Decl.); (Dkt. #3-2 ¶ 5) (Hagan Decl.). Because the Court has since dismissed the Fourth Amendment claim, that objection is now moot. The Court has not considered the cited testimony in rendering its summary-judgment decision and the City's objections to this testimony are **OVERRULED**.

As to the second category of objections, the City asserts that Bristol's testimony that ESI will suffer unique and particularized injuries is a legal conclusion. *See* (Dkt. #3-1 ¶¶ 4, 7) (Bristol Decl.). If Bristol's statements were divorced from any other factual testimony, the City would be correct. But the Court concludes that Bristol's complained-of statements serve merely to introduce the specific, non-conclusory testimony that follows, which details the kinds of harm that ESI will incur. *See, e.g.*, (Dkt. #3-1 ¶¶ 7, 11–12) (testifying that keeping track of how many hours each employee works within the City of Dallas, hiring an additional employee to track those hours, and revising training materials will cause ESI to incur additional expenses). Thus, the City's legal-conclusion objections are **OVERRULED**.

As to the third category of objections, the Court understands the cost estimates provided in the declarations to merely reflect that the Ordinance will cause the Employer-Plaintiffs *some* harm for the purpose of establishing standing—not to precisely calculate losses—and the estimates are relevant for that purpose. This conclusion is bolstered by the fact that the Employer-Plaintiffs do not seek money damages in this case and, therefore, the cost estimates can serve *only* to establish *de minimis* harm for standing purposes. Thus, the Employer-Plaintiffs need not supplement the cost estimates with documents showing the exact figures of losses. Further, Bristol and Hagan, as executives at their respective companies, have personal knowledge of their companies' business models, operations, and finances, and thus their cost estimates are not speculative for the purpose of showing *de minimis* harm. Because the Court has considered this evidence only for the purpose

of determining whether Plaintiffs have established *de minimis* harm, the City's objections to the cost estimates are hereby **OVERRULED**.

The City also requests that, if the Court concludes that Texas and the Employer-Plaintiffs have presented sufficient evidence for summary judgment, the Court allow the City to conduct additional discovery regarding the Employer-Plaintiffs' allegations of injury. Again, though, because the Employer-Plaintiffs do not seek money damages, and thus the exact degree of harm is not in dispute, the Court concludes that additional discovery would not be helpful. The summary-judgment evidence establishes that the Employer-Plaintiffs have suffered at least a *de minimis* harm, which is sufficient for standing purposes. As discussed in greater detail below, the evidence also establishes that the *kind* of harm alleged is, by its nature, irreparable. Further discovery would illuminate only the degree of harm, which is irrelevant here.

Moreover, this is not a case in which the Court adjudicated the summary-judgment motion before the City had an opportunity to fully conduct discovery. Rather, the Court's scheduling order set the discovery deadline in this case for August 17, 2020, and the deadline for all dispositive motions for August 21, 2020. (Dkt. #60 at 2). Plaintiffs filed their summary-judgment motion on May 7, 2020, meaning that the City had at least[5] three months from the filing of the summary-judgment motion until the close of discovery to conduct additional discovery relevant to its response. The City does not explain why it did not take the depositions of

_____

[5] The City could have requested an extension of the discovery period at any time before the close of discovery but did not.

Bristol, Hagan, or any other person with knowledge of the Ordinance's harm to the Employer-Plaintiffs. Absent an explanation as to why it could not conduct discovery during these three months, it appears to the Court that the City had ample time to conduct discovery to adduce rebuttal evidence and merely failed to do so. Thus, the Court concludes that the City's additional-discovery request should be **DENIED**.

## IV. DISCUSSION

Texas and the Employer-Plaintiffs' summary-judgment motion requests that the Court hold that the Ordinance is preempted by the TMWA and therefore unenforceable under the Texas Constitution and that the Court enter a permanent injunction preventing enforcement of the Ordinance. To obtain a permanent injunction, a party must meet a four-part test. Specifically, it must establish: "(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006). "In an express preemption case, however, the finding with respect to . . . success carries with it a determination that the other three requirements have been satisfied." *Id.* (quotation omitted). Because controlling Texas law confirms that the Ordinance is preempted by the TMWA, and because the other requirements for injunctive relief have been met, the Court will grant the requested injunction.

**A. Standing**

At the outset, the City contends that neither the Employer-Plaintiffs nor the State of Texas has sufficiently established standing to support the summary-judgment motion. This argument fails. "[O]ne party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Texas v. United States*, 809 F.3d 134, 151 (5th Cir. 2015) (citation omitted). Here, both the Employer-Plaintiffs and Texas satisfy Article III's requirements.

To show standing, plaintiffs "must set forth by affidavit or other evidence specific facts" of their injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted) (quoting FED. R. CIV. P. 56(e)). More specifically, plaintiffs must demonstrate that: "(1) [they have] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

As to the Employer-Plaintiffs, "if a plaintiff is an object of a government regulation, then that plaintiff ordinarily has standing to challenge that regulation." *Duarte v. City of Lewisville*, 759 F.3d 514, 518 (5th Cir. 2014); *see also Lujan*, 504 U.S. at 561–62 (holding that, when a plaintiff is the object of the challenged regulation, establishing standing is generally not difficult); *Contender Farms, L.L.P. v. USDA*,

779 F.3d 258, 266 (5th Cir. 2015) ("An increased regulatory burden typically satisfies the injury in fact requirement.").

Although it is undisputed that the Employer-Plaintiffs are subject to the Ordinance, each of the Employer-Plaintiffs has submitted a declaration confirming this fact. *See* (Dkt. #3-1 ¶ 4) (confirming that ESI employs over 300 employees within the City of Dallas and is therefore subject to the Ordinance's paid-sick-leave mandate); (Dkt. #3-2 ¶ 7) (confirming that Hagan's "employees appear in court and engage in other client related matters within the City of Dallas on average for more than 80 hours total per year" and thus that Hagan is subject to the Ordinance's paid-sick-leave mandate). Both of the Employer-Plaintiffs have also submitted evidence of more than *de minimis* costs that their companies have incurred or anticipate incurring to comply with the Ordinance. *See* (Dkt. #3-1 ¶¶ 7–12) (confirming that ESI will have to hire an employee to track how many hours its employees work within Dallas, pay other employees to fill in for those who take leave, and pay to revise and reprint its training materials); (Dkt. #3-2 ¶¶ 9–12) (confirming that, in addition to the cost of paying for the sick leave itself, Hagan will have to employ a more complex and costlier time-reporting system, train employees to use the new system, rearrange the mix of pay and benefits for its employees, and raise client rates). Although the City argues that the evidence submitted by the Employer-Plaintiffs as to costs imposed on their companies is not adequately supported, there is no question that, because both Employer-Plaintiffs are subject to the Ordinance, each necessarily faces some regulatory burdens imposed by the Ordinance's paid-sick-leave requirements.

In this regard, as the Fifth Circuit has explained, because "the injury in fact requirement under Article III is qualitative, not quantitative, in nature," an injury alleged as an Article III injury-in-fact "need not be substantial." *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017). Indeed, "it need not measure more than an identifiable trifle." *Id*. (quotation omitted).[6] The Employer-Plaintiffs have sufficiently shown standing to support the summary-judgment motion before the Court.

As to the standing of the State of Texas, "[t]he State has a sovereign interest in enforcing its laws." *Castillo v. Cameron County*, 238 F.3d 339, 351 (5th Cir. 2001); *see also Alfred L. Snapp & Son, Inc., v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982) (holding that the State has a "sovereign interest[]" in "the exercise of sovereign power over individuals and entities within [its] jurisdiction"). A violation of the State's legal code, including the provisions of the TMWA limiting municipal power, is an Article III injury in fact to the State. It harms "Texas's concrete interest, as a sovereign state, in maintaining compliance with its laws." *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019); *see also Abbott v. Perez*, 138 S.Ct. 2305, 2324 n.17, 201 L.Ed.2d 714 (2018) (explaining that a State's "inability to enforce its duly enacted [laws] clearly inflicts irreparable harm"). The Fifth Circuit has held that an injunction purportedly allowing local officials to act "in violation of

---

[6] For the same reasons, the City's argument that some of the costs identified by the Employer-Plaintiffs may be a result of the requirements of the Families First Coronavirus Response Act (FFCRA), as opposed to the Ordinance, is also unavailing. Moreover, the FFCRA's leave requirements expired on December 31, 2020. *See* Families First Coronavirus Response Act, Pub. L. No. 116-127, §§ 5102(a)–(b), 5108–09, 5110(2)(B), 134 Stat. 178 (2020).

state law" creates an Article III injury in fact because "[t]he State has a sovereign interest in enforcing its laws." *Castillo*, 238 F.3d at 350–51; *see also id.* at 349 n.16. Finally, a declaratory judgment that the Ordinance violates the Texas Constitution and a permanent injunction prohibiting the City from enforcing the Ordinance will wholly redress the State's injury. Thus, the Court concludes that the State of Texas has standing.

## B. Preemption Claim

### 1. Controlling Texas law confirms that the Ordinance is preempted by the TMWA.

Whether the Ordinance is preempted by the TMWA and therefore violates the Texas Constitution is a matter of state law. "A federal court exercising [supplemental] jurisdiction over state law claims . . . must apply the substantive law of the state in which it sits." *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). That law is enunciated by the state's highest court. *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 505 (5th Cir. 2019). When a state's highest court has yet to speak on an issue, a federal court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." *Stoner v. N.Y. Life Ins. Co.*, 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284 (1940) (citations omitted).

The Texas Supreme Court has explained the standard for evaluating the type of preemption claim asserted by Texas: the preemption of a municipal ordinance by

state legislation. Home-rule cities,[7] like the City of Dallas, "possess the power of self-government." *BCCA Appeal Grp. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016). But the Texas Constitution circumscribes that power: no city ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5(a); *see also Dall. Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–91 (Tex. 1993). Thus, although home-rule cities in Texas enjoy broad self-governance authority, the State's constitution and laws place affirmative limits on that authority. *BCCA*, 496 S.W.3d at 7.

Texas may limit the authority of home-rule cities through "either an express limitation or one arising by implication." *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W. 2d 641, 645 (Tex. 1975). However, regardless of whether a statutory limit on local laws is implicit or explicit, it "must appear with unmistakable clarity" to foreclose coregulation of a matter. *City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586, 593 (Tex. 2018) (internal quotation marks omitted) (quoting *Lower Colo. River Auth.*, 523 S.W.2d at 645)).

Although home-rule cities can regulate broadly, when a municipal ordinance purports to regulate subject matter that is already regulated by a state statute, it is unenforceable "to the extent it conflicts with the state statute." *Dall. Merch.'s*, 852 S.W.2d at 491 (citing *City of Brookside Vill. v. Comeau*, 633 S.W.2d 790, 796 (Tex.

---

[7] Home-rule cities are those operating under a municipal charter as provided for in the Texas Constitution. *Barnett v. City of Plainview*, 848 S.W.3d 334, 337 (Tex. App.—Amarillo 1993, no pet.); TEX. CONST. art. XI, § 5.

1982)). Mere coexistence in the same statutory ambit as state legislation does not preempt a municipal ordinance *per se* where it can operate "in harmony with the general scope and purpose of the state enactment." *Laredo Merchs.*, 550 S.W.3d at 593 (internal quotation marks omitted) (quoting *Comeau*, 633 S.W.2d at 796). But where the purpose of the state legislation is frustrated by concurrent operation of a municipal ordinance, the ordinance will be unenforceable—even if the laws do not regulate the same subject. *See S. Crushed Concrete, L.L.C. v. City of Houston*, 398 S.W.3d 676, 679 (Tex. 2013) (concluding that a municipal ordinance that ostensibly regulated land use was preempted by a state statute that regulated air quality in part because the ordinance rendered the state statute ineffective); *BCCA*, 496 S.W.3d at 7 (explaining that "a home-rule city's ordinance is unenforceable to the extent that it is inconsistent with [a] state statute preempting that particular subject matter").

As relevant here, the TMWA has two provisions that expressly prohibit home-rule cities from regulating the wages that private employers pay.

First, Section 62.0515 of the Texas Labor Code preempts any local ordinance that requires private employers to pay a wage other than the state minimum wage: "[T]he minimum wage provided by this chapter [*i.e.*, the TMWA] supersedes a wage established in an ordinance, order, or charter provision governing wages in private employment." TEX. LAB. CODE § 62.0515(a). On its face, the statute's command is unequivocal. The TMWA sets a minimum wage that all covered employers must follow. *Id.* § 62.051. And to the extent that any city ordinance sets a "wage[] in private

14

employment," state law "annul[s]" or "make[s] void" that provision. *See W.H.V., Inc. v. Assocs. Hous. Fin., LLC*, 43 S.W.3d 83, 92 (Tex. App.—Dallas 2001, pet. denied) (treating "super[s]ed[ing]" and "preemp[ting]" identically); *Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 666 (Tex. 1996) (recognizing that a clause that "preempts state law" "supersede[s]" that law).

Second, Section 62.151 preempts any local ordinance that governs wages, in any way, for an employer subject to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19. That section of the TMWA states: "a municipal ordinance or charter provision governing wages in private employment . . . do[es] not apply to a person covered by the [FLSA]." TEX. LAB. CODE § 62.151. Thus, when the Texas legislature made clear that it would not regulate wages for employers and employees subject to the FLSA, it also provided that local governments cannot regulate them either. *See, e.g.*, *Chambers v. Sears, Roebuck & Co.*, 793 F.Supp.2d 938, 963 (S.D. Tex. 2010), *aff'd* 428 F.App'x 400 (5th Cir. 2011) (per curiam). In sum, Texas declined to regulate in this area and ensured that, to the extent local governments seek to add wage regulations on top of federal law, those local regulations are preempted.

The Texas Supreme Court has not yet addressed the specific preemption issue in this case: whether a city ordinance that requires private employers to provide paid sick leave to their employees is preempted by the TMWA. However, the issue has been decided by both Texas's Third Court of Appeals and Fourth Court of Appeals. *See Tex. Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425 (Tex. App.—Austin 2018, pet. denied); *Washington v. Associated Builders & Contractors of S. Tex., Inc.*, No. 04-20-

00004-CV, 2021 WL 881288 (Tex. App.—San Antonio Mar. 10, 2021, no pet. h.). In both instances, the Third and Fourth Courts of Appeals considered paid-sick-leave ordinances enacted by the City of Austin and the City of San Antonio, respectively, that included substantive provisions virtually identical to the Dallas Ordinance at issue here. In all three ordinances, employees are granted one hour of paid sick leave for every thirty hours worked and employers must pay employees what they would have made if they had been working during hours taken as sick leave. *Compare Tex. Ass'n of Bus.*, 565 S.W.3d at 430 (quoting AUSTIN, TEX., CODE OF ORDINANCES § 4–19–2(A), (J)) ("[E]mployers must 'grant an employee one hour of earned sick time for every 30 hours worked'") and *Washington*, 2021 WL 881288, at *1–2 (quoting SAN ANTONIO, TEX., CODE OF ORDINANCES § 15–269—15–281) (same) *with* DALL., TEX., CODE § 20–4(a), 20–5(a) (same).

In both *Texas Association of Business* and *Washington*, the plaintiffs brought a preemption claim that required the Texas intermediate appellate courts to determine whether the ordinances established a "wage" in contravention of the TMWA and the Texas Constitution. Absent "convincing evidence" that the Texas Supreme Court would rule differently on this issue, the Court must follow the Third and Fourth Courts' interpretation of Texas law. *Stoner*, 311 U.S. at 467.

The Third Court of Appeals concluded that the "legislative intent in the TMWA to preempt local law is clear." *Tex. Ass'n of Bus.*, 565 S.W.3d at 439; *see also Washington*, 2021 WL 881288, at *6 ("[W]e hold that the TMWA preempts a home-rule city's ordinance that establishes a mandatory minimum wage."). The Third Court

16

explained that the TMWA "expressly prohibits municipalities from regulating the wages of employers that are subject to the federal minimum-wage requirements of the [FLSA]." *Tex. Ass'n of Bus.*, 565 S.W.3d at 439.[8] In support of this conclusion, the court cited and quoted TMWA Section 62.151's command that  any municipal ordinance "governing wages in private employment . . . [does] not apply to a person covered by the [FLSA]." *Id.* (internal quotation marks omitted) (quoting TEX. LAB. CODE ANN. § 62.151). The Third Court further explained that, "the TMWA explicitly provides that 'the minimum wage provided by [the TMWA] *supersedes* a wage established in an ordinance . . . governing wages in private employment." *Id.* (quoting TEX. LAB. CODE ANN. § 62.0515(a)).

The Court has no reason to believe that the Texas Supreme Court would reach different conclusions than Texas's Third and Fourth Courts of Appeals concerning the operation and preemptive effect of the TMWA. In this regard, the Court notes that a petition for review was filed with the Texas Supreme Court in the *Texas Association of Business* case, and, although all parties urged the Court to grant review, after receiving full briefing on the merits, the Texas Supreme Court denied review of the Third Court of Appeals' decision. This result suggests that the Texas Supreme Court was comfortable with the lower court's core holding on preemption.

---

[8] Generally, the FLSA applies to employers whose "annual gross volume of sales made or business done" is greater than $500,000. *See* 29 U.S.C. § 206(a) (setting minimum wage for enterprises "engage[d] in commerce"); *id.* § 203(s)(1)(A)(ii) (stating that an enterprise is "engaged in commerce" if its "annual gross volume of sales made or business done" is greater than $500,000).

Further, the Texas Legislature's intent to limit local government regulation of wages is perspicuous. As described herein, the TMWA's plain text states that municipal ordinances governing wages in private employment are inapplicable to employers subject to the FLSA and Section 62.151 of the Texas Labor Code and that the minimum wage provided by the TMWA "supersedes" a wage established in, among other things, a municipal ordinance. TEX. LAB. CODE § 62.0515(a). Working in concert, these TMWA provisions unequivocally yoke the minimum wage in Texas to the TMWA itself and the federal minimum wage, explicitly preempting upward departures imposed by municipalities. Therefore, as the Third and Fourth Courts of Appeals concluded regarding the Austin and San Antonio ordinances, if the paid sick leave required by the Ordinance establishes a wage, it is preempted by the TMWA and unenforceable.

Because the TMWA does not define the term "wage," the Third and Fourth Courts of Appeals gave that word its ordinary meaning. *Tex. Ass'n of Bus.*, 565 S.W.3d at 439; *Washington*, 2021 WL 881288, at *7; *see also Laredo Merchs.*, 550 S.W.3d at 594 ("To decide [the preemption issue], we look, as usual, to the statutory text and the ordinary meaning of its words."). The Third Court noted that the word "wage" "refers to a 'payment to a person for service rendered [or t]he amount paid periodically, esp. by the day or week or month, for the labour or service of an employee, worker, or servant.'" *Tex. Ass'n of Bus.*, 565 S.W.3d at 439 (quoting COMPACT OXFORD ENG. DICTIONARY 693 (2d. ed. 1989), and then citing WEBSTER'S THIRD NEW INT'L DICTIONARY 2568 (2002) (defining "wage" as "a pledge or payment

18

of usu[ally] monetary remuneration by an employer esp[ecially] for labor or services")). Likewise, the Fourth Court cited to various dictionary definitions of "wage," finding that the "common concepts in each definition are a payment, to a person, for the labor or services the person performs" and concluding that "the common meaning of wage is a payment to a person for services rendered." *Washington*, 2021 WL 881288, at \*7.

In light of the ordinary meaning of "wage," and under the TMWA's plain language, the Third Court of Appeals concluded that the Austin ordinance was preempted because it "establishes the payment that a person receives for services rendered to an employer." *Tex. Ass'n of Bus.*, 565 S.W.3d at 439. The Austin ordinance, like the Dallas Ordinance, mandated that employers provide one hour of sick leave for "every 30 hours worked." *Id.* (quoting Austin, Tex. Code of Ordinances § 4–19–2(A)). Also like the Dallas Ordinance, Austin's sick-leave mandate required employers to "pay employees who use sick leave for hours that they did not actually work." *Id.* The Third Court held that the "effective result" of such provisions was "that employees who take sick leave are paid the same wage for fewer hours worked, or, stated differently, that employees who take sick leave are paid more per hour for the hours actually worked." *Id.* at 439–40.

In short, the Third Court concluded that the paid-sick-leave provisions of the Austin ordinance "increase[d] the pay of those employees who use paid sick leave." *Id.* at 440. Based on these conclusions, the Third Court determined that (1) the TMWA preempts local regulations that establish a wage, (2) the Austin paid-sick-

19

leave ordinance establishes a wage and that, accordingly, (3) the TMWA preempts the Austin ordinance as a matter of law, thus making the ordinance unconstitutional. *Id.* at 440–41 (citing TEX. CONST. art. XI, § 5) (mandating that no city ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State").

Similarly, the Fourth Court of Appeals concluded that, because the San Antonio ordinance "requires employers to pay sick leave," the ordinance requires employers to "pay those employees who earn and take sick and safe leave more than employees who work the same hours without paid sick leave" and thus "establishes a minimum wage." *Washington*, 2021 WL 881288, at *9 (cleaned up) (quoting *Tex. Ass'n of Bus.*, 565 S.W.3d at 440). The Fourth Court further held that "the TMWA supersedes the [San Antonio] Ordinance's paid sick and safe leave provision, which makes the [San Antonio] Ordinance unconstitutional." *Id.* at *10.

Again, there is no reason to believe that the Texas Supreme Court would reach a different conclusion than the Third and Fourth Courts on the question of whether the Austin and San Antonio ordinances establish a wage and are therefore preempted by the TMWA. To the contrary, in construing the relevant provisions of the TMWA and the ordinances, the Third and Fourth Courts of Appeals employed statutory construction tools consistently endorsed and applied by the Texas Supreme Court. Both courts focused on the statutory text to determine legislative intent, adhering to the oft-repeated admonitions of the Texas Supreme Court. *See, e.g.*, *In re Off. of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013) ("Legislative intent is best revealed in

legislative language."). Likewise, both courts followed the Texas Supreme Court's guidance that, "[w]here statutory text is clear, that text is determinative of legislative intent unless the plain meaning of the statute's words would produce an absurd result." *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012); *see also, e.g.*, *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("[W]hen possible, we discern [legislative intent] from the plain meaning of the words chosen.").

Applying these tools to interpret the TMWA and the Austin and San Antonio ordinances, the Third and Fourth Courts both reached the conclusion that, when the text of a municipal ordinance mandates that employees be paid their regular wage for hours *not* actually worked based on taking sick leave, the result is an increased wage for hours that *are* worked. Because such an ordinance has the inevitable effect of increasing the pay of employees who use paid sick leave, it is preempted by the plain language of the TMWA and therefore unenforceable under the Texas Constitution. Finally, the Third and Fourth Courts' preemption rulings also comport with the Texas Supreme Court's guidance that "a home-rule city's ordinance is unenforceable to the extent that it is inconsistent with [a] state statute preempting that particular subject matter." *BCCA*, 496 S.W.3d at 7.

The Court concludes that it is bound to follow the Third and Fourth Courts' well-reasoned preemption rulings, which apply equally to the Dallas paid-sick-leave ordinance because its substantive provisions mirror those of the Austin and San Antonio ordinances held to be unenforceable. *Compare Tex. Ass'n of Bus.*, 565 S.W.3d at 430 (quoting AUSTIN, TEX., CODE OF ORDINANCES § 4–19–2(A), (J)) ("[E]mployers

must 'grant an employee one hour of earned sick time for every 30 hours worked.'")
and *Washington*, 2021 WL 881288, at *1–2 (quoting SAN ANTONIO, TEX., CODE OF
ORDINANCES § 15–269—15–281) (same) *with* DALL., TEX., CODE § 20–4(a), 20–5(a)
(same). For these reasons, the Court holds that Plaintiffs have established that they
are entitled to summary judgment on their preemption claim.

### 2.   The remaining requirements for a permanent injunction are met.

Having determined that the Ordinance is preempted by the TMWA, the Court
notes that this conclusion "carries with it a determination that the other three
requirements [for a permanent injunction] have been satisfied." *VRC*, 460 F.3d at 611
(referring to the additional requirements that a movant establish that a failure to
grant the injunction will result in irreparable injury, that its injury outweighs any
damage that the injunction will cause the opposing party, and that the injunction will
not disserve the public interest). For this reason alone, a permanent injunction is
appropriate. However, even examining the additional requirements for an injunction
individually, the Court concludes that the requested relief is warranted.

To begin, a failure to grant the requested injunction would mean that the State
of Texas could not enforce the TMWA, at least as to the City of Dallas. As the Supreme
Court has recognized, "the inability to enforce its duly enacted plans clearly inflicts
irreparable harm on the State." *Perez*, 138 S.Ct. at 2324 n.17 (citing *Maryland v.
King,* 567 U.S. 1301, 133 S.Ct. 1, 183 L.Ed.2d 667 (2012) (Roberts, C.J., in chambers));
*see also New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351,
98 S.Ct. 359, 54 L.Ed.2d 439 (1977) (Rehnquist, J., in chambers) (holding that a state

was irreparably harmed when a court enjoined the enforcement of its laws). Because the Texas Constitution forbids municipal laws from conflicting with laws enacted by the Texas legislature, TEX. CONST. art. XI § 5, and because the Ordinance conflicts with the TMWA, the State will suffer irreparable harm if a permanent injunction is not granted.

Absent an injunction, the Employer-Plaintiffs also face irreparable harm because they would bear the cost of complying with the Ordinance. The Employer-Plaintiffs have shown that they will have to pay employees when they take sick leave, will have to hire additional personnel to oversee compliance, update training materials, rearrange the mix of pay and benefits offered to employees, raise client rates, and change acquisition and benefit priorities. Because the City enjoys governmental immunity as a home-rule city under Texas law, *see, e.g.*, *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007), the Employer-Plaintiffs will not be able to remedy their injuries at law, *see Harris v. Cantu*, 81 F.Supp.3d 566, 580 (S.D. Tex. 2015) (concluding that economic loss that is unrecoverable due to immunity constitutes irreparable harm) *rev'd on other grounds sub nom. Harris v. Hahn*, 827 F.3d 359 (5th Cir. 2016); *Teladoc, Inc. v. Tex. Med. Bd.*, 112 F.Supp.3d 529, 543 (W.D. Tex. 2015) (same); *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010) (same).

Again, as with Plaintiffs' prior request for a preliminary injunction, the City questions the accuracy of the Employer-Plaintiffs' alleged compliance costs. For instance, ESI has provided proof that it will incur damages that are "approximately

$269,000.00 annually if each of its Dallas employees take the full amount of paid leave," and that it will have to hire another employee to "track where employees are placed, track their hours, calculate leave earned and send monthly reports." (Dkt. #3-1 ¶¶ 10–11). The City takes issue with these estimates, arguing that they are not supported by any other evidence. But the City's argument does not detract from the Employer-Plaintiffs' demonstration of irreparable harm.

The City is correct that Plaintiffs carry a heavy burden to establish irreparable injury. *See White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (citing *Enter. Int'l, Inc. v. Corporaction Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)) ("Without question, the irreparable harm element must be satisfied by independent proof, or no injunction may issue."). But after that harm has been established, the element is satisfied; the degree of harm is irrelevant. It is beyond dispute that there are greater than *de minimis* compliance costs associated with the Ordinance—the Employer-Plaintiffs must spend money on employees that are not working because they are taking sick leave, must track sick leave accrual, and must amend their handbooks and training materials. *See, e.g.*, *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (finding that $2,000 in damages is more than *de minimis*). Because governmental immunity will preclude recovery against the City regardless of the amount of damage, the irreparable harm element is met.

The balance of equities and public interest also favors granting the requested permanent injunction. Because the Court has already determined that Plaintiffs have succeeded on their preemption claim, the balance of equities and public interest

factors weigh in favor of granting the injunction. *VRC*, 460 F.3d at 611 (holding that, in an express preemption case, success on the merits carries with it a determination that the other three requirements have been satisfied); *accord Tex. Midstream Gas Servs., L.L.C. v. City of Grand Prairie*, No. 3:08-CV-1724, 2008 WL 5000038, at *20 (N.D. Tex. Nov. 25, 2008) ("Because [the plaintiff] has demonstrated a substantial likelihood of success on the merits of part of its express preemption claim, this suggests that the balance of hardship and public interest factors weigh in favor of granting the preliminary injunction."), *aff'd*, 608 F.3d 200 (5th Cir. 2010).

Finally, the public interest is best served by upholding the structure of government chosen by the citizens of Texas. Under the Texas Constitution, home-rule cities may not override public policy that the Texas legislature has enacted into law. As the Texas Supreme Court has explained, "[t]he Legislature determines public policy through the statutes it passes." *Fairfield Ins. Co. v. Stephens Martin Paving, L.P.*, 246 S.W.3d 653, 665 (Tex. 2008); *see also Tex. Com. Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 250 (Tex. 2002) (recognizing that "the State's public policy is reflected in its statutes" (citation omitted)). On the other hand, there is no public interest in the enforcement of an unlawful ordinance. *See N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 ("The Government does not have an interest in the enforcement of an unconstitutional law." (cleaned up)).

The State of Texas is "inviolably sovereign," *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429 (Tex. 2016), and its legislature stands above local governments, *see* TEX. CONST. art. XI, § 5(a). As the Court has previously held, *ESI*,

450 F.Supp.3d at 738, each day the Ordinance operates against the express mandate of the Texas legislature to preempt local laws governing wages, the State's sovereignty is violated and the relationship between the legislature and local governments, guaranteed by the Texas Constitution, is turned on its head.

For the foregoing reasons, the State of Texas and the Employer-Plaintiffs' request for a permanent injunction is GRANTED.

## V. CONCLUSION

The Court **ORDERS** that Plaintiffs' Motion for Summary Judgment and Memorandum in Support, (Dkt. #66), is hereby **GRANTED in part** and **DENIED as moot in part**. Insofar as Plaintiffs' Motion seeks summary judgment on the now-dismissed Fourth Amendment claim, Plaintiffs' requested relief is **DENIED as moot**. Insofar as Plaintiffs' Motion seeks summary judgment on the state preemption claim, Plaintiffs' requested relief is **GRANTED**. The Court will enter a final judgment and permanent injunction by separate order.

**So ORDERED and SIGNED this 31st day of March, 2021.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

26